Scott E. Rahn, Esq. (SBN 222528)
rahns@rmolawyers.com
Sean D. Muntz, Esq. (SBN 223549)
muntzs@rmolawyers.com
David G. Greco (SBN 299635)
grecod@rmolawyers.com
**RMO LLP**
2029 Century Park East, Suite 2910
Los Angeles, CA 90067
Phone: (424) 320-9444

Attorneys for Plaintiff
GLOBAL VENTU HOLDING B.V.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V., <br><br> Plaintiff, <br><br> v. <br><br> ZEETOGROUP, LLC, SAMPLES.COM, LLC, and TIBRIO, LLC, <br><br> Defendants. | Case No.: 3:19-cv-01018 DMS LL <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **(1) Breach of Revenue Share Agreement;** <br><br> **(2) Breach of Publisher Services Agreement;** <br><br> **(3) Violation of the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 *et seq.*); *and*** <br><br> **(4) Violation of Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*)** <br><br> DEMAND FOR JURY TRIAL |

Plaintiff states and alleges as follows:

## PARTIES

1. Plaintiff Global Ventu Holding B.V. ("Plaintiff" or "Global Ventu") is a Dutch corporation, with its principal place of business located at Sint Sebastiaansbrug 13 2611DN, Delft, The Netherlands. Global Ventu is a target driven advertising agency specializing in lead generation and data acquisition, *i.e.*, the generation of consumer interest into a business's products or services.

2. Defendant Samples.com, LLC ("Samples") is a Delaware limited liability company with its principal place of business in San Diego, California. While LLC membership information for Samples is not publicly available, Plaintiff alleges on information and belief that Samples is a citizen of a State within the United States. *See Carolina Casualty Insurance Co. v. Team Equipment, Inc.*, 741 F.3d 1082 (9th Cir. 2014). Samples operates www.samples.com and www.getitfree.us, websites that connect users with samples, coupons, and deals available on the internet.

3. Defendant Tibrio, LLC ("Tibrio") is a Delaware limited liability company with its principal place of business in New York City, New York. While LLC membership information for Tibrio is not publicly available, Plaintiff alleges on information and belief that Tibrio is a citizen of a State within the United States. In July 2018, Tibrio announced that Samples had "rebranded" as Tibrio. Given that announcement, Global Ventu alleges on information and belief that Tibrio has succeeded to Samples' contractual and other legal obligations and seeks to impose liability on Tibrio on that basis.

4. On information and belief, Plaintiff alleges that Tibrio and Samples are one entity. Plaintiff is informed and believes that Samples became Tibrio.

5. Defendant ZeetoGroup, LLC ("ZeetoGroup") is a Delaware limited liability company with its principal place of business in San Diego, California. While LLC membership information for ZeetoGroup is not publicly available, Plaintiff alleges on information and belief that ZeetoGroup is a citizen of a State within the

United States. Global Ventu also alleges on information and belief that ZeetoGroup owns and controls Samples and is functionally the parent company of Samples.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as to Plaintiff's trade secret claim under 18 U.S.C. § 1836. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2). The amount in controversy exceeds $75,000 exclusive of interest and costs, and this action is brought by a plaintiff who is a citizen of a foreign state against defendants who are all citizens of a State in the United States.

7. Venue is proper in the Southern District of California under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Global Ventu's claims occurred in this district and the Defendants' principal place of business is located in this district.

8. This district is also the proper venue because both the September 12, 2016 Publisher Services Agreement and the September 17, 2016 Revenue Share Agreement between Global Ventu and Samples expressly provide for jurisdiction and venue in San Diego County, California. The Publisher Services Agreement ("PSA") is attached hereto as Exhibit A and is incorporated by reference. The Revenue Share Agreement ("RSA") is attached hereto as Exhibit B and is incorporated by reference.

## FACTS

9. Global Ventu specializes in developing unique campaign ad structures for social media advertisements. Global Ventu has developed an internal process and several techniques—techniques not generally known in the e-advertising industry—to maximize the return on investment for its clients. Global Ventu does not intend to disclose the details of its trade secrets in this filing. However, Global Ventu's techniques involve structuring and optimizing campaigns, organizing ad budgets in a unique and more effective way, and utilizing Facebook's "pixel" in a way that allows Global Ventu to more effectively target certain customers.

10. In June 2016, Global Ventu entered into a business relationship with Samples/Tibrio, a company that connects users with samples, coupons, and deals available on the internet. Under the parties' initial business arrangement, Global Ventu was to use its expertise in Internet marketing and advertising, and in media buying and social media, to drive visitors to www.getitfree.us, and would receive as consideration a fixed commission for each user registration.

11. In September 2016, Samples/Tibrio and Global Ventu decided to memorialize their business relationship, as well as change the structure under which Samples/Tibrio would compensate Global Ventu for its work. The parties entered into two agreements. First, on September 12, 2016, they entered into the PSA, which contained terms governing the parties' relationship in connection with the advertising and marketing services Global Ventu provided to Samples/Tibrio. Recognizing that they may disclose confidential and proprietary information to one another during the course of their business relationship, the parties included a provision in the PSA addressing the use of "Confidential Information," which was defined as "all data and information, of a confidential nature or otherwise, disclosed during the term of the Agreement by one party ('Disclosing Party') to the other party ('Receiving Party'), as well as information that the Receiving Party knows or should know that the Disclosing Party regards as confidential." Ex. A § 9. Under the PSA, the Receiving Party agreed that it "will not, for any reason or under any circumstance, directly or indirectly use, convert, apply, appropriate, employ, alter, transform, assign, put into operation or otherwise use any Confidential Information, in whole or in part[], for any purpose whatsoever, other than as expressly permitted herein." *Id.*

12. Second, on September 17, 2016, Samples/Tibrio and Global Ventu also entered into the RSA. The RSA provided further detail about the "Services" that Global Ventu would provide to Samples/Tibrio, stating that Samples/Tibrio would provide Global Ventu with access to Samples/Tibrio' social media accounts, specifically its "Facebook Account," and that Global Ventu would then "be

responsible for general oversight and management of the Facebook Account, which includes, but is not limited to: (1) developing and optimizing existing campaigns; (2) managing budgets for campaigns; and (3) planning, buying, and executing campaigns." Ex. B § 1.

13. Each party was to retain its rights in any intellectual property it created: "[s]hould either Samples/Tibrio or Global Ventu create any advertisements, creatives, copy, or any other related intellectual property, [that] will remain the property of the party which created such intellectual property." Ex. B § 2.

14. The RSA also set out a revised compensation structure, entitling Global Ventu to a revenue share percentage based upon Samples/Tibrio' earnings that were directly attributable to Global Ventu's oversight and management of the Facebook Account, with Global Ventu receiving 84% of revenue derived from the Facebook Account, and Samples/Tibrio retaining the other 16%. Ex. B § 4.

15. The RSA's termination provision provided that, unless a party materially breached the RSA (in which case the non-breaching party could terminate the agreement with immediate effect), a party wishing to terminate the RSA must provide the other party with "two (2) business days prior written notice." The agreement further provided that "[u]pon termination, Global Ventu's access to the Facebook Account shall be withdrawn." Ex. B § 5.

16. In the ensuing two-plus years, Global Ventu performed all of its obligations under the parties' agreements and, in doing so, provided significant value to Samples/Tibrio. As contemplated by Section 1 of the RSA, Global Ventu oversaw and managed the Samples/Tibrio Facebook Account, which was owned by ZeetoGroup (Samples/Tibrio' parent company). Global Ventu created its own advertising content, including text, images and videos, which was posted on that Facebook Account. And by use of tracking pixels (website code that tracks a user's behavior) embedded in the advertisements, Global Ventu was able to build a profile of the audience of users that responded well to its Facebook ad campaigns, and use

that data to optimize the targeting of its ads. Global Ventu's original ad content, combined with the confidential audience targeting data it built up using proprietary methods, generated more than $10 million in revenue over the course of two years.

17. The Facebook Account Global Ventu managed belonged to ZeetoGroup. ZeetoGroup paid all of the invoices associated with the contracts and work discussed above.

18. Global Ventu was allocated exclusive use of two of ZeetoGroup's Facebook Advertising Accounts. The accounts had previously been used by ZeetoGroup but were erased of all advertising campaigns to ensure Global Ventu would not misappropriate any confidential advertising techniques that ZeetoGroup had developed. Later two additional accounts, bringing the total to four, were allocated to Global Ventu to allow it to grow the parties' business efforts.

19. Despite the above, the parties recognized that the account contained Global Ventu's Confidential Information and worked to ensure that safeguards were in place to strictly limit access to the Facebook Account. Accordingly, while Samples/Tibrio—in addition to contracting with Global Ventu to drive Facebook traffic—had an in-house Facebook media buying team, that internal team did not have authority to access the Facebook Account managed by Global Ventu.

20. In October 2018, the then-CEO of Samples/Tibrio, Josh Ogle, left the company, and was replaced by an interim CEO, Stephan Goss, who was also CEO of ZeetoGroup. On November 12, 2018, Samples/Tibrio informed Global Ventu that it was switching its backend technology to a software called ZAN, which had been developed by ZeetoGroup. Based on testing performed over the course of several months, ZeetoGroup's software performed far worse than the software the parties had been using for the prior two years, and this transition would have resulted in a significant drop in revenue for Global Ventu. Indeed, a Samples/Tibrio representative acknowledged to Global Ventu that the performance of the ZeetoGroup software was "shitty."

21. Knowing that previous test showed that the ZAN software was going to make their advertising efforts unprofitable, Global Ventu repeatedly attempted to convince Samples/Tibrio not to switch to ZAN, or at least to allow Global Ventu to continue to use the software platform it had successfully used for the two years prior, but Samples/Tibrio refused. A Samples/Tibrio representative responded they would push forward with deploying ZAN citing "I spoke with our CPO and she confirmed we can't divide your traffic versus our FB campaigns " and that despite "so many performance issues […] our executive team decided to do the full transition" and continuing with "I understand you are frustrated, believe me, so are we". A Samples/Tibrio executive also acknowledged "That is correct, CPO at Zeeto[Group] is driving this discussion... along with Stephan [Goss]".

22. As a result, Global Ventu sought to negotiate an increased revenue share until such time as problems with the software were worked out. During the parties' November 16, 2018 discussions, Samples/Tibrio threatened that if Global Ventu did not accept its offer, Samples/Tibrio would end the relationship and "take this in house." Global Ventu reminded Samples/Tibrio in response to this threat that the traffic "runs through [Global Ventu's] voluum links"—referring to Voluum, a tracking software—and that, under the RSA, Global Ventu retained intellectual property rights over all of its ads and content. Samples/Tibrio stated in response that it understood.

23. Later that day, when Global Ventu declined what Samples/Tibrio said was its best and final offer of a renegotiated revenue share, Samples/Tibrio and ZeetoGroup responded by immediately revoking Global Ventu's access to the Facebook Account. While the RSA provided for the withdrawal of access to the Facebook Account "[u]pon termination," the RSA had not yet been terminated, as Samples/Tibrio had yet to even provide the contractually required two-business-days' notice. As a result of this improper lock-out, which violated the plain terms of the September 17, 2016 RSA, Global Ventu was unable to access and remove all of

the ad content, advertising campaigns and proprietary tracking information it had spent years and significant sums of money developing.

24. On Monday, November 19, 2018, Samples/Tibrio sent Global Ventu a letter belatedly purporting to provide the "required two business days prior written notice of its intent to terminate the Agreement" and to inform Global Ventu that, as of November 21, 2018, its "access to the Facebook Account will be terminated." The letter did not acknowledge that Samples/Tibrio and ZeetoGroup had, in violation of the RSA, already terminated Global Ventu's access to the Facebook Account days earlier. The email was sent by Elizabeth Chu, corporate counsel for ZeetoGroup, using an email address with the extension @zeeto.io. She courtesy copied the accounting department of Zeetogroup, which uses an email with the extension @zeetogroup.com, on the email.

25. By immediately terminating Global Ventu's access to the Facebook Account in violation of the RSA, and thereby ensuring that Global Ventu could not remove its ad content or the confidential ad-targeting data and media buying strategies, Samples/Tibrio and ZeetoGroup now had access to Global Ventu's valuable content and information.

26. Samples/Tibrio and ZeetoGroup proceeded to use that content and information for their own profit. Beginning just days after improperly terminating the RSA and locking Global Ventu out of the Facebook Account, Samples/Tibrio and ZeetoGroup starting running Facebook ads with identical or near-identical content to those created by Global Ventu.

27. Defendants inadvertently sent Global Ventu their revenue reports from the ads that Defendants distributed using Global Ventu's trade secrets, and these revenue reports show that Defendants were utilizing the ads and targeting developed by Global Ventu. Global Ventu is informed and believes that Defendants were profiting and continue to profit off of Global Ventu's trade secrets.

///

28. Facebook stores advertisements, campaigns, and ad targeting. Thus, when access to a Facebook account is removed, the party retaining access to the account also retains access to all work product of any party who has contributed to ads made through Facebook. That includes the detailed ad targeting data collected and utilized during ad campaigns. The only way to remove this work product / content completely is to access the account and delete the ad campaigns and pixel data. Defendants demonstrated they had knowledge of this as they deleted the campaigns from their Facebook accounts prior to giving Plaintiff access to the accounts. However, Defendants never allowed Plaintiff to access the Facebook account to achieve this task, and thus Defendants still retain access to all of Plaintiff's work product.

29. The refusal to allow Plaintiff to access the Facebook account and delete the data was an intentional scheme to deprive Plaintiff of its trade secrets, by retaining access to all the data and preventing Plaintiff from reclaiming the information, after Defendants wrongfully locked Plaintiff out of the account.

30. ]Uupon information and belief, Samples/Tibrio and ZeetoGroup also began using the confidential ad targeting data developed by Global Ventu, which Samples/Tibrio and ZeetoGroup had been able to obtain by improperly locking Global Ventu out of the Facebook Account it had managed for more than two years.

31. In the several months following termination of the parties' relationship, Samples/Tibrio and ZeetoGroup have used Global Ventu's ad content and trade secret information to generate revenues. The records obtained show revenues of at least $17,500 per day. However, Global Ventu is informed and believes the true revenues amount to multiple times that amount.

32. In sum, rather than continuing the agreements and having to pay Global Ventu a share of the revenue it generated, Samples/Tibrio and ZeetoGroup found a more profitable path: they simply cut Global Ventu out of the picture by stealing and using Global Ventu's intellectual property and confidential information, and then

kept all of the resulting revenue for themselves. Because the path Samples/Tibrio and ZeetoGroup chose violates both the parties' contracts and federal and California law, Global Ventu now seeks relief from this Court.

## FIRST CLAIM FOR RELIEF

### Breach of September 17, 2016 Revenue Share Agreement

### (Against Defendants Samples/Tibrio and Tibrio)

33. Global Ventu incorporates by reference the allegations set forth in paragraphs 1 through 24, above, as if set forth fully herein.

34. Global Ventu and Samples/Tibrio entered into a valid contract, the Revenue Share Agreement, dated September 17, 2016.

35. Global Ventu has performed all of its obligations under the RSA.

36. In the RSA, Samples/Tibrio agreed that each party would retain its own rights in any intellectual property it created, and that "[s]hould either Samples/Tibrio or Global Ventu create any advertisements, creatives, copy, or any other related intellectual property, the new creations will remain the property of the party which created such intellectual property." Ex. B § 2.

37. In the RSA, Samples/Tibrio further agreed to provide Global Ventu with access to the Facebook Account, and that it would withdraw that access only upon termination of the RSA. Without validly terminating the RSA, however, Samples/Tibrio revoked Global Ventu's access to the Facebook Account, thus depriving Global Ventu of access to its own ad content (which Samples/Tibrio had agreed was Global Ventu's intellectual property) and confidential information, which Global Ventu had the right to remove prior to termination.

38. As a proximate result of the Defendants' acts as alleged above, Global Ventu has suffered actual damages in an amount to be determined at trial.

///

///

///

## SECOND CLAIM FOR RELIEF

## Breach of September 12, 2016 Publisher Services Agreement

### (Against Defendants Samples/Tibrio and Tibrio)

39. Global Ventu incorporates by reference the allegations set forth in paragraphs 1 through 30 above, as if set forth fully herein.

40. Global Ventu and Samples/Tibrio entered into a valid contract, the Publisher Services Agreement, dated September 12, 2019.

41. Global Ventu has performed all of its obligations under the PSA.

42. In the PSA, Samples/Tibrio agreed that it "will not, for any reason or under any circumstance, directly or indirectly use, convert, apply, appropriate, employ, alter, transform, assign, put into operation or otherwise use any Confidential Information, in whole or in part[], for any purpose whatsoever, other than as expressly permitted herein." *Id.* In violation of that provision, Samples/Tibrio has used, converted, applied, appropriated, employed, and put into operation Global Ventu's confidential ad targeting data, which Samples/Tibrio improperly obtained when it revoked Global Ventu's access to the Facebook Account.

43. As a proximate result of the Defendants' acts as alleged above, Global Ventu has suffered actual damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

## Violation of the California Uniform Trade Secrets Act (CUTSA)

## Cal. Civ. Code § 3426 *et seq.*

### (Against All Defendants)

44. Global Ventu incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if set forth fully herein.

45. Global Ventu expended considerable time, effort, and expense over the course of two years in developing trade secret information concerning the profile of users that responded well to its ad campaigns, which data could then be used to optimize the targeting of its ads.

46. The information Global Ventu developed derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

47. Global Ventu undertook reasonable efforts under the circumstances to maintain the secrecy of this information, including by entering into a written agreement with Samples/Tibrio that prohibited Samples/Tibrio from using its Confidential Information for any purpose whatsoever. Global Ventu also had an understanding with Samples/Tibrio that access to the Facebook Account managed by Global Ventu would be strictly limited, and that Samples/Tibrio' internal team responsible for Facebook advertising would not have access to the Facebook Account in order to safeguard the confidential information.

48. Samples/Tibrio and ZeetoGroup used improper means to acquire knowledge of Global Ventu's trade secret information, including by breaching the parties' express confidentiality agreement in the PSA, and by improperly locking Global Ventu out of the Facebook Account it was responsible for managing in violation of the RSA, in order to prevent Global Ventu from removing the information. Samples/Tibrio and ZeetoGroup then used that improperly acquired trade secret information to generate revenue for themselves after terminating the relationship with Global Ventu.

49. As a result of Defendants' misappropriation of Global Ventu's trade secrets, Global Ventu has suffered actual loss, and Defendants have been unjustly enriched, in an amount to be determined at trial. Moreover, because Defendants' misappropriation was willful and malicious, Global Ventu seeks an award of exemplary damages.

/ / /

/ / /

/ / /

/ / /

## FOURTH CLAIM FOR RELIEF

## Violation of Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 *et seq.*

### (Against All Defendants)

50. Global Ventu incorporates by reference the allegations set forth in paragraphs 1 through 41, above, as if set forth fully herein.

51. Global Ventu expended considerable time, effort, and expense over the course of two years in developing trade secret information concerning the audience profile of users that responded well to its ad campaigns, which data could then be used to optimize the targeting of its ads.

52. The information Global Ventu developed derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

53. The information Global Ventu developed is used for the purpose of targeting advertising to consumers in internet commerce, and the trade secret information is therefore used in interstate and foreign commerce.

54. Global Ventu undertook reasonable efforts under the circumstances to maintain the secrecy of this information, including by entering into a written agreement with Samples/Tibrio that prohibited Samples/Tibrio from using its Confidential Information for any purpose whatsoever. Global Ventu also had an understanding with Samples/Tibrio that access to the Facebook Account managed by Global Ventu would be strictly limited, and that Samples/Tibrio' internal team responsible for Facebook advertising would not have access to the Facebook Account in order to safeguard the confidential information.

55. Samples/Tibrio and ZeetoGroup used improper means to acquire knowledge of Global Ventu's trade secret information, including by breaching the parties' express confidentiality agreement in the PSA, and by improperly locking Global Ventu out of the Facebook Account it was responsible for managing in violation of the RSA, in order to prevent Global Ventu's ability to remove the

information. Samples/Tibrio and ZeetoGroup then used that improperly acquired trade secret information to generate revenue for themselves after terminating the relationship with Global Ventu.

56. As a result of Defendants' misappropriation of Global Ventu's trade secrets, Global Ventu has suffered actual loss, and Defendants have been unjustly enriched, in an amount to be determined at trial. Moreover, because Defendants' misappropriation was willful and malicious, Global Ventu seeks an award of exemplary damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment awarding them the following relief against Defendants:

**1.** Damages in an amount to be determined at trial;

**2.** Exemplary damages under CUTSA and DTSA;

**3.** An injunction restraining Defendants' continuing use of Plaintiff's trade secret information, and breaches of contract;

**4.** Punitive and exemplary damages;

**5.** Attorneys' fees and costs; and

**6.** Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all issues so triable.

Dated: August 23, 2019       RMO LLP

*/s/ David Greco*
Scott E. Rahn, Esq. (SBN 222528)
rahns@rmolawyers.com
Sean D. Muntz, Esq. (SBN 223549)
muntzs@rmolawyers.com
David G. Greco (SBN 299635)
grecod@rmolawyers.com
RMO LLP
2029 Century Park East, Suite 2910
Los Angeles, CA 90067
Phone: (424) 320-9444

# PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by RMO LLP, whose business and service address is: 2029 Century Park East, Suite 2910, Los Angeles, CA 90067.

On **August 23, 2019**, I served the within document(s) described as:

**FIRST AMENDED COMPLAINT FOR:**
**(1) Breach of Revenue Share Agreement;**
**(2) Breach of Publisher Services Agreement;**
**(3) Violation of the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 et seq.); and**
**(4) Violation of Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.)**

on the interested parties in this action as follows:

Christopher S. Morris, Esq.
Jacob A. Gillick, Esq.
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel: 619.826.8060
Fax: 619.826.8065
Email: morris@morrislawfirmapc.com
Email: jgillick@morrislawfirmapc.com
*Attorneys for Defendants,*
*Zeetogroup, LLC, Samples.com, LLC,*
*And Tibrio, LLC*

(**FEDERAL**) I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and by causing the document to be served via the Court's ECF Filing System.

I declare under penalty of perjury that the foregoing is true and correct. Executed on **August 23, 2019**.

*/s/ Jennifer J. Vogel*
JENNIFER J. VOGEL