# EXHIBIT B

# REVENUE SHARE AGREEMENT

This Revenue Share Agreement (the "Agreement"), entered into on ___9/17/2016___ (the "Effective Date"), is made by and between Samples.com, LLC ("Samples") and Global Ventu Holding BV ("Global Ventu") in connection with the advertising and marketing services provided by Global Ventu for Samples.

**WHEREAS**, Global Ventu is in the business of Internet marketing and advertising, and has experience and expertise in media buying via social media, specifically Facebook;

**WHEREAS**, Samples is the owner of several social media accounts, specifically Facebook;

**WHEREAS**, Samples wishes to engage Global Ventu to provide the Services provided herein under a revenue sharing schedule in accordance with the terms and conditions contained in this Agreement;

**NOW THEREFORE**, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt of which are hereby acknowledged, the parties agree as follows:

1. Services.  Samples will provide Global Ventu with access to its social media account(s) ("Facebook Account") following the Effective Date solely for the purpose of providing the services detailed herein.  Global Ventu shall be responsible for general oversight and management of the Facebook Account, which includes, but is not limited to: (1) developing and optimizing existing campaigns; (2) managing budgets for campaigns; and (3) planning, buying, and executing campaigns.  Global Ventu represents and warrants that it will perform the Services in a professional and workmanlike manner, consistent with industry standards.

2. Ownership.  Neither this Agreement nor its performance transfers any of Samples' proprietary property, including: designs, content, advertisements, documentation, copy, images, and any related intellectual property (the "Intellectual Property") rights from either party to the other party.   The Intellectual Property shall at all times be and remain the sole property of the original party.  Furthermore, the Facebook Account shall also remain the sole property of Samples, and Samples may reject any of Global Ventu's postings or actions at any time and for any reason.  Should either Samples or Global Ventu create any advertisements, creatives, copy, or any other related intellectual property, the new creations will remain the property of the party which created such intellectual property.

3. Reporting.  Samples will provide daily revenue reporting to Global Ventu.  About ten days following the end of the month, Samples will provide Global Ventu with a final report based on accounting numbers related to the profit and revenue made from Global Ventu's efforts with the Facebook Account.  Global Ventu shall have five (5) business

days from receipt of a report to notify Samples of any dispute relating to the report. The Parties shall work together to resolve the dispute. If Global Ventu does not have any disputes related to the report, Global Ventu shall provide Samples with an invoice.

4. Revenue Sharing Schedule. In consideration for the services performed hereunder, Global Ventu shall be entitled to a revenue share percentage based upon Samples' earnings directly attributable to Global Ventu's oversight and management of the Facebook Account. Upon receiving an invoice from Global Ventu, Samples shall pay Global Ventu within thirty (30) days of the end of the month for which services were performed. "Revenue" shall be defined as the amount earned for a particular month less media costs and expenses (e.g. Facebook media buy spend). Revenue shall be an 84% / 16% split, whereby Global Ventu will receive 84% of all revenue earned for the Facebook Account and Samples will retain 16% of all revenue earned for the Facebook Account.

Should the monthly Revenue be less than the media costs and expenses, Samples shall deduct such costs from Global Ventu's account under the Publisher Services Agreement, signed by the parties on September 12, 2016. If Global Ventu's account under the Publisher Services Agreement does not contain sufficient funds to deduct from, Global Ventu shall pay Samples the remainder of what is owed after deducting from Global Ventu's account.

5. Termination. Either party may terminate this Agreement by providing the other party with two (2) business days prior written notice. Either party may terminate this Agreement immediately if it learns of, or has good reason to suspect that the other party has breached any material provision or express warranty of this Agreement. Upon termination, Global Ventu's access to the Facebook Account shall be withdrawn. Notwithstanding anything contained herein to the contrary, Samples' obligation to pay Global Ventu for Revenue earned prior to the Termination Date shall not be terminated until such payment is made, and any provisions of this Agreement that may reasonably be expected to survive termination or expiration of the Agreement, shall survive and remain in effect and accordance with their terms.

6. Confidential Information. For purposes of the Agreement, "Confidential Information" means: (a) any confidential, proprietary, or trade secret information that Samples discloses or makes available to Global Ventu that is marked "confidential" or "proprietary" before its disclosure; (b) information that is orally disclosed by Samples to Global Ventu if it is identified as confidential at the time of its disclosure; (c) information that a reasonable party would deem to be non-public information and confidential; (d) any and all financial and/or accounting information disclosed by Samples; or (e) information that relates to Samples' products, services, technologies, clients/customers, information systems, processes, marketing, and/or business plans and strategies. Confidential Information does not include information that: (a) is in or enters the public domain without breach of this Agreement; (b) Global Ventu lawfully receives from a third party without restriction on disclosure and without breach of a nondisclosure obligation; (c) Global Ventu lawfully knew, not in contravention of an obligation of

confidence, prior to receiving such information from the Disclosing Party; or (d) the Global Ventu develops independently without use of or reliance on the Disclosing Party's Confidential Information.

Global Ventu agrees that: (a) it will not, for any reason or under any circumstance at any time, directly or indirectly use, convert, apply, appropriate, employ, alter, transform, assign, put into operation, or otherwise use any Confidential Information, in whole or in part, for any purposes whatsoever, other than as expressly permitted herein; (b) it will not disclose to any third party the Confidential Information, except as expressly permitted in this Agreement or as otherwise necessary to perform its obligations or exercise its rights under the Agreement; and (c) it will take all reasonable measures to maintain the confidentiality of all Confidential Information in its possession or control. Notwithstanding the foregoing, Confidential Information may be disclosed as necessary to comply with the requirements of legal or administrative processes, provided that Global Ventu provide Samples with reasonable advance notice of any such intended disclosures and cooperates reasonably with its efforts to obtain a protective order.

7. <u>Indemnification</u>. Each party (the "Indemnifying Party") agrees to indemnify, defend, and hold harmless the other party and its directors, officers, employees and agents (the "Indemnified Party") from and against any and all actions, claims, demands, proceedings, liabilities, judgments, demands, costs, penalties, and expenses, including reasonable attorneys' fees and related costs (collectively, "Losses") which: (i) arise solely or in part from the act(s) or omissions of the Indemnifying Party; or (ii) arise from or are related to a breach by the Indemnifying Party of any express representation or warranty contained herein.  Furthermore, Global Ventu will indemnify and hold Samples harmless from any Losses related to Global Ventu's management of the Facebook Account.  The Indemnified Party will promptly notify the Indemnifying Party of any such claim of which it becomes aware and will (i) provide reasonable cooperation to the Indemnifying Party at the Indemnifying Party's expense in connection with the defense or settlement of any such claim; and (ii) be entitled to participate at its own expense in the defense of any such claim.  The Indemnified Party agrees that the Indemnifying Party will have sole and exclusive control over the defense and settlement of any such third party claim.  However, the Indemnifying Party will not acquiesce to any judgment or enter into any settlement that adversely affects the Indemnified Party's rights or interests without the prior written consent of the Indemnified Party.

8. <u>Disclaimer and Limitation of Liability</u>.  EXCEPT AS PROVIDED HEREIN, THE SERVICES PROVIDED UNDER THIS AGREEMENT ARE PROVIDED ON AN "AS IS, AS AVAILABLE" BASIS.  SAMPLES DOES NOT GUARANTEE THAT THE SERVICES WILL GENERATE REVENUE FOR GLOBAL VENTU.  EXCEPT AS SPECIFICALLY PROVIDED IN THE AGREEMENT, EACH PARTY EXPRESSLY DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, OR CONDITIONS IN CONNECTION WITH THIS AGREEMENT, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OF TITLE, OF USAGE OF TRADE, OF COURSE OF

DEALINGS, OF ACCURACY OR COMPLETENESS OF RESULTS, DATA OR INFORMATION. EXCLUDING EACH PARTY'S INDEMNIFICATION AND CONFIDENTIALITY PROVISIONS HEREUNDER, NEITHER PARTY SHALL BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL, INDIRECT, ECONOMIC, EXEMPLARY, AGGRAVATED, OR PUNITIVE DAMAGES WHATSOEVER ARISING OUT OF THIS AGREEMENT, EVEN IF SUCH DAMAGES WERE FORESEEABLE. EACH PARTY'S TOTAL CUMULATIVE LIABILITY HEREUNDER, FROM ALL CAUSES OF ACTION OF ANY KIND, SHALL BE LIMITED TO THE AMOUNTS PAID TO GLOBAL VENTU BY SAMPLES DURING THE SIX (6) MONTHS PRIOR TO THE DATE THE CAUSE OF ACTION AROSE.

9. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with the State of California. The parties hereby agree to submit to the exclusive jurisdiction of the federal or state courts of San Diego County for all disputes arising from this Agreement.

10. <u>Relationship of the Parties</u>. The parties hereto are independent contractors. There is no relationship of partnership, joint venture, employment or franchise relationship between the parties hereto.

11. <u>Entire Agreement</u>. This Agreement constitutes the complete understanding between the Parties with respect to the subject matter contained here, and supersedes and replaces all prior agreements, communications, and understandings regarding such subject matter. This Agreement shall have no effect over any other patter between the Parties. This Agreement may only be modified by a written document executed by both Parties.

**I have read and agree to the terms set forth in this Agreement.**

| SAMPLES.COM, LLC | GLOBAL VENTU, BV |
|---|---|
| Signature: _(DocuSigned by: /s/)_ | Signature: _(DocuSigned by: Alex Andebeek)_ |
| Name: Josh Ogle | Name: Alex Andebeek |
| Title: CEO | Title: CEO |
| Date: 9/16/2016 | Date: 9/17/2016 |

4