# EXHIBIT A

## PUBLISHER SERVICES AGREEMENT

This Publisher Services Agreement ("Agreement") entered into on 9/12/2016 ("Effective Date"), as well as any Insertion Orders ("IO") subsequently entered into, shall govern the relationship between Samples.com, LLC ("Advertiser" or "Samples.com"), a Delaware limited liability company located at 925 B Street, Fifth Floor, San Diego, CA 92101, and Global Ventu Holding BV , ("Publisher"), a Netherlands Corporation having primary offices at Sint Sebastiaansbrug 13, 2611DN Delft, The Netherlands in connection with the advertising and marketing services provided to Advertiser by Publisher. If not otherwise defined, the terms used herein shall have the meaning specified in the Agreement.

1. <u>Services</u>. In connection with the advertising and marketing services ("Services"), Publisher may undertake campaigns for Advertiser (each a "Campaign"), whereby Publisher may distribute Advertiser's proprietary materials including, but not limited to, online display ads, graphic files, and similar media ("Advertising Material"). Publisher will only distribute Advertising Material internally and shall not distribute or re-sell Advertising Material to any external third party without Advertiser's written consent. In connection with such Campaigns, Advertiser shall pay Publisher for compensable transactions generated on behalf of Advertiser as set forth in the applicable IO.

2. <u>Advertising Material</u>. Advertiser shall provide Publisher with all applicable Advertising Material prior to the beginning of a Campaign. Advertiser grants to Publisher a non-exclusive, transferable, revocable, sub-licensable right and license to use, reproduce, display, transmit, and distribute the Advertising Material for the purposes of performance of this Agreement. Publisher shall not alter, cut, crop, resize, modify, or make any other material change to the Advertising Material for any Campaign without Advertiser's prior consent. Nothing contained within this Agreement grants Publisher any intellectual property or ownership right to the Advertising Material, and Publisher may not copy, reproduce or create derivative works of the Advertising Material for any purpose outside of this Agreement without Advertiser's prior consent.

3. <u>Affiliates</u>. Publisher shall not use Affiliates or Sub-Affiliates without Advertiser's prior written consent. If Advertiser consents, and Publisher uses Affiliates, or Sub-Affiliates, Publisher represents that it will bind such Affiliates and sub-Affiliates to the terms of this Agreement and shall be liable for any breach of this Agreement by such Affiliates and Sub-Affiliates.

4. <u>Payment</u>. Publisher shall invoice Advertiser monthly, and unless otherwise set forth in the applicable IO, payment will be due to Publisher within thirty (30) days of the end of the month. Advertiser shall have ten (10) business days from its receipt of an invoice to notify Publisher of any dispute relating to such invoice.

5. <u>General.</u> Any web sites, emails, advertisements, links, or other media properties used to promote, display or transmit the Advertiser's Program shall meet the following requirements:

    (a) not include content that is deceptive or misleading or otherwise fails to comply with applicable federal and state consumer protection laws;

    (b) not infringe upon the personal rights, trademark, trade name, logo, publicity right, copyright, or other intellectual property (collectively, "Marks") of any third party;

(c) not contain content that is an invasion of privacy, degrading, libelous, unlawful, deceptive, profane, obscene, pornographic, tends to ridicule or embarrass, or is in bad taste, at the sole discretion of Advertiser;

(d) not offer incentives, points, rewards, cash, or prizes to consumers in return for their response to the advertisement;

(e) not spawn malicious, false, or deceptive pop-ups or exit pop-ups;

(f) not serve advertisements, or drive traffic to advertisements, using any spyware or similar downloadable application;

(g) not use any methods to generate Leads or Sales that are not initiated by the affirmative action of a consumer;

(h) not constitute any advertising via facsimile or telemarketing (including, without limitation, by use of prerecorded or artificial voice messages);

(i) not constitute any advertising to wireless devices or portable electronic devices by text messaging in any form (including without limitation SMS, Smart Messaging, EMS, and MMS);

(j) not promote any illegal activity including without limitation the promotion of gambling, illegal substances, software piracy, or hacking;

(k) not spoof, or redirect, traffic to or from any adult-oriented web sites or any other web sites not specifically designated by Advertiser as a Landing Page.

6. Fraud. Advertiser reserves the right to terminate this Agreement and investigate Publisher for fraudulent activity at its sole discretion. "Fraudulent Activity" for the purposes of this Agreement includes, but is not limited to, the following: if Advertiser suspects or determines that Publisher (a) generates multiple leads from the same IP address; (b) places Advertiser's links on incentivized websites without Advertiser's prior written consent; (c) generates multiple leads using proxy servers; (d) generates traffic in a manner other than as set forth in the applicable Campaign; or (e) uses fake redirects, automated software, or fraud to generate clicks or leads from Advertiser's campaign. The foregoing merely constitutes examples of fraudulent activity and shall not constitute a comprehensive list of all possible fraudulent activity.

(a) [Deleted]

(b) Advertiser shall provide to Publisher within ten (10) business days from the date of invoice, notice of Fraudulent Activity and a written report, including the reason and details of Fraudulent Activity. Publisher shall have five (5) business days from the receipt of the notice to respond, in which Publisher and Advertiser shall work together in good faith to mutually determine the correct amount of payment owed to Publisher.



DocuSign Envelope ID: 703C10CF-A3AD-4018-865C-9E48D9DF617D

7. <u>Privacy Policy.</u>  If Publisher uses a web site to promote Advertiser's Program, it must include a clear and conspicuous privacy policy that complies with the requirements of Cal. Bus. & Prof. Code § 22575-22579 (a California statute) and specifically states that consumer information collected through the site will be shared with third parties for marketing, fulfillment, or any other purposes.

8. <u>Audit Rights.</u>  In the event that Advertiser has a reasonable belief that Publisher, or its Affiliate or Sub-Affiliate, is not acting in compliance with this Agreement, or to the extent required by applicable law or any regulatory authority, Advertiser may audit and examine Publisher's activities and operations related to the obligations of Publisher hereunder.

9. <u>Confidential Information</u>.  For purposes of this Agreement, "Confidential Information" shall mean all data and information, of a confidential nature or otherwise, disclosed during the term of the Agreement by one party ("Disclosing Party") to the other party ("Receiving Party"), as well as information that the Receiving Party knows or should know that the Disclosing Party regards as confidential.  Confidential information does not include information that: (i) is in or enters the public domain without breach of this Agreement; (ii) the Receiving Party lawfully knew prior to receiving such information from the Disclosing Party; or (iii) the Receiving Party develops independently without the use of Disclosing Party's Confidential Information.  The Receiving Party agrees that it: (i) will not, for any reason or under any circumstance, directly or indirectly use, convert, apply, appropriate, employ, alter, transform, assign, put into operation or otherwise use any Confidential Information, in whole or in party, for any purpose whatsoever, other than as expressly permitted herein; (ii) will not disclose to any third party Confidential Information except as expressly permitted in this Agreement or as otherwise necessary to perform its obligations or exercise its rights under this Agreement; and (iii) will take all reasonable measures to maintain the confidentiality of the Confidential Information in its possession or control.  Notwithstanding the foregoing, either party may disclose Confidential Information as necessary to comply with the requirements of legal or administrative processes, provided that such Party provides the other Party with reasonable advance notice of any such intended disclosure and cooperates reasonably with its efforts to obtain a protective order.

10. <u>Non-Compete</u>.  [Deleted]

11. <u>Representations and Warranties</u>.  Each party represents and warrants that: (i) it has the power and authority to enter into and perform its obligations under this Agreement; and (ii) at all times, the Advertising Material (and its transmission) and its performance hereunder shall comply with all applicable laws, rules, regulations, and ordinances (collectively, "Laws") and will not violate any applicable rights of any third party. Furthermore, Publisher represents and warrants that it has disclosed, prior to executing this Agreement, the existence of any federal or state decrees, orders, or consent agreements, and any pending formal or informal government investigations or prosecutions by the Federal Trade Commission, any other federal or state governmental or regulatory body or agency, or any industry regulatory authority.

12. <u>Indemnity</u>.  Each party (the "Indemnifying Party") agrees to indemnify, defend, and hold the other party and its directors, officers, employees, and agents (the "Indemnified Party") harmless from and against any and all actions, claims, demands, proceedings, liabilities, judgments, settlements, fines, penalties, costs and expenses, including attorneys' fees and



DocuSign Envelope ID: 703C10CF-A3AD-4018-865C-0E48D9DF617D

related costs (collectively, "Losses") which: (i) arise solely or in part from the act(s) and/or omission(s) of the Indemnifying Party; or (ii) arise from or are related to a breach by the Indemnifying Party of any express warranty herein.  The Indemnified Party will promptly notify the Indemnifying Party of any such claim it becomes aware and will provide reasonable cooperation to the Indemnifying Party at the Indemnifying Party's expense in connection with the defense or settlement of any such claim and be entitled to participate at is own expense in the defense of any such claim.

13. <u>Disclaimer/Limitation of Liability</u>.  TO THE EXTENT PERMISSIBLE BY LAW, NEITHER PARTY MAKES ANY EXPRESS OR IMPLIED WARRANTY, TO THE EXTENT PERMISSIBLE BY LAW, OTHER THAN THE WARRANTIES EXPRESSED IN THIS AGREEMENT, IF ANY.  EACH PARTY PROVIDES THE SERVICES UNDER THIS AGREEMENT ON AN "AS IS" BASIS, AND HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED (EXCEPT THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT), REGARDING THE PARTY'S SERVICES OR ANY PROTION THEREOF, INCLUDING BUT NOT LIMITED TO ANY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT OR DIRECT LOST PROFITS, OR OTHER INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES, EVEN IF SUCH PARTY WAS OR SHOULD HAVE BEEN AWARE OR WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, OTHER THAN FOR PAYMENT OBLIGATIONS, EACH PARTY'S TOTAL CUMULATIVE LIABILITY HEREUNDER, FROM ALL CAUSES OF ACTION OF ANY KIND, SHALL BE LIMITED TO THE AMOUNTS PAID TO PUBLISHER BY ADVERTISER DURING THE SIX (6) MONTHS PRIOR TO THE DATE THE CAUSE OF ACTION AROSE.

14. <u>Termination</u>.  Either party may terminate this Agreement by providing the other party with two (2) business days prior written notice. Upon termination of this Agreement, any license granted under this Agreement shall be revoked, and Publisher shall immediately remove and discontinue the use of any Samples.com Advertising Material and cease conducting Advertising Campaigns on behalf of Advertiser. Any provisions of this Agreement that may reasonably be expected to survive termination or expiration of the Agreement shall survive and remain in effect in accordance with their terms.

15. <u>Miscellaneous.</u>
    (a) **Failure to Comply.**  Without limiting any other remedies specified herein or otherwise available to Advertiser, Publisher's failure to comply with the requirements of this Agreement will result in non-payment for the entire Program and may result in termination of Publisher's eligibility to promote Advertiser's Programs, at Advertiser' sole discretion.

    (b) **Notices.**  Any notices hereunder shall be given to the appropriate party at the address specified above or at such other address, as the party shall specify in writing. A copy of any notice of a legal nature sent to Samples.com hereunder shall also be sent via email to legal@samples.com. Notice shall be deemed given: (i) upon personal delivery; (ii) if sent by fax or email, upon confirmation of receipt (by person or machine); (iii) if sent by certified mail, postage prepaid, three days after the date of mailing; and (iv) if sent by nationally recognized overnight courier service capable of verified receipt, upon the



PAGE 4 of 6

PUBLISHER SERVICES AGREEMENT

CONFIDENTIAL
v.4.25.2016

day after the date on which the notice is delivered to the overnight courier for next day delivery (provided verified receipt is obtained by such courier).

(c) **Assignment**. Neither party may assign, transfer, or delegate any of its rights or obligations under the Agreement without the prior consent of the other party; any attempts to do so shall be null and void.

(d) **Choice of Law/Venue**. This Agreement shall be governed and construed in accordance with the laws of California. The parties hereby agree to submit to the exclusive jurisdiction of the federal or state courts of the State of California, located in San Diego County for all disputes that arise under or relate to this Agreement. The parties further agree to comply with all requirements necessary to give such court jurisdiction. The prevailing party in any dispute arising from or related to this Agreement shall, in addition to any and all damages awarded, be entitled to an award of reasonable attorney's fees and costs.

(e) **Force Majeure.** Neither party shall be held responsible for any delay or failure in performance of this Agreement caused by fire, hurricane, tornado, earthquake, tidal wave, meteor strikes, civil war, Internet brown-outs or black-outs, computer hacking, or acts of terrorists ("Force Majeure") if the effects of such Force Majeure could not have been avoided through the application of reasonable foresight or diligent effort. Notwithstanding the foregoing, a shortage of funds is never an event of Force Majeure.

(f) **Non-Waiver/Severability**. The failure of either party to enforce performance by the other party of any provision of this Agreement or to exercise any right under this Agreement shall not be construed as a waiver of such party's right to assert such provision. If any portion of this Agreement is ruled by a court of competent jurisdiction to be unlawful, void, or for any reason unenforceable, then, to the maximum extent permitted by law, the provision shall be reformed to reflect the intent of the parties, or if the provision cannot be so reformed, it shall be severed from the contract, and such severance shall not affect the validity and enforceability of the remaining provisions of this Agreement.

(g) **Relationship of the Parties**. The parties hereto are independent contractors. There is no relationship of partnership, joint venture, employment or franchise relationship between the parties. Neither party has the authority to bind the other or incur any obligation on its behalf.

(h) **Entire Agreement**. This Agreement, together with the IOs, is the complete agreement between the parties with respect to the subject matter hereof, and supersedes and replaces all prior agreements, communications, and understandings (both written and oral) regarding such subject matter. The terms and conditions of this Agreement will prevail over any contrary or inconsistent terms in any other writing. Any electronic terms either party may be required to accept of the other party shall be of no force and effect, even if such acceptance occurs prior to, contemporaneous with, or subsequent to this Agreement or an IO. This Agreement may only be modified by a written document executed by both parties.



**I HAVE READ AND AGREE TO THE TERMS SET FORTH IN THIS AGREEMENT.**

| SAMPLES.COM, LLC | | ADVERTISER: | |
|---|---|---|---|
| BY (SIGNATURE): | *Josh Ogle* (DocuSigned by, 4DDED43C1F3E429...) | BY (SIGNATURE): | *Alex Andebeek* (DocuSigned by, BE7720BA30ED414) |
| NAME: | Josh Ogle | NAME: | Alex Andebeek |
| TITLE: | CEO | TITLE: | CEO |
| DATE: | 9/12/2016 | DATE: | 9/12/2016 |