1  Christopher S. Morris, Esq., SBN 163188
   cmorris@morrislawfirmapc.com
2  Jacob A. Gillick, Esq. 312336
   jgillick@morrislawfirmapc.com
3  MORRIS LAW FIRM, APC
   501 West Broadway, Suite 1480
4  San Diego, CA 92101
   Telephone:  (619) 826-8060
5  Facsimile:  (619) 826-8065

6  Attorneys for Defendants Zeetogroup, LLC,
   Samples.com, LLC, and Tibrio, LLC
7

8           UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11 | GLOBAL VENTU HOLDING B.V.,        | Case No. 19cv1018 DMS LL
12 |                   Plaintiff,      | **DEFENDANTS' POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)**
13 |        v.                         |
14 | ZEETOGROUP, LLC,                  |
   | SAMPLES.COM, LLC, AND             |
15 | TIBRIO, LLC,                      | Date:   October 25, 2019
16 |                   Defendants.     | Time:   1:30 p.m.
   |                                   | Dept:   13A
17 |                                   | Judge:  Hon. Dana M. Sabraw

1

DEFENDANTS' MOTION TO DISMISS                               19cv1018 DMS LL

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 5

II. STATEMENT OF FACTS .................................................................................. 6

III. STANDARD FOR DISMISSAL FOR FAILURE TO STATE A CLAIM ......... 8

IV. ARGUMENT ....................................................................................................... 9

   A.   Plaintiff's First Claim Fails to State a Claim Upon Which Relief Can Be Granted ..................................................................................................................... 9

   B.   Plaintiff's Second Claim Fails to State a Claim Upon Which Relief Can Be Granted ................................................................................................................... 10

   C.   Plaintiff's Third and Fourth Claims Fail to State a Claim Upon Which Relief Can Be Granted .............................................................................................. 11

      1.   *Trade Secret* ................................................................................................ 12

      2.   *Misappropriation* ....................................................................................... 14

   D.   Plaintiff Fails to Make Sufficient Allegations Against Defendant ZeetoGroup, LLC. ..................................................................................................... 14

V. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

Ashcroft v. Iqbal
    556 U.S. 662 (2009) .................................................................................. 8

Balistreri v. Pacifica Police Dep't.
    901 F.2d 696 (9th Cir. 1988) .............................................................. 8, 11

Bell Atlantic Corp. v. Twonbly
    550 U.S. 544 (2007) ................................................................................ 10

Bissessur v. Indiana Univ. Bd. Of Trustees
    581 F.3d 599 (7th Cir. 2009) .................................................................. 11

Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.
    637 F.3d 1047 (9th Cir. 2011) ................................................................ 10

Ileto v. Glock Inc.
    349 F.3d 1191 (9th Cir. 2003) .................................................................. 8

MAI Sys. Corp. v. Peak Computer, Inc.
    991 F.2d 511 (9th Cir. 1993) .................................................................. 12

Moss v. United States Secret Serv.
    572 F.3d 962 (9th Cir. 2009) .................................................................... 9

Navarro v. Block
    250 F.3d 729 (9th Cir. 2001) .................................................................... 8

Richman v. Hartley
    224 Cal.App.4th 1182 (2014) ................................................................... 9

Sprewell v. Golden State Warriors
    266 F.3d 979 (9th Cir. 2001) .................................................................... 8

Sun Distrib. Co., LLC v. Corbett
    No. 18-CV-2231-BAS-BGS, 2018 WL 4951966, at *3 (S.D. Cal. Oct. 12, 2018) ......................................................................................... 12

**STATUTES**

18 U.S.C. Section 1839(3) ................................................................................ 12, 13

18 U.S.C. Section 1839(5)(B)(i) ............................................................................. 14

18 U.S.C. Section 1839(6)(B) ................................................................................ 14

California Civil Code Section 3426.1(b)(2)(A) ...................................................... 14

California Civil Code Section 3426.1(d) ......................................................... 12, 13

**RULES**

Federal Rules of Civil Procedure, Rule 12(b)(6) ......................................... 8, 10, 14

Federal Rules of Civil Procedure, Rule 8(a)(2) ........................................................ 8

## I.

## INTRODUCTION

Defendants ZeetoGroup, LLC ("Zeeto") and Tibrio, LLC fka Samples.com ("Tibrio") (collectively referred to as "Defendants" or "Zeeto") own and operate two websites: samples.com and getitfree.us. Both sites aggregate free samples ranging from cleaning supplies to snack foods and give them away to customers who visit their websites. There is also a sweep stakes aspect to Zeeto's getitfree.us website whereby in exchange for answering certain questions, a consumer will be placed into a drawing. Zeeto makes money off of these websites by, (1) connecting consumers to advertisers, and (2) allowing advertisers to put ads on the websites.

In 2016, Tibrio contracted with Plaintiff Global Ventu Holding BV ("Plaintiff" or "Global Ventu") to run its Facebook advertising account. Pursuant to the agreements, Global Ventu would be granted access to Tibrio's Facebook account and would post advertisements which would then be tracked by Global Ventu. For roughly two years the parties had a good working relationship.

In October of 2018, Tibrio's Chief Executive Officer, Joshua Ogle, was terminated for failing to meet his contractually agreed upon targets. Following this termination, Global Ventu attempted to re-negotiate their contract with Tibrio for a higher revenue share. Tibrio was surprised that Global Ventu wished to terminate the contract unless they were paid more money. Nonetheless, Tibrio took part in good-faith negotiations with Global Ventu. In the end, Global Ventu declined all offers from Tibrio.

As it was clear that Global Ventu was disgruntled and terminating the agreements, Defendant Tibrio locked Global Ventu out of the Facebook account in order to prevent it from using Tibrio's payment information which was linked to the account. As a final measure to ensure that everything was properly documented, pursuant to the terms of the contract, a termination letter was issued by Tibrio to Global Ventu on or around November 19, 2018.

Plaintiff alleges in its lawsuit that Defendants improperly locked it out of the Facebook account where a lot of "confidential information" was stored. Facebook is not a "cloud" service and was not being used to "store" any information. Further, Plaintiff never requested access back into the Facebook account to retrieve the alleged information. Instead, Plaintiff went ahead and filed a lawsuit months later claiming that the information was misappropriated.

As discussed below, the information contained on the Facebook account, if any, was work product and not a "trade secret." Further, Plaintiff was the one who terminated the relationship by demanding a re-negotiation of the agreements. Therefore, Defendants request that all causes of action against them be dismissed without leave to amend.

## II.

## STATEMENT OF FACTS

Plaintiff Global Ventu Holding, BV ("Global Ventu" or "Plaintiff") specializes in developing unique campaign ad structures for social media advertisements. Plaintiff's First Amended Complaint ("FAC") [Dkt. # 14] ¶ 9. This includes optimizing campaigns, organizing ad budgets, and using Facebook's tools to effectively target certain customers. Ibid.

In June of 2016, Global Ventu entered into a contract with Samples, LLC ("Samples") and Tibrio, LLC ("Tibrio"). Id. at ¶ 10. Samples and Tibrio connect users with samples, coupons, and deals available on the internet. Ibid. Samples and Tibrio hired Global Ventu to drive visitors to www.getitfree.us. Id. This was memorialized through two agreements, a Publisher Services Agreement ("PSA"), and a Revenue Share Agreement ("RSA"). Id. at ¶¶ 11-12. Both the PSA and RSA are attached to Plaintiff's FAC as exhibits. Pursuant to the agreements, each party was to retain its rights in any intellectual property it created. Id. at ¶ 13. The provision also provided that a party wishing to terminate the RSA must provide the other party with "two (2) business days prior written notice" and that "upon

1  termination, Global Ventu's access to the Facebook Account shall be withdrawn."
2  Id. at ¶ 15.
3      On November 12, 2018, Samples/Tibrio informed Global Ventu that it would
4  be switching its backend technology to a software system called ZAN. Id. at ¶ 20.
5  In response, Global Ventu repeatedly attempted to convince Samples/Tibiro not to
6  switch to ZAN. Id. at ¶ 21. Samples/Tibrio refused. Ibid. As a result of this
7  refusal, Global Ventu sought to re-negotiate the agreements for "an increased
8  revenue share until such time as problems with the software were worked out." Id.
9  at ¶ 22. Plaintiff declined every offer made by Samples/Tibrio for a new revenue
10 share. Id. at ¶ 23. Following Plaintiff's final refusal, Defendant Tibrio locked
11 Plaintiff out of the Facebook account. Ibid. Roughly three days later, pursuant to
12 the RSA, Samples/Tibrio sent a formal termination letter to Global Ventu. Id. at ¶
13 24.
14     Plaintiff argues that "[b]y immediately terminating Global Ventu's access to
15 the Facebook Account in violation of the RSA, and thereby ensuring that Global
16 Ventu could not remove its ad content or the confidential ad-targeting data and
17 media buying strategies, Samples/Tibrio or ZeetoGroup now had access to Global
18 Ventu's valuable content and information." Id. at ¶ 25. Plaintiff also alleges that
19 Defendants used that content and information for their own profit by "running
20 Facebook ads with identical or near-identical content." Id. at ¶ 26.
21     Defendants deny all of the allegations made by Plaintiff as it was Plaintiff
22 who terminated the agreements. Further, as Facebook is not a "cloud" service, no
23 information was actually "stored" on the account. Even if Facebook did store
24 information, Plaintiff never requested access to retrieve the information because
25 there was nothing to retrieve. Finally, Plaintiff has failed to allege how the work
26 product delivered pursuant to the contracts constitutes "trade secrets" as defined by
27 the Defend Trade Secrets Act and California Uniform Trade Secrets Act.
28 / / /

Therefore, Defendants request that all causes of action against them be dismissed without leave to amend.

## III.

## STANDARD FOR DISMISSAL FOR FAILURE TO STATE A CLAIM

A Rule 12(b)(6) motion tests whether a plaintiff's claims are legally sufficient. See FRCP 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). Dismissal is appropriate when the complaint fails to allege a cognizable legal theory or sufficient facts to support such a theory. Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988). Under Federal Rules of Civil Procedure, Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and although Rule 8 "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677-678 (2009). "The tenet a court must accept as true all of the allegations contained in a complaint as inapplicable to legal conclusions." Id. at 678. Also, the court is not obliged to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or those which are "merely conclusory," require "unwarranted deductions" or "unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) [citation omitted], amended on other grounds, 275 F.3d 1187 (9th Cir. 2001); see also Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the form of factual allegations).

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, which when taken as true, demonstrates the claim is "plausible on its face." Ashcroft, 556 U.S. at 678. "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. In sum, for a complaint to survive a motion to

dismiss, the nonconclusory "factual content," and reasonable inferences from the content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Ibid; Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

## IV.

## ARGUMENT

### A. Plaintiff's First Claim Fails to State a Claim Upon Which Relief Can Be Granted

Plaintiff asserts in its first claim that Defendant Samples, LLC ("Samples") and Tibrio, LLC ("Tibrio") violated the Revenue Share Agreement (RSA) by depriving Plaintiff of access to its own ad content and confidential information without first validly terminating the RSA with the required two-business-days' notice. FAC [Dkt. # 14], ¶ 37. Specifically, Plaintiff alleges that it was prevented from retrieving its content from the Facebook account because Defendants did not allow two days for Plaintiff to access the account.

In order to sustain a claim for breach of contract, a plaintiff must allege facts showing: (1) the contract, (2) the plaintiff's performance or excuse for nonperformance of the contract, (3) the defendant's breach, and (4) the damage to the plaintiff as a result of the breach. Richman v. Hartley, 224 Cal.App.4th 1182, 1186 (2014).

While Plaintiff does allege that Defendants breached the agreement by terminating it without the required two-business-days' notice, the facts in the Complaint are contrary to this contention. FAC [Dkt. # 14], ¶ 23. It was actually Plaintiff who notified Defendants that it wanted to renegotiate for an increased revenue share. FAC [Dkt. # 14], ¶ 22. This indicated its notice and intent to terminate the RSA. It was not Defendants who terminated the contract, it was Plaintiff, as admitted in the FAC. Ibid. Therefore, Plaintiff has failed to allege that Defendants breached the RSA as Plaintiff was the one who terminated the agreement.

Further, Plaintiff has failed to state how any damages were caused by Defendants' alleged breach. Defendants never retained the right to Plaintiff's work product and Plaintiff never lost access to such, it only lost access to the Facebook account which belongs to Samples. FAC [Dkt. # 14], ¶ 37. Further, Plaintiff's FAC admits that "traffic 'runs through [Global Ventu's] voluum links' –referring to Voluum, a tracking software." FAC [Dkt. #14], ¶ 22. Therefore, Plaintiff did have access to their work product.

Finally, it is implausible that Plaintiff suffered actual damages for not being able to "remove" their content from the Facebook account. Storage of content on Facebook is not a function of Facebook as it is not a "cloud" type service. Plaintiff simply uploaded things to post on Facebook and tracked that information using Voluum. It is unclear from the FAC what information was actually stored on Facebook which could have been retrieved. The court, when ruling on a Rule 12(b)(6) motion, considers the complaint's factual allegations, "together with all reasonable inferences" from those allegations as the allegations must be "plausible." Bell Atlantic Corp. v. Twonbly, 550 U.S. 544, 570 (2007); Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1054 (9th Cir. 2011). Plaintiff never requested access to retrieve its "information" because that function does not exist.

Based on Plaintiff's failure to plausibly allege that Defendants breached the RSA and that it sustained damages, Defendants request that Plaintiff's First Claim be dismissed without leave to amend.

**B.   Plaintiff's Second Claim Fails to State a Claim Upon Which Relief Can Be Granted**

Plaintiff's Second Claim alleges that Defendants Samples and Tibrio breached the provision of the Publisher Services Agreement ("PSA") which addresses the use of "Confidential Information." Specifically, Plaintiff alleges that

///

Defendants, after terminating Plaintiff, used its "Confidential Information." FAC [Dkt. # 14], ¶ 42.

A complaint for breach of contract will be dismissed if it merely states that plaintiff "had a contract with the defendant, gave the defendant consideration, and the defendant breached the contract. What was the contract? The promises made? The consideration? The nature of the breach?" Bissessur v. Indiana Univ. Bd. Of Trustees, 581 F.3d 599, 603 (7th Cir. 2009).

Plaintiff's contention that Defendants "used, converted, applied, appropriate, employed, and put into operation" Plaintiff's confidential data is insufficient as Plaintiff fails to allege facts to support that its work product through Facebook was actually "confidential information" as defined in the PSA. FAC [Dkt. #14], ¶ 42. Had the information been truly confidential and important, Plaintiff would have blocked Defendants' access to the information through their tracking lead.

Further, Plaintiff has failed to sufficiently allege what information was used or when it was used by Defendants. The blanket allegation that Defendants' "used, converted, applied, appropriated, employed, and put into operation" the "Confidential Information" is insufficient to state a claim as Defendants are unsure of what Plaintiff is talking about or how that is possible. Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).

Therefore, Plaintiff's second claim fails to allege enough facts to demonstrate Defendants' breach and therefore must be dismissed.

**C. Plaintiff's Third and Fourth Claims Fail to State a Claim Upon Which Relief Can Be Granted**

Plaintiff, in its Third and Fourth Causes of Action, contends that: (1) Plaintiff developed information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; (2) Plaintiff undertook reasonable efforts under the circumstances to maintain the secrecy of the trade secret information; and (3)

Defendants used improper means—by breaching the PSA and the RSA—to acquire knowledge of such information. FAC [Dkt. # 14], ¶¶ 44-56.

To state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), Plaintiff must show "(1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret." Sun Distrib. Co., LLC v. Corbett, No. 18-CV-2231-BAS-BGS, 2018 WL 4951966, at *3 (S.D. Cal. Oct. 12, 2018). A claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") has substantially similar elements. Id.

### 1. Trade Secret

Both the DTSA and CUTSA define "trade secret" as information that: "(A) the owner thereof has taken such reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). Thus, a plaintiff asserting a CUTSA or DTSA claim "must identify the trade secrets" and carry the burden of alleging facts sufficient to demonstrate that it took reasonable steps to maintain the secrecy of the protected information. MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 521-22 (9th Cir. 1993).

Plaintiff fails to allege how that the information on Defendants' Facebook account derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d).

As described in the FAC, "Global Ventu created its own advertising content, including text, images, and videos, which was posted on that Facebook Account. And by use of tracking pixels (website code that tracks a user's behavior) embedded in the advertisements, Global Ventu was able to build a profile of the

12

audience of users that responded well to its Facebook ad campaigns, and use that data to optimize the targeting of its ads." FAC [Dkt. #14], ¶ 16.

The information used through the Facebook account were not trade secrets. Instead, the information was work product delivered to Defendants pursuant to the agreements. Plaintiff's FAC attempts to blur the lines between self-described "confidential information" and "trade secrets" as described by the DTUSA and CTSA. Therefore, Plaintiff has failed to establish how the information on Defendants Facebook Account constitutes a "trade secret" because the information was actually nothing more than work product.

Plaintiff also contends that the "Confidential Information" provision in the contract was its reasonable effort to maintain the secrecy of the confidential data allegedly stored in Defendant's Facebook account. FAC [Dkt. #14], ¶¶ 46-47. Calling information "confidential" in a contract is not the same as establishing a "trade secret" through the CUTSA and DTSA. Further, there is no explanation by Plaintiff of what it did to maintain the "secrecy" of the information from Defendants or how a confidentiality provision to a contract defining ownership is a reasonable measure to keep information a "secret." U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d).

As alleged in the FAC, Plaintiff uploaded what it believes is "confidential information" onto Defendants Facebook account which Defendants had the right to restrict Plaintiff's access to. FAC [Dkt. # 14], ¶¶ 12, 15. There were no reasonable measure to keep the information "a secret" as required by the DTSA and CUTSA. Further, at no point does Plaintiff allege it changed the login information to prevent any Defendant from learning of the alleged "trade secrets." Plaintiff also fails to allege that it attempted to retrieve the information following the lockout by requesting it from Defendants. Thus, even if Plaintiff's allegation that the Facebook account stored confidential data is true, the FAC is insufficient to establish that Defendants took reasonable measures to protect actual "trade secrets."

### 2. *Misappropriation*

"Misappropriation" is defined as the "disclosure or use of a trade secret of another without express or implied consent by a person *who used improper means to acquire knowledge of the trade secret.*" 18 U.S.C. § 1839(5)(B)(i); Cal. Civ. Code § 3426.1(b)(2)(A). Prohibited impropriety of acquisition of a trade secret does not include "lawful means of acquisition." 18 U.S.C. § 1839(6)(B).

Plaintiff fails to plead facts which could establish that Defendants acquired the alleged trade secret by "improper means." Plaintiff contends that the termination of the contract, which Plaintiff demanded renegotiation of, was a breach, and this breach was Defendants' "improper means" of acquiring knowledge of the trade secret by subsequently locking Plaintiff out of the Facebook account. FAC [Dkt. # 14], ¶¶ 48, 55. As discussed above and in the FAC, Defendant Samples always had access to its own Facebook account and the content stored and published on it. FAC [Dkt. #14], ¶ 17. As the "confidential data" was allegedly stored by Plaintiff in Defendant's Facebook account, Defendants acquired the information through proper and lawful means well before Plaintiff's access was withdrawn. Therefore, Plaintiff's conclusory allegation that Defendants "improperly acquired" their alleged "trade secret" on Facebook is improper and attempts to confuse timelines.

As Plaintiff has failed to establish that the information constitutes a "trade secret" and that Defendants "misappropriated" such information, Plaintiff's Third and Fourth Causes of Action fail as a matter of law and should be dismissed without leave to amend pursuant to Rule 12(b)(6).

### D. **Plaintiff Fails to Make Sufficient Allegations Against Defendant ZeetoGroup, LLC.**

Plaintiff's Third and Fourth Claim allege that Defendants Zeeto, Samples, and Tibrio are all liable for violations of the California Uniform Trade Secrets Act and Defend Trade Secrets Act. FAC [Dkt. # 14], ¶¶ 44-56.

As alleged in the FAC, "Global Ventu was allocated exclusive use of two of ZeetoGroup's Facebook Advertising Accounts. The accounts had previously been used by ZeetoGroup but were erased of all advertising campaigns." FAC [Dkt, # 14], ¶ 18. Further, Plaintiff alleges that "Samples/Tibrio would provide Global Ventu with access to Samples/Tibrio' social media accounts, specifically its 'Facebook Account,' and that Global Ventu would then 'be responsible for general oversight and management of the Facebook Account.'" FAC [Dkt. # 14], ¶ 12.

The only allegation against Zeeto specifically is that "Samples/Tibrio and ZeetoGroup then used that improperly acquired trade secret information to generate revenue for themselves after terminating the relationship with Global Ventu." FAC [Dkt. #14], ¶¶ 48, 55. These conclusory allegations are insufficient as to how Zeeto was at all involved in the alleged misappropriation. There are no facts which allege that Zeeto had access to the Facebook Accounts or specific instances of when Zeeto used the alleged "trade secrets." Due to the insufficient allegations against Zeeto, Defendants respectfully request that Zeeto be dismissed from Plaintiff's Third and Fourth causes of action.

## V.

## CONCLUSION

Plaintiff has filed the instant lawsuit likely at the behest of Tibrio's former, and disgruntled, CEO, Joshua Ogle. There is no merit to the allegations of Plaintiff as the contracts were terminated by Plaintiff itself when it demanded a re-negotiation. Further, Plaintiff has failed to allege how work product constitutes "trade secrets" under the DTSA and CUTSA.

/ / /

/ / /

/ / /

/ / /

/ / /

DEFENDANTS' MOTION TO DISMISS                                   19cv1018 DMS LL

Based on the above, Defendants request that all causes of action be dismissed without leave to amend.

Respectfully submitted,

**MORRIS LAW FIRM, APC**

Dated: September 24, 2019         *s/ Jacob A. Gillick* _____
Jacob A. Gillick, Esq.
jgillick@morrislawfirmapc.com
Attorneys for Defendants Zeetogroup, LLC, Samples.com, LLC, and Tibrio, LLC