Scott E. Rahn, Esq. (SBN 222528)
rahns@rmolawyers.com
Sean D. Muntz, Esq. (SBN 223549)
muntzs@rmolawyers.com
David G. Greco (SBN 299635)
grecod@rmolawyers.com
**RMO LLP**
2029 Century Park East, Suite 2910
Los Angeles, CA 90067
Phone: (424) 320-9444

Attorneys for Plaintiff
GLOBAL VENTU HOLDING B.V.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V., <br><br> Plaintiff, <br><br> v. <br><br> ZEETOGROUP, LLC, SAMPLES.COM, LLC, and TIBRIO, LLC, <br><br> Defendants. | Case No.: 19-CV-1018 DMS LL <br><br> **OPPOSITION BY PLAINTIFF GLOBAL VENTU HOLDING B.V. TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date: October 25, 2019 <br> Time: 1:30 p.m. <br> Dept: 13A <br> Judge: Hon. Dana M. Sabraw |

## TABLE OF CONTENTS

Page

I. Introduction ........................................................................................................... 1

II. Facts ..................................................................................................................... 2

III. Standard ............................................................................................................... 2

IV. Argument ............................................................................................................. 3

    A. The Court should deny Defendants' request to dismiss Plaintiff's First Cause of Action for Breach of the Revenue Share Agreement ("RSA") ............... 3

        1. To no avail, Defendants attempt to obfuscate the breach allegations. ....... 3

        2. Plaintiff adequately pleads its damages. ..................................................... 4

    B. The Court should deny Defendants' request to dismiss Plaintiff's Second Cause of Action for Breach of the Publisher Services Agreement ("PSA"). 5

    C. The Court should deny Defendants' request to dismiss Plaintiff's Third and Fourth causes of Action for trade secret violations. ...................................... 6

        1. Plaintiff adequately pleads a trade secret. ................................................... 6

            a. Plaintiff pled sufficient efforts to keep its data secret. ............................. 6

            b. Plaintiff pled that the data is generally unknown, valuable, and beneficial to competitors and others. .......................................................................... 8

        2. Plaintiff adequately pled misappropriation. ................................................ 9

    D. The allegations against ZeetoGroup suffice to state a claim. ......................... 9

    E. The Court should deny Defendants' motion because it is late. ..................... 11

    F. The Court should grant leave to amend if it grants any part of the motion. 11

V. Conclusion .......................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anderson v. U.S.*,
   718 F. Supp. 2d 1186 (C.D. Cal. 2010)..................................................................4

*ABBA Rubber Co. v. Seaquist*,
   235 Cal. App. 3d 1 (1990)..............................................................................6, 7, 8

*Aetna Life Ins. Co. v. Alla Medical Services, Inc.*,
   855 F.2d 1470 (9th Cir. 1988)................................................................................11

*Courtesy Temp. Serv. Inc. v. Camacho*,
   222 Cal. App. 3d 1278 (1990)........................................................................6, 7, 8

*Darbun Enterprises, Inc. v. San Fernando Community Hospital*,
   239 Cal. App. 4th 399 (2015)..................................................................................3

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011)....................................................................9

*Morlife Inc. v. Perry*,
   56 Cal. App. 4th 1514 (1997)........................................................................6, 7, 8

*Shroyer v. New Cingular Wireless Services, Inc.*,
   622 F.3d 1035 (9th Cir. 2010)................................................................................2

*Strom v. United States*,
   641 F.3d 1051 (9th Cir. 2011)................................................................................2

*Sun Distrib. Co. v. Corbett*,
   2018 WL 4951966 (S.D. Cal. Oct 12, 2018)..........................................................6

*Sweet v. Johnson*,
   169 Cal. App. 2d 630 (1959).............................................................................4, 9

*United States v. Corinthian Colleges*,
   655 F. 3d 94 (9th Cir. 2011)..................................................................................11

*Whitney Inv. Co. v. Westview Development Co.*,
    273 Cal. App. 3d 594 (1969)...............................................................................3, 4

**STATUTES**

18 U.S.C. § 1839(5)(B)(i) ............................................................................................... 9

Cal. Civ. Code § 3426.1(d) .........................................................................................6, 9

**RULES**

F.R.C.P. 12(b) ............................................................................................................... 11

F.R.C.P. 12(c) ............................................................................................................... 11

F.R.C.P. 12(b)(6) ............................................................................................................ 2

F.R.C.P. 15(a) ............................................................................................................... 11

# I. Introduction

Defendants' motion should be denied.

Plaintiff sufficiently pled each element of both of its breach of contract claims. Defendants argue that Plaintiff anticipatorily breached one of the contracts by attempting to renegotiate terms, but this argument fails because anticipatory breach requires an unequivocal intent to cease performance. Defendants also claim that Plaintiff failed to adequately plead its contract damages, but this argument fails because (1) every breach of contract automatically entitles the non-breaching party to nominal damages; and (2) Plaintiff pled that Defendants have improperly retained their secret information, profited from it, and decreased the information's value.

Defendants also feign an inability to understand what information they have improperly retained in violation of the parties' contracts—but the text of the complaint shows that the contracts defined the confidential information and the parties' rights in respect to it.

Next, Defendants argue that Plaintiff fails to satisfy any of the elements of a trade secret, or of trade secret misappropriation. They argue that the information at issue was not sufficiently secret because it was loaded into Defendants' online accounts—but that is not the law. The law requires only that a party reasonably work to maintain the information's secrecy, through confidentiality agreements or otherwise. That is the case here. Defendants also claim that the information at issue could not be valuable, generally unknown, or beneficial to competitors—but they do so by arguing that the information at issue is access to the online account where it is stored. That is incorrect: this case is about the data itself.

Defendants then dishonestly claim that no allegations exist to support a claim against ZeetoGroup. That ignores that the complaint mentions ZeetoGroup thirty-seven times, including describing that ZeetoGroup oversees the other Defendants and that it benefitted financially from Defendants' theft of Plaintiff's trade secrets.

Defendants' motion was also filed late. It should be denied in its entirety.

## II. Facts

Plaintiff specializes in developing unique campaign ad structures for social media advertisements. Its techniques involve structuring and optimizing campaigns, organizing ad budgets in a unique and more effective way, and utilizing Facebook's "pixel" in a way that allows Plaintiff to more effectively target certain customers. (Doc. No. 14, First Amended Complaint, at ¶ 8.)

Defendants and Plaintiff agreed via two contracts that Plaintiff would provide digital marketing services for Defendants. The contracts provided that Plaintiff would retain all intellectual property rights to the ads it generated, the methods it used to generate them, and the data that was gathered through the use of those ads. The contracts also required Defendants to provide two days of notice before they ended the relationship—so Plaintiff could retrieve its ads and the data that came from them.

Defendants locked Plaintiff out of the online accounts where the ads and other data were housed, without providing the required two days of notice. Since then, Defendants have utilized all of Plaintiff's techniques, ads, and data to generate revenue for themselves. They have denied Plaintiff the right to retrieve its data.

Plaintiff filed a complaint for breach of contract and misappropriation of trade secrets. Defendants moved to dismiss.

## III. Standard

Under Rule 12(b)(6), a motion to dismiss tests the legal sufficiency of facts on the face of the complaint. *Strom v. United States*, 641 F.3d 1051, 1067 (9th Cir. 2011). To prevail, a plaintiff need show only that the complaint pleads plausible facts that would entitle the plaintiff to relief, if proven true. *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

///

///

///

## IV. Argument

### A. The Court should deny Defendants' request to dismiss Plaintiff's First Cause of Action for Breach of the Revenue Share Agreement ("RSA").

A breach of contract action requires allegations of a contract, performance by the non-breaching party, breach, and resulting damages. *Darbun Enterprises, Inc. v. San Fernando Community Hospital*, 239 Cal. App. 4th 399, 409 (2015).

Plaintiff pleads that Defendants breached the RSA by failing to give the required two-day notice. (Doc. No. 14 at ¶ 23.) Plaintiff also pleads that Defendants knew of their breach and tried to cure it by sending a belated termination letter. *Id.* ¶ 24. The complaint also states that Plaintiff suffered damages because it has lost control of its secret information, which Defendants are now using as a profit vehicle for themselves. *Id.* at ¶¶ 25-26. Thus, Plaintiff has adequately pled a breach of the RSA. As discussed below, Defendants' contrary contentions are meritless.

#### 1. To no avail, Defendants attempt to obfuscate the breach allegations.

Defendants admit that the complaint pleads that they breached the RSA by failing to give the required notice. (Doc. No. 16-1 at 9:20-21.) They nevertheless claim that Plaintiff breached the contract by attempting to "renegotiate for an increased revenue share." *Id.* at 9:22-25. This appears to be a contention that Plaintiff anticipatorily breached the contract.

Anticipatory breach requires communication of unequivocal intent to cease performance—attempted renegotiation does not suffice. *Whitney Inv. Co. v. Westview Development Co.*, 273 Cal. App. 3d 594, 602 (1969) ("In order to constitute an anticipatory breach the promisor must manifest such intention by a clear, positive and unequivocal refusal to perform."). In *Whitney*, the California Court of Appeal held that a party did not anticipatorily breach a contract when it requested to change the date of commencement. *Id.* at 602-03.

Under *Whitney*, Defendants cannot satisfy a claim of anticipatory breach. Plaintiff sought to renegotiate its share of the revenue—but it never stated or implied it would not perform its contract duties. This contention fails.

2. <u>Plaintiff adequately pleads its damages.</u>

Defendants argue that "Plaintiff has failed to state how any damages were caused by Defendants' alleged breach." In order to accept this argument, the Court would have to ignore the text of the complaint.

First, every breach of contract entitles the non-breaching party to nominal damages. *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (1959) ("A plaintiff is entitled to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him . . . , since the defendant's failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct from the actual damages."). Plaintiff sufficiently pled breach, as discussed above, so even if Plaintiff had no other damages—which it does—the complaint would survive a motion to dismiss, so Plaintiff could recover nominal damages.

Second, Plaintiff pleads that, "[b]y immediately terminating [Plaintiff]'s access to the Facebook Account in violation of the RSA, and thereby ensuring that [Plaintiff] could not remove its ad content or the confidential ad-targeting data and media buying strategies, Samples/Tibrio and ZeetoGroup now had access to [Plaintiff]'s valuable content and information." (Doc. No. 14 at ¶ 25.) When it lost control of its data, Plaintiff suffered damages because it lost the ability to prevent other parties from utilizing the methods and information it had created for their own benefit. *Cf. id.* at ¶ 26 ("Samples/Tibrio and ZeetoGroup proceeded to use that content and information for their own profit."). It also suffered damages because the value of its methods decreases when it is not kept under lock and key. *Cf. Anderson v. U.S.*, 718 F. Supp. 2d 1186, 1199 (C.D. Cal. 2010) (explaining that secret information derives value from being kept secret).

For the same reasons, Defendants' third argument—that it is not plausible that Plaintiff suffered damages—fails. (*See* Doc. No. 16-1 at 10:8-19.)

**B.     The Court should deny Defendants' request to dismiss Plaintiff's Second Cause of Action for Breach of the Publisher Services Agreement ("PSA").**

Defendants argue (1) that the allegations relating to this breach are conclusory because the information was not "confidential" or "important" as defined by the PSA; and (2) that "Plaintiff failed to sufficiently allege what information was used or when it was used by Defendants." (Doc. No. 16-1 at 11:8-19.) Both contentions lack merit.

The first argument has no merit because Plaintiff provides the definition of confidential information and pleads that Defendants misappropriated it. "Recognizing that they may disclose confidential and proprietary information to one another during the course of their business relationship, the parties included a provision in the PSA addressing the use of 'Confidential Information,' which was defined as 'all data and information, of a confidential nature or otherwise, disclosed during the term of the Agreement by one party ('Disclosing Party') to the other party ('Receiving Party'), as well as information that the Receiving Party knows or should know that the Disclosing Party regards as confidential.'" (Doc. No. 14, Ex. A § 9.) Under the PSA, the Receiving Party agreed that it "will not, for any reason or under any circumstance, directly or indirectly use, convert, apply, appropriate, employ, alter, transform, assign, put into operation or otherwise use any Confidential Information, in whole or in part[], for any purpose whatsoever, other than as expressly permitted herein." *Id.*

"All data and information" meant, and includes, the skills and tactics used to engage in "Internet marketing and advertising, and in media buying and social media, to drive visitors to www.getitfree.us" (doc. no 14 at ¶ 10); "developing and optimizing existing campaigns (*id.* at ¶ 12); "managing budgets for campaigns" (*id.*); and planning, buying, and executing campaigns" (*id.*). That is confirmed by paragraph 2 of the PSA, which states: "'[s]hould either Samples/Tibrio or Global

Ventu create any advertisements, creatives, copy, or any other related intellectual property, [that] will remain the property of the party which created such intellectual property." *Id.* at ¶ 13.

The second argument has no merit for the same reasons. Plaintiff has pled that Defendants retained access to Plaintiff's intellectual property without authorization, and then used that intellectual property to develop ads from which it is now profiting. *Id.* at ¶ 25-29.

**C. The Court should deny Defendants' request to dismiss Plaintiff's Third and Fourth causes of Action for trade secret violations.**

Defendants argue that Plaintiff's complaint fails to plead (a) that the information is a trade secret; and (b) that Defendants misappropriated the information. Again, both arguments are meritless.

1. <u>Plaintiff adequately pleads a trade secret.</u>

To prove trade a trade secret, a plaintiff must show that: (1) they reasonably maintained the secrecy of (2) "generally unknown," information (3) that is also valuable, and (4) from which competitors would actually or potentially economically benefit. Cal. Civ. Code § 3426.1(d); *Morlife Inc. v. Perry*, 56 Cal. App. 4th 1514, 1517-29 (1997); *ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 7-22 (1990); *Sun Distrib. Co. v. Corbett*, 2018 WL 4951966, at *3 (S.D. Cal. Oct 12, 2018).

    *a.    Plaintiff pled sufficient efforts to keep its data secret.*

A plaintiff adequately pleads the secrecy element when it alleges it kept the data from being shared with unnecessary parties—including through confidentiality agreements. *Morlife*, 56 Cal. App. 4th at 1523-26; *Courtesy Temp. Serv. Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1288 (1990).

Courts assess the totality of the circumstances to determine whether information was kept secret. In *Courtesy*, the plaintiff satisfied the secrecy element when it limited the manner in which it disclosed its customer information—it gave its branch offices only enough data to perform their sales jobs, and nothing more.

*Courtesy*, 222 Cal. App. 3d at 1287-88. In *Morlife*, the plaintiff kept its information sufficiently secret when it stored its database on a secured computer. *Morlife*, 56 Cal. App. 4th at 1523-24. In three cases—*ABBA*, *Morlife*, and *Courtesy*—courts gave great weight to the confidentiality agreements that the plaintiffs required before turning over any of their confidential information. *Morlife*, 56 Cal. App. 4th at 1523-24; *ABBA*, 235 Cal. App. 3d at 18-20; *Courtesy*, 222 Cal. App. 3d at 1287-88.

Under this framework, Plaintiff's allegations suffice. Plaintiff alleges that:

> Recognizing that they may disclose confidential and proprietary information to one another during the course of their business relationship, the parties included a provision in the PSA addressing the use of "Confidential Information," which was defined as "all data and information, of a confidential nature or otherwise, disclosed during the term of the Agreement by one party ('Disclosing Party') to the other party ('Receiving Party'), as well as information that the Receiving Party knows or should know that the Disclosing Party regards as confidential." Ex. A § 9. Under the PSA, the Receiving Party agreed that it "will not, for any reason or under any circumstance, directly or indirectly use, convert, apply, appropriate, employ, alter, transform, assign, put into operation or otherwise use any Confidential Information, in whole or in part[], for any purpose whatsoever, other than as expressly permitted herein."

(Doc. No. 14 at ¶ 11.) It also pleads that each "party was to retain its rights in any intellectual property it created: '[s]hould either Samples/Tibrio or Global Ventu create any advertisements, creatives, copy, or any other related intellectual property, [that] will remain the property of the party which created such intellectual property.'" *Id.* at ¶ 12. Further, Plaintiff plead additional efforts to keep its information secret by requiring sufficient notice of the end of the business relationship—to allow it to pull all of its data from Defendants' Facebook account. *Id.* at ¶ 15. Moreover, Plaintiff's use of Defendants' Facebook accounts was exclusive, further proving that Plaintiff limited access to this data in a manner sufficient to keep it secret. *Id.* at ¶ 18; *see id.* ¶ 19 (" . . . the parties recognized that the account contained Global Ventu's Confidential Information and worked to ensure that safeguards were in place to

strictly limit access to the Facebook Account."). Defendants have not shown that Plaintiff's complaint fails to satisfy this element.

### b. *Plaintiff pled that the data is generally unknown, valuable, and beneficial to competitors and others.*

The "generally unknown," "valuable," and "beneficial" elements are intertwined. Information is valuable—and therefore beneficial—when competitors and others do not have it. *See Morlife*, 56 Cal. App. 4th at 1521-22; *ABBA*, 235 Cal. App. 3d at 20-21; *Courtesy*, 222 Cal. App. 3d at 1289.

Plaintiff has pled that the information is not generally known—and therefore is valuable and beneficial to others. For example, Plaintiff pleads that it "specializes in developing unique campaign ad structures for social media advertisements. [Plaintiff] has developed an internal process and several techniques—techniques not generally known in the e-advertising industry—to maximize the return on investment for its clients." (Doc. No. 14 at 9.) These techniques "involve structuring and optimizing campaigns, organizing ad budgets in a unique and more effective way, and utilizing Facebook's 'pixel' in a way that allows [Plaintiff] to more effectively target certain customers." *Id.* Further, Plaintiff has pled that the information is valuable and beneficial to competitors and others because Plaintiff alleges that Defendants have used the information for their own profit: "Beginning just days after improperly terminating the RSA and locking [Plaintiff] out of the Facebook Account, [Defendants] starting running Facebook ads with identical or near-identical content to those created by [Plaintiff]." *Id.* at ¶ 26. "Defendants inadvertently sent [Plaintiff] their revenue reports from the ads that Defendants distributed using [Plaintiff's] trade secrets, and these revenue reports show that Defendants were utilizing the ads and targeting developed by [Plaintiff]." *Id.* at ¶ 27.

Defendants attempt to obfuscate the issue by acting as though the trade secret information is the access to their Facebook account. (Doc. No. 16-1 at 13.)

As discussed above, that is not the trade secret—the trade secret is the ads, the data derived from those ads, and the techniques used to run Defendants' campaigns.

Plaintiff's allegations suffice to defeat Defendants' motion to dismiss, which should be denied.

### 2. Plaintiff adequately pled misappropriation.

A defendant misappropriates a trade secret when it discloses or uses the "trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret." 18 U.S.C. § 1839(5)(B)(i); Cal. Civ. Code § 3426.1(b)(2)(A).

A breach of contract is improper because "the defendant's failure to perform a contractual duty is, in itself, a legal wrong." *Sweet*, 169 Cal. App. 2d at 632. Likewise, it is "improper" for a party to retain information which it has agreed does not belong to it and to which it has no legal right of access. *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 984 (C.D. Cal. 2011).

Plaintiff pleads that Defendants used improper means to obtain their trade secret information when they locked Plaintiff out of the Facebook account without the contractually required notice—notice that was designed to allow Plaintiff to retrieve its data at the end of the business relationship. (Doc. No. 14 at ¶ 15.) Plaintiff also pleads that Defendants retained Plaintiff's ad campaigns, customer lists, and other data—all of which the parties had contractually agreed remained the property of Plaintiff. (Doc. No. 14 at ¶¶ 13, 22, 32.)

Defendants again attempt to obfuscate the issue by making it about access to the Facebook account—but they cannot. Defendants' motion must be denied.

### D. The allegations against ZeetoGroup suffice to state a claim.

Defendants dishonestly claim that the "only allegation against Zeeto specifically is that 'Samples/Tibrio and ZeetoGroup then used that improperly acquired trade secret information to generate revenue for themselves after terminating the relationship'" with Plaintiff. (Doc. No. 16-1 at 15:8-11.) That is false.

Against ZeetoGroup, Plaintiff alleges the following:

> Plaintiff alleges on information and belief that ZeetoGroup is a citizen of a State within the United States. [Plaintiff] also alleges on information and belief that ZeetoGroup owns and controls Samples and is functionally the parent company of Samples.

(Doc. No. 14 at ¶ 5.) This allegation shows that ZeetoGroup controlled the other Defendants, and would—as their parent corporation—benefit from the theft of Plaintiff's trade secrets by Zeeto's subsidiaries.

> As contemplated by Section 1 of the RSA, [Plaintiff] oversaw and managed the Samples/Tibrio Facebook Account, which was owned by ZeetoGroup (Samples/Tibrio' parent company).

*Id.* at ¶ 16. This allegation shows that ZeetoGroup managed and controlled the Facebook account where Plaintiff stored its confidential data—the account that Defendants have now locked in order to keep the data for themselves.

> The Facebook Account [Plaintiff] managed belonged to ZeetoGroup. ZeetoGroup paid all of the invoices associated with the contracts and work discussed above.

*Id.* at ¶ 17. This paragraph shows that ZeetoGroup was involved in the business relationship and was benefitting from the work Plaintiff provided—otherwise it would not have paid for it.

> Samples/Tibrio and ZeetoGroup used improper means to acquire knowledge of [Plaintiff]'s trade secret information, including by breaching the parties' express confidentiality agreement in the PSA, and by improperly locking [Plaintiff] out of the Facebook Account it was responsible for managing in violation of the RSA, in order to prevent [Plaintiff] from removing the information.

*Id.* at ¶ 48. This paragraph is self-explanatory as to why it implicates ZeetoGroup in the misappropriation of Plaintiff's trade secrets.

Defendants' dishonest claim that there are no accusations against ZeetoGroup does not warrant serious consideration.

10
OPPOSITION BY PLAINTIFF GLOBAL VENTU HOLDING B.V. TO DEFENDANTS' MOTION TO DISMISS

### E. The Court should deny Defendants' motion because it is late.

A motion to dismiss is due twenty-one days after the filing of the pleading that the motion challenges. F.R.C.P. 12(b). When a motion to dismiss is late, courts have discretion to deny the motion or convert it into a motion for judgment on the pleadings under Rule 12(c). *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988).

Defendant first appeared in this Court on August 13, 2019. (Doc. No. 10.) Plaintiff filed its First Amended Complaint on August 23, 2019. (Doc. No. 14.) Defendants filed their motion on September 24, 2019—thirty-two days after the FAC was filed and eleven days late. The Court should deny the motion on this ground.

### F. The Court should grant leave to amend if it grants any part of the motion.

Leave to amend is routinely granted and "shall be given when justice so requires." F.R.C.P. 15(a); *see United States v. Corinthian Colleges*, 655 F. 3d 94, 955 (9th Cir. 2011). If any portion of Defendants' motion is granted, Plaintiff should be provided with leave to amend.

### V. Conclusion

The motion should be denied in its entirety.

Dated: October 11, 2019         **RMO LLP**

                                     */s/ David G. Greco*

                                     Scott E. Rahn, Esq. (SBN 222528)
                                     rahns@rmolawyers.com
                                     Sean D. Muntz, Esq. (SBN 223549)
                                     muntzs@rmolawyers.com
                                     David G. Greco (SBN 299635)
                                     grecod@rmolawyers.com
                                     RMO LLP
                                     2029 Century Park East, Suite 2910
                                     Los Angeles, CA 90067
                                     Phone: (424) 320-9444

*Global Ventu Holding B.V. vs. Zeetogroup, LLC, et al.*
USDC, Southern District, Case No.: 3:19-CV-01018-DMS-LL

# PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by RMO LLP, whose business and service address is: 2029 Century Park East, Suite 2910, Los Angeles, CA 90067.

On **October 11, 2019**, I served the within document(s) described as:

**OPPOSITION BY PLAINTIFF GLOBAL VENTU HOLDING B.V. TO DEFENDANTS' MOTION TO DISMISS**

on the interested parties in this action as follows:

Christopher S. Morris, Esq.
Jacob A. Gillick, Esq.
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel: 619.826.8060
Fax: 619.826.8065
Email: morris@morrislawfirmapc.com
Email: jgillick@morrislawfirmapc.com
***Attorneys for Defendants,***
***Zeetogroup, LLC, Samples.com, LLC,***
***And Tibrio, LLC***

(**FEDERAL**) I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and by causing the document to be served via the Court's ECF Filing System.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **October 11, 2019**.

                                       */s/ Esther Silverman*
                                       ESTHER SILVERMAN