Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq. 312336
jgillick@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Defendants Zeetogroup, LLC,
Samples.com, LLC, and Tibrio, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V., <br><br> Plaintiff, <br><br> v. <br><br> ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC, <br><br> Defendants. | Case No. 19cv1018 DMS LL <br><br> **DEFENDANTS' REPLY POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)** <br><br> Date: October 25, 2019 <br> Time: 1:30 p.m. <br> Dept: 13A <br> Judge: Hon. Dana M. Sabraw |

## I. INTRODUCTION

Plaintiff has submitted an Opposition to Defendants' Motion to Dismiss ("MTD") which attempts to confuse the issues and conceal what exactly the trade secrets are that have been allegedly "misappropriated." Despite pleading in the First Amended Complaint ("FAC") that due to a change in circumstances Plaintiff was seeking a new compensation structure which would prevent an unprofitable deal on its end; Plaintiff claims in its Opposition to the MTD that it never intended to terminate the agreements. It is clear to Defendants, from the FAC, that Plaintiff intended on terminating the agreement which constitutes an anticipated repudiation and therefore makes the First and Second Claims against Defendants moot.

Plaintiff has also failed to address what exactly the trade secrets were that had been "stored in Defendants' Facebook." At one point it is claimed that Plaintiff stored "strategies" in Defendants' Facebook account. It is unclear how one stores a "strategy" on Facebook. At another point, Plaintiff claims that it stored "advertisements" on the Facebook account. This was work product and not trade secrets. Overall, Plaintiff has failed to sufficiently allege the elements which would classify either the strategies or advertisements as "trade secrets."

Further, Plaintiff has failed to allege sufficient facts against ZeetoGroup, LLC. Plaintiff claims that by breaching the two agreements between Plaintiff and Tibrio, LLC ("Tibrio"), trade secrets were misappropriated. However, Plaintiff admits that ZeetoGroup, LLC ("Zeeto") was not a party to the agreements and fails to allege exactly what Zeeto did that would constitute a misappropriation of trade secrets pursuant to Federal and California law. For the following reasons discussed below, Defendants respectfully request that all Claims against them be dismissed.

## II. STANDARD OF LAW

A Rule 12(b)(6) motion tests whether a plaintiff's claims are legally sufficient. See FRCP 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). Dismissal is appropriate when the complaint fails to allege a cognizable

2
DEFENDANTS' REPLY TO MOTION TO DISMISS            19cv1018 DMS LL

legal theory or sufficient facts to support such a theory. B*alistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Under Federal Rules of Civil Procedure ("FRCP"), Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and although Rule 8 "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). Also, the court is not obliged to "accept as true allegations that contradict matters" which are "merely conclusory," require "unwarranted deductions" or "unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### III. ARGUMENT

#### A. Plaintiff's First Claim should be Dismissed

##### i. Plaintiff Anticipatorily Repudiated Agreement

According to Plaintiff's FAC, "ZeetoGroup's software performed far worse than the software the parties had been using, and this transition would have resulted in a significant drop in revenue for Global Ventu." FAC [Dkt. 14], ¶ 20. Therefore, "Global Ventu repeatedly attempted to convince Samples/Tibrio not to switch to ZAN . . . but Samples/Tibrio refused. . . As a result, Global Ventu sought to negotiate an increased revenue share." *Id.* at ¶¶ 21-22. "Global Ventu declined what Samples/Tibrio said was its best and final offer of a renegotiated share." *Id.* at ¶¶ 22-23. "Without validly terminating the RSA, however, Samples/Tibrio revoked Global Ventu's access to the Facebook Account." *Id.* at ¶ 37. Plaintiff argues that it was harmed by Defendants not giving two-days' notice of contractual termination. As discussed below, it was Plaintiff who repudiated the contract.

Plaintiff argues in its Opposition to Defendants' MTD ("Opposition" or "Oppo.") that "Plaintiff sought to renegotiate its share of the revenue- but never states or implied it would not perform its contract duties." Oppo. [Dkt. 17], 4:2-3. An anticipatory breach of contract occurs when one of the parties to the instrument

positively repudiates the contract by acts or statements indicating that he will not or cannot substantially perform essential terms. *Guerrieri v. Severini*, 51 Cal.2d 12, 18 (1958). "An implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible." *Taylor v. Jonston*, 15 Cal.2d 130, 137 (1975). Plaintiff's demands for more compensation constitute an implied repudiation.

Plaintiff alleges in its FAC that the transition to new software would have made its advertising "unprofitable." FAC [Dkt. 14], ¶ 21. It also admits that these concerns regarding profitability was shared with Defendants before demanding an increased revenue share. *Id.* at ¶¶ 21-22. Plaintiff then declined Samples/Tibrio's "best and final offer." FAC [Dkt. 14], ¶ 23. Nonetheless, Plaintiff wishes for this Court to believe that none of those events indicated an intent to repudiate the contract and Plaintiff was willing to provide services without making a profit. Oppo. [Dkt. 17], 4:2-3.

Plaintiff Global Ventu attempted to change the terms of the Revenue Share Agreement by demanding compensation which Defendants could not afford. This was an implied repudiation of the agreement. Therefore, Plaintiff is unable to show that Defendants breached the Revenue Share Agreement by not providing two-days' notice after negotiations fell through because it was Plaintiff who impliedly repudiated the agreement. Defendants respectfully request that Plaintiff's First Claim for Relief be dismissed.

### ii. No Damages are Adequately Discussed

Plaintiff's FAC alleges that, "[w]ithout validly terminating the RSA [] Samples Tibrio/revoked Global Ventu's access to the Facebook Account, thus depriving Global Ventu of access to its own ad content. . . and confidential information, which Global Ventu had the right to remove prior to its termination." FAC, ¶ 37. This is apparently Plaintiff's grounds for damages. In Defendants' MTD, they argued that, "it is implausible that Plaintiff suffered actual damages for

4

not being able to 'remove' their content from the Facebook account. Storage of content on Facebook is not a function of Facebook as it is not a 'cloud' type service. Plaintiff simply uploaded things to post on Facebook and tracked the information using Voluum." MTD [Dkt. 16-1], 10:8-12.

The court, when ruling on a Rule 12(b)(6) motion, considers the complaint's factual allegations, "together with all reasonable inferences" from those allegations as the allegations must be "plausible." *Bell Atlantic Corp. v. Twonbly*, 550 U.S. 544, 570 (2007); *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).

Plaintiff fails to address that Facebook is not a "cloud based service" and information is not actually stored on Facebook. Instead, Plaintiff submits the confusing argument that "when it lost control of its data, Plaintiff suffered damages because it lost the ability to prevent other parties from utilizing the methods and information it had created for their own benefit." Oppo. [Dkt. 17] 4:20-23. This argument makes it even more unclear as to what information Plaintiff feels was misappropriated. It appears that Plaintiff is arguing that it could not remove "ad content." Oppo. [Dkt. 17], 4:18. Was it their plan to remove all of the Facebook posts on Zeeto's Facebook page? This argument is implausible as the advertisements were either outdated or already posted and could not have been permanently removed from the internet. Plaintiff also argues that it could not remove the data collected for Defendants pursuant to the contract. Again, this argument fails, because, as admitted by Plaintiff, all of that information was contained by Voluum, and not on Facebook. FAC [Dkt. 14], ¶ 22.

Finally, Plaintiff argues that it could not remove "media buying strategies" from Defendants' Facebook. Oppo [Dkt. 17], 4:19. How does one upload a strategy and save it to Facebook? Defendants respectfully request that this Court see past Plaintiff's impossible claims.

Plaintiff alleges that it suffered damages because the value of its methods

5

decrease when not kept under lock and key. Oppo [Dkt. 17], 4:24-26. Plaintiff did not keep its information under lock and key. Instead, it was allegedly contained on Defendants' Facebook page. FAC [Dkt. 14], ¶ 18. Due the implausible nature of Plaintiff's claims, Defendants request that the First Claim for Relief be dismissed.

### B. Plaintiff's Second Claim should be Dismissed

#### i. Information Cannot be Stored on Facebook

Plaintiff's Second Claim for Relief alleges that "Samples/Tibrio has used, converted, applied, appropriated, employed, and put into operation Global Ventu's confidential ad targeting data" which was stored on the Facebook page. FAC [Dkt. 14., ¶ 42. Defendants' MTD argues that there is a lack of specificity with regards to what information was contained on the Facebook page. MTD [Dkt. 16-1], 11:3-7. Specifically, Plaintiff's contention that Defendants "used, converted, applied, appropriate, employed, and put into operation Plaintiff's confidential data" is insufficient as Plaintiff fails to allege facts that its work product through Facebook was actual "confidential information" as defined by the PSA. *Id.* at 11:8-11.

Plaintiff also fails to discuss what exactly the information is on Defendants' Facebook that classifies as "confidential." That is because there is none. Instead, Plaintiff attempts to pivot by claiming that the "confidential" information was "skills and tactics used to engage in 'Internet marketing and advertising, and in media buying and social media, to drive visitors to www.getitfree.us' [citation]; 'developing and optimizing existing campaigns' [citation] 'managing budgets for campaigns' [citation]; and planning, buying, and executing campaigns.'" Oppo [Dkt. 17], 5:23-27. This does not explain what information was contained on the Facebook page as all of these things are strategies, which are not tangible, or were run through Voluum, which is separate from Facebook. FAC [Dkt. 14], ¶ 22.

Plaintiff's attempts to avoid discussing what the "Confidential" information was in detail is telling. Facebook is used to post things, not store data and "strategy." Therefore, due to the lack of specificity and failure to make a plausible

6

claim, Defendants request that Plaintiff's Second Claim for Relief be dismissed.

## C. **Plaintiff's Third and Fourth Claims should be Dismissed**

Plaintiff's Third and Fourth Claims for Relief allege violations of the California Uniform Trade Secrets Act and the Defend Trade Secrets Act. FAC [Dkt. 14], ¶¶ 44-56. Defendants' MTD argues that "Plaintiff fails to allege how the information on Defendants' Facebook account derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d)." MTD [Dkt, 16-1], 12:20-24. Further, Defendants argue that the "information used through the Facebook account were not trade secrets. Instead, the information was work product delivered to Defendants pursuant to the agreements." MTD [Dkt. 16-1] 13:3-5.

### i. **Information was not Kept Secret**

Plaintiff's first argument in an effort to re-categorize work product as "trade secrets" relies on unsupported logic that confidentiality agreements were signed and therefore the information transformed into trade secrets. Oppo [Dkt. 17], 6:21-24. However, Plaintiff fails to discuss how that information was kept confidential from the misuse of Defendants outside of the agreement which prohibited Defendants from sharing the information with others. In *Courtesy Temp Serv. v. Camacho*, as cited by Plaintiff, the court found that "[r]easonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on 'need to know basis,' and controlling [] access." *Courtesy Temp Serv. v. Camacho,* 222 Cal.App.3d 1278 (Cal. Ct. App. 1990). There were no efforts to this extent by Plaintiff. Instead, it kept everything on an account owned and accessed by Defendants and made no effort to limit the disclosure. FAC [Dkt. 14], ¶¶ 16-17. Even *Morlife v. Perry,* cited by Plaintiff, finds that, "labeling information 'trade secret' or 'confidential information' does

7

not conclusively establish that the information fits this description." *Morlife, Inc. v. Perry,* 56 Cal.App.4th 1514, 1522 (Cal. Ct. App. 1997).

Based on the allegations in the FAC that the information was stored on a page owned and accessed by Defendants along with relevant case law which stands for the contention that simply calling something "confidential" is not enough to re-classify work product as a trade secret, Plaintiff has failed to meet its burden in showing that the information was reasonably kept secret.

  ii. **<u>Plaintiff has not Plead that the Data is Generally Unknown,</u>**

Defendants argue in their MTD that Plaintiff has failed, "to allege how the information on Defendants' Facebook account derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of information." MTD [Dkt. 16-1], 12:20-24. In response, Plaintiff argues that it "has developed an internal process and several techniques- techniques not generally known in the e-advertising industry." Oppo [Dkt. 17], 8:12-14. Plaintiff's Opposition is confusing as it also argues that "the trade secret is the ads, the data derived from those ads, and the techniques used to run Defendants' campaigns." MTD [Dkt. 16-1], 9:1-2. Plaintiff's Opposition and FAC are unclear as to what exactly the trade secrets are. Further, it is unclear how Plaintiff stored "internal process and techniques" on Defendants' Facebook page or why those would be shared with a client.

Plaintiff, as described by the FAC, "created its own advertising content, including text, images, and videos, which was posted on that Facebook Account. And by use of tracking pixels (website code that tracks a user's behavior) embedded in the advertisements, Global Ventu was able to build a profile of the audience of users that responded well to its Facebook ad campaigns, and use that data to optimize the targeting of its ads." FAC [Dkt. 14], ¶ 16. Therefore, it was "advertising content" that was put on Defendants' Facebook page. This is work

8

product and does not classify as trade secrets.

Plaintiff has failed to plead with specificity how the information derives independent value from not being known to others. Instead, Plaintiff attempts to confuse what information was contained on the Facebook page by stating it was "techniques" before stating that it was "advertising content" which is made public to everyone. Due to Plaintiff's failure to sufficiently plead that the information derives independent economic value from not being generally known, Defendants request that Plaintiff's Third and Fourth claims be dismissed.

### a. **Plaintiff Fails to Sufficiently Plead a Misappropriation**

Defendants' allege that Plaintiff failed to sufficiently plead sufficient that Defendants acquired the alleged trade secret by "improper means." MTD [Dkt. 17], 14:7-8. Specifically, the FAC admits that Defendants always had access to its own Facebook account and the content published on it. FAC [Dkt. 14], ¶ 17.

It is well established that "an unprotected disclosure of the holder's secret terminates the existence of the trade secret." *Forcier v. Microsoft Corp.*, 123 F.Supp.2d 520, 528 (2000). Courts have held that when the element of secrecy is gone at the time the information was acquired, the "trade secret" status is extinguished and there can be no claim for misappropriation. *Id.*

Plaintiff argues that Defendants used improper means to obtain the trade secrets when they locked Plaintiff out of the Facebook account without the contractually required notice. Oppo [Dkt. 17], 9:15-17. However, Plaintiff fails to address that Defendants already had the information because it had been disclosed to them. Pursuant to Federal and California law, "misappropriation" means either the "acquisition of a trade secret of another by improper means" or "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5)(B)(i); Cal. Civ. Code § 3426.1(b)(2)(A). Defendants had authority to use the advertisements (because they were already posted), and no improper means were employed to acquire the information. Nonetheless, Defendants deny, and can

9

prove, that they never used the information from Global Ventu.

Plaintiff admits that it voluntarily handed over what they contend are "trade secrets" to Defendants and that Defendants were already using the advertisements. As Plaintiff still refuses to discuss what exactly the "trade secrets" are that were stored in the Facebook page owned by Defendants, the claim for trade secret violations are deficient and must be dismissed.

Plaintiff's FAC fails to sufficiently plead that the information in dispute actually constitutes a trade secret or misappropriation. Therefore, Defendants respectfully request that Plaintiff's Third and Fourth Claims be dismissed.

### D. **Plaintiff Fails to Allege Sufficient Allegations against Zeeto**

Defendants' final grounds for dismissal is that the allegations against Zeeto as a parent of Tibrio are insufficient. MTD [Dkt. 16-1], §IV(D). In response, Plaintiff cites portions of its FAC which attempt to show that "ZeetoGroup" owned the Facebook page, Zeeto paid the invoices, and that Zeeto use improper means to acquire knowledge of the trade secrets. Oppo [Dkt. 17], 10.

Plaintiff does not allege that Zeeto violated the Revenue Share Agreement (First Claim for Relief), or the Publisher Services Agreement (Second Claim for Relief). FAC [Dkt. 14], p. 9-10. However, Plaintiff does argue that Zeeto is liable for the misappropriation of trade secrets (Third and Fourth Claims for Relief).

Specifically, Plaintiff alleges that "Samples/Tibrio and ZeetoGroup used improper means to acquire knowledge of Global Ventu's trade secret information, including by breaching the parties' express confidentiality agreement in the PSA." FAC [Dkt. 14], ¶¶ 48, 55. Plaintiff's Opposition claims that "Defendants used improper means to obtain their trade secret [] when they locked Plaintiff out of the Facebook account without the [] required notice." Oppo. [Dkt. 17], 9:15-18.

Plaintiff seemingly admits that Zeeto was not a party to the agreements with Defendants but still alleges that Zeeto misappropriated the trade secrets by breaching the agreements. There are no "conspiracy" allegations in the FAC or

allegations independent of the Revenue Share Agreement and Publisher Service Agreement. Due to insufficient allegations against Zeeto in the FAC, Zeeto should be dismissed from Plaintiff's Third and Fourth Claims.

### E. Defendants' 12(b)(6) Motion was not Late

Plaintiff's final argument is that the MTD was not filed timely. This is not true and is unsupported by a declaration for that reason. Attached to the Declaration of Jacob A. Gillick is an e-mail from Plaintiff's counsel, David Greco, on August 29, 2019, asking if Defendants plan on filing a 12(b)(6). Declaration of Jacob A. Gillick, Exhibit 1. On September 4, 2019, Defendants accepted electronic service of the FAC. *Ibid.* Defendants did not appear through the CM/ECF system and therefore did not receive the FAC until September 4, 2019. Defendants filed their motion 20 days after receiving the FAC. Therefore, the timing of the 12(b)(6) motion was proper.

## IV. CONCLUSION

The only thing clear about this case is that Plaintiff purposefully did not try and informally resolve this dispute with Defendants because it had been coerced by Defendant Tibrio's former CEO to harass Defendants.

Plaintiff is aware that it was the one who sought to renegotiate the agreements and therefore intended on terminating the relationship. The idea that Plaintiff would still adhere to the agreements despite them not being profitable is unpersuasive. Further, Plaintiff fails to adequately identify what exactly the trade secrets were that had been misappropriated and how they constitute "trade secrets" under relevant law. Finally, Plaintiff has failed to plead sufficient allegations against Zeeto.

**MORRIS LAW FIRM, APC**

Dated: October 18, 2019

*s/ Jacob A. Gillick* _____
Jacob A. Gillick, Esq.
jgillick@morrislawfirmapc.com
Attorneys for Defendants Zeetogroup, LLC, Samples.com, LLC, and Tibrio, LLC

11