Scott E. Rahn, Esq. (SBN 222528)
rahns@rmolawyers.com
Sean D. Muntz, Esq. (SBN 223549)
muntzs@rmolawyers.com
David G. Greco (SBN 299635)
grecod@rmolawyers.com
**RMO LLP**
2029 Century Park East, Suite 2910
Los Angeles, CA 90067
Phone: (424) 320-9444

Attorneys for Plaintiff
GLOBAL VENTU HOLDING B.V.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V., | Case No.: 3:19-cv-01018-DMS-LL |
| Plaintiff, | |
| v. | **RULE 26(f) REPORT** |
| ZEETOGROUP, LLC, SAMPLES.COM, LLC, and TIBRIO, LLC, | |
| Defendants. | |

1     Pursuant to Federal Rules of Civil Procedure 16(b) and 26(f), Plaintiff Global

2   Ventu Holding B.V. and Defendants ZeetoGroup, LLC, Samples.com, LLC, and

3   Tibrio, LLC, submit this Rule 26(f) Report. On Friday November 22, 2019, the parties

4   held a meet-and-confer conference with regards to this report.

5       **A. STATEMENT OF CASE**

6       1. Plaintiff's Statement of Case

7       This matter arises from a business relationship between Global Ventu and

8   Samples who entered into a PSA and an RSA in September 2016. These agreements

9   contained the terms that governed the parties' relationship in connection with

10  advertising and marketing services that Global Ventu provided to Samples. In the

11  PSA, the parties included a provision addressing the use of "Confidential

12  Information." Under this provision, the party receiving the confidential information

13  agreed that "will not, for any reason or under any circumstance, directly or indirectly

14  use, convert, apply, appropriate, employ, alter, transform, assign, put into operation,

15  or otherwise use any Confidential Information, in whole or in part[], for any purpose

16  whatsoever, other than as expressly permitted herein."

17      The RSA provided further detail about the "Services" that Global Ventu would

18  provide to Samples, stating that Samples would provide Global Ventu with access to

19  Samples' social media accounts, specifically its "Facebook Account," and that Global

20  Ventu would then "be responsible for general oversight and management of the

21  Facebook Account, which includes, but is not limited to: (1) developing and

22  optimizing existing campaigns; (2) managing budgets for campaigns; and (3)

23  planning, buying, and executing campaigns." The RSA also provide that each party

24  would retain its own rights in any intellectual property created and altered the

25  compensation structure between the parties, entitling Global Ventu to a revenue share

26  percentage based upon Samples' earnings that were directly attributable to Global

27  Ventu's oversight and management of the Facebook Account.

28      While the Facebook Account Global Ventu managed belonged to ZeetoGroup

(Samples' parent company), the parties recognized that the account contained Global Ventu's Confidential Information and worked to ensure that safeguards were in place to strictly limit access to the Facebook Account.

In October 2018, the then-CEO of Samples, Josh Ogle, left the company, and was replaced by an interim CEO, Stephan Goss, who was also CEO of ZeetoGroup. On November 12, 2018, Samples informed Global Ventu that it was switching its backend technology to a software called ZAN, which had been developed by ZeetoGroup. Based on testing performed over the course of several months, ZeetoGroup's software performed far worse than the software the parties had been using, and this transition would have resulted in a significant drop in revenue for Global Ventu. The parties entered into negotiations for an increased revenue share until such time as the problems with the software were worked out.

On November 16, 2018, after Global Ventu declined what Samples said was its best and final offer, Samples and ZeetoGroup immediately revoked Global Ventu's access to the Facebook Account. While the RSA provided for the withdrawal of access to the Facebook Account "[u]pon termination," the RSA had not yet been terminated, and Samples had yet to even provide the required two-business-days' notice. As a result of this improper lock-out, which violated the plain terms of the September 17, 2016 RSA, Global Ventu was unable to access and remove all of the ad content and proprietary tracking information it had spent time and money developing.

On November 19, 2018, Samples sent Global Ventu a letter belatedly purporting to provide the "required two business days prior written notice of its intent to terminate the Agreement" and to inform Global Ventu that, as of November 21, 2018, its "access to the Facebook Account will be terminated." The letter did not acknowledge that Samples and ZeetoGroup had, in violation of the RSA, already terminated Global Ventu's access to the Facebook Account days earlier.

By immediately terminating Global Ventu's access to the Facebook Account in violation of the RSA, and thereby ensuring that Global Ventu could not remove its

ad content or the confidential ad-targeting data, Samples and ZeetoGroup now had access to Global Ventu's valuable content and information. Samples and ZeetoGroup proceeded to use that content and information for their own profit. Beginning just days after improperly terminating the RSA and locking Global Ventu out of the Facebook Account, Samples and ZeetoGroup starting running Facebook ads with identical or near-identical content to those created by Global Ventu.

In addition, upon information and belief, Samples and ZeetoGroup also began using the confidential ad targeting data developed by Global Ventu, which Samples and ZeetoGroup had been able to obtain by improperly locking Global Ventu out of the Facebook Account it had managed for more than two years.

In sum, rather than continuing the agreements and having to pay Global Ventu a share of the revenue it generated, Samples and ZeetoGroup found a more profitable path: they cut Global Ventu out of the picture by stealing Global Ventu's intellectual property and confidential information, and kept all of the resulting revenue for themselves. Because Samples and ZeetoGroup have violated both the parties' contracts and federal and California law, Global Ventu seeks relief from the Court.

Plaintiff initiated this action by filing its Complaint on May 31, 2019. Defendants filed a motion to dismiss on September 24, 2019, which is currently under submission.

2. Defendants' Statement of Case

Defendants ZeetoGroup, LLC ("Zeeto") and Tibrio, LLC fka Samples.com ("Tibrio") (collectively referred to as "Defendants" or "Zeeto") own and operate two websites: samples.com and getitfree.us. Both sites aggregate free samples ranging from cleaning supplies to snack foods and give them away to customers who visit their website. There is also a sweep stakes aspect to Zeeto's getitfree.us website whereby in exchange for answering certain questions, a consumer will be placed into a drawing. Zeeto makes money off of these websites by, (1) connecting customers to advertisers, and (2) allowing advertisers to put ads on the websites.

In 2016, Tibrio contracted with Plaintiff Global Ventu Holdings BV ("Plaintiff" or "Global Ventu") to run its Facebook advertising account. Pursuant to the agreements, Global Ventu would be granted access to Tibrio's Facebook account and would post advertisements which would then be tracked by Global Ventu. For roughly two years the parties had a good working relationship.

In October of 2018, Tibrio's Chief Executive Officer, Joshua Ogle, was terminated for failing to meet his contractually agreed upon targets. Following this termination, Global Ventu attempted to re-negotiate their contract with Tibrio for a higher revenue share as it was unhappy about Zeeto's technological switch to the ZAN network. Tibrio was surprised that Global Ventu wished to terminated the contract unless they were paid more money. Nonetheless, Tibrio took part in good-faith negotiations with Global Ventu. In the end, Global Ventu declined all offers from Tibrion.

As it was clear that Global Ventu was disgruntled and terminating the agreements, Defendant Tibrio locked Global Ventu out of the Facebook account in order to prevent it from using Tibrio's payment information which was linked to the account. As a final measure to ensure that everything was properly documented, pursuant to the terms of the contract, a termination letter was issued by Tibrio to Global Ventu on or around November 19, 2018.

Plaintiff alleges in its lawsuit that Defendants improperly locked it out of the Facebook account where a lot of "confidential information" was stored. First, to this day, Global Ventu has not requested access to the Facebook account in order to retrieve the alleged information. Further, Facebook is not a "cloud" service and was not being used to "store" any information.

Plaintiff also alleges that Zeeto continued using data gathered by Global Ventu and ran similar or the same Facebook advertisements. Plaintiff did not send out a demand letter to cure this before making these allegations. Further, Plaintiff has not identified a single ad they believe was misappropriated.

**B. SUBJECT MATTER JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as to Plaintiff's trade secret claim under 18 U.S.C. § 1836. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2). The amount in controversy exceeds $75,000 exclusive of interest and costs, and this action is brought by a plaintiff who is a citizen of a foreign state against defendants who are all citizens of a State in the United States.

**C. DISCOVERY**

1. <u>Initial Disclosures</u>

The parties do not propose any changes be made to the timing, form or requirement for disclosures pursuant to Rule 26(f). Global Ventu proposes that the parties exchange initial disclosures within 14 days of the filing of this report.

2. <u>Subjects of Discovery</u>

Subjects of Discovery will include:

- The PSA and RSA;
- The relevant Facebook Account and Global Ventu/Tibrio's advertising content created in connection with said account;
- The profile of audience user data utilized by Global Ventu in performing its obligations under the parties' agreements;
- Documents and communications regarding content and audience user data as trade secrets;
- Documents and communications concerning termination of the agreements between the parties;
- Documents and communications concerning Plaintiff's demands that the contract be renegotiated;
- Defendants' alleged use of the advertising content and user data after termination of the agreements between the parties;
- Plaintiff's access to the advertising content and user data before and after termination of the agreements between the parties;

1    • Documents and communications pertaining to damages;

2    • Plaintiff's failure to ever request access to retrieve information they

3  believed was contained on Tibrio's Facebook account.

4    3.    Discovery Cut-Off

5    The parties propose a Discovery Cut-Off such that all fact discovery shall be

6  complete of **June 29, 2020**.

7    4.    Phases/Limitations

8    At this time, the parties does not propose that discovery be conducted in phases

9  or that it be limited to or focused on particular issues.

10    5.    Electronically Stored Information

11    At this time, the parties do not anticipate the discovery of electronically-stored

12  information ("ESI") is likely to be a significant cost or burden. The parties agree that

13  documents should be produced in searchable PDF format, without any altering or

14  damage to metadata. Native files will be produced as requested.

15    Should the parties discover that discovery of ESI will indeed amount to

16  significant cost and burden, the parties will work together to submit a suitable

17  proposed  order  containing  guidelines  related  to  preservation,  systems,

18  proportionality/costs, custodians, search terms, phasing (if appropriate), production

19  and privilege of the information.

20    6.    Privilege/Protection

21    The parties will attempt to work with each other to resolve any disputes and

22  will submit a proposed protective order to govern the production of confidential,

23  proprietary and/or sensitive information.

24    7.    Limitations

25    The parties do not propose that limitations be placed on the discovery process

26  other than those set by the Federal Rules of Civil Procedure, Local Rules of this

27  judicial district, and Individual Rules of Practice of this Court.

28    ///

1     8.    Other Orders/Issues

2         The parties do not propose that the court should issue any other orders under

3  Rule 26(c) or Rue 16(b) and (c).

4                                        Respectfully submitted,

5

6  Dated:    November 25, 2019    **RMO LLP**

7                                 By:        */s/ David G. Greco*
                                             Scott E. Rahn, Esq.
8                                            Sean D. Muntz, Esq.
                                             David G. Greco, Esq.
9                                            grecod@rmolawyers.com
                                             *Attorneys for Plaintiff,*
10                                           GLOBAL VENTU HOLDING B.V.

11

12 Dated:    November 25, 2019    **MORRIS LAW FIRM, APC**

13

14                                By:        */s/ Jacob A. Gillick*
                                             Christopher S. Morris, Esq.
15                                           Jacob A. Gillick, Esq.
                                             jgillick@morrislawfirmapc.com
16                                           *Attorneys for Defendants,*
                                             ZeetoGroup, LLC and
17                                           Tibrio, LLC fka Samples.com

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by **RMO LLP**, whose business and service address is: 2029 Century Park East, Suite 2910, Los Angeles, CA 90067.

On November 25, 2019, I served the within document(s) described as:

### RULE 26(f) REPORT

on the interested parties in this action as follows:

Christopher S. Morris, Esq.
Jacob A. Gillick, Esq.
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel: 619.826.8060
Fax: 619.826.8065
Email: cmorris@morrislawfirmapc.com
Email: jgillick@morrislawfirmapc.com
Email: lpierce@morrislawfirmapc.com
***Attorneys for Defendants,***
***Zeetogroup, LLC, Samples.com, LLC,***
***And Tibrio, LLC***

(**FEDERAL**) I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and by causing the document to be served via the Court's ECF Filing System.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **November 25, 2019**.


*/s/ Brittany E. Guest*
BRITTANY E. GUEST