# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V., <br><br> Plaintiffs, <br><br> v. <br><br> ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC, <br><br> Defendants. | Case No. 19-cv-1018 DMS (LL) <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

This case comes before the Court on Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition to the motion, and Defendants filed a reply. For the reasons discussed below, the motion is denied.

## I.
## BACKGROUND

Plaintiff Global Ventu Holding B.V. "is a target driven advertising agency specializing in lead generation and data acquisition, *i.e.*, the generation of consumer interest into a business's products or services." (First Am. Compl. ("FAC") ¶1.) Defendant Samples.com, LLC "operates www.samples.com and www.getitfree.us, websites that connect users with samples, coupons, and deals available on the

internet." (*Id.* ¶2.) In June 2016, Global Ventu and Samples entered into a business relationship for advertising and marketing services. "Upon the parties' initial business arrangement, Global Ventu was to use its expertise in Internet marketing and advertising, and in media buying and social media, to drive visitors to www.getitfree.us, and would receive as consideration a fixed commission for each user registration." (*Id.* ¶10.) In September 2016, the parties memorialized their relationship in two contracts, a Publisher Services Agreement ("PSA") (FAC, Ex. A), and a Revenue Sharing Agreement. (FAC, Ex. B.)

Over the following two years, the parties' relationship proceeded according to the terms of the contracts. In particular, "Global Ventu oversaw and managed the [Samples] Facebook Account …." (FAC ¶16.) Global Ventu alleges it:

> created its own advertising content, including text, images and videos, which was posted on that Facebook Account. And by use of tracking pixels (website code that tracks a user's behavior) embedded in the advertisements, Global Ventu was able to build a profile of the audience of users that responded well to its Facebook ad campaigns, and use that data to optimize the targeting of its ads.

(*Id.*) Global Ventu alleges its "original ad content, combined with the confidential audience targeting data it built up using proprietary methods, generated more than $10 million in revenue over the course of two years." (*Id.*)

In October of 2018, Samples hired a new CEO, and in November 2018, Samples "informed Global Ventu that it was switching its backend technology to a software called ZAN, which had been developed by [Defendant] ZeetoGroup."[1] (*Id.* ¶20.) Global Ventu was concerned this switch would result in "a significant drop in revenue for Global Ventu[,]" (*id.*), and it unsuccessfully sought to convince Samples not to go forward with the switch. (*Id.* ¶21.)

---

[1] Global Ventu alleges ZeetoGroup is effectively the parent company of Samples. (*Id.* ¶5.)

During this time, Global Ventu "sought to negotiate an increased revenue share until such time as problems with the software were worked out. (*Id.* ¶22.) According to Global Ventu, when those negotiations broke down, Samples "responded by immediately revoking Global Ventu's access to the Facebook Account." (*Id.* ¶23.) Global Ventu alleges that as a result of that "lock-out," it "was unable to access and remove all of the ad content, advertising campaigns and proprietary tracking information it had spent years and significant sums of money developing." (*Id.*) Global Ventu alleges that Samples then "proceeded to use that content and information for their own profit." (*Id.* ¶26.)

On May 13, 2019, Global Ventu filed the present case against Samples, Tibrio, LLC[2] and ZeetoGroup alleging claims for breach of the RSA, breach of the PSA, violation of California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.* ("CUTSA"), violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et. seq.* ("DTSA"), and unfair competition under California Business and Professions Code § 17200 *et seq.* ("UCL"). Global Ventu filed a First Amended Complaint on August 23, 2019, realleging all claims except the UCL claim. The present motion followed.

## II.

## DISCUSSION

Defendants move to dismiss the First Amended Complaint in its entirety. They argue Plaintiff has failed to allege all the elements for its claims, and failed to allege sufficient facts to support its claims against ZeetoGroup.

### A. Legal Standard

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established a more stringent standard of review for 12(b)(6) motions. To survive a motion to dismiss

---

[2] Global Ventu alleges Tibrio is the successor in interest to Samples, (*id.* ¶3), or "that Tibrio and Samples are one entity." (*Id.* ¶4.)

under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157- 58 (2d Cir. 2007)). In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

**B.     Breach of RSA**

The first claim in the FAC is for breach of the RSA against Defendants Samples and Tibrio. To state a claim for breach of contract, Plaintiff must plead the existence "of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1031 (2009) (quoting *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489 (2006)). Defendants argue Plaintiff has failed to sufficiently allege the elements of breach and damages.

On the element of breach, Defendants concede Plaintiff has alleged facts to support that element. (*See* Mot. at 9; *see also* FAC ¶37.) However, they also argue Plaintiff has failed to allege breach because it breached the contract first. (Mot. at 9.) In their reply brief, Defendants clarify that their argument is one of anticipatory breach, but anticipatory breach appears to be an affirmative defense to Plaintiff's claims of breach of contract. *See JMT Capital Holdings, LLC v. Johnson*, No. 3:15- cv-00291-LB, 2015 WL 3832674, at *6 (N.D. Cal. June 19, 2015) (discussing anticipatory breach as an affirmative defense); *O'M and Associates, LLC v. Ozanne*,

No. 10-CV-2130 H (RBB), 2011 WL 13356322, at *1 (S.D. Cal. Jan. 11, 2011); *Xnergy v. Hess Microgen, LLC*, No. 06cv343 WQH (BLM), 2007 WL 2481534, at *11 (S.D. Cal. Aug. 29, 2007) (same). As such, it is not appropriately raised in the present motion, and does not serve as a basis for dismissal. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (citing C. Wright & A. Miller, *Federal Practice and Procedure*, § 1277, at 328-30 ("Ordinarily affirmative defenses may not be raised by motion to dismiss")).

On damages, Plaintiff alleges it was deprived "of access to its own ad content … and confidential information[.]" (FAC ¶37.) Defendants dispute this allegation, and argue that even if Plaintiff was locked out of the Facebook account, that could not have resulted in any damages. However, whether Plaintiff was deprived of access to the Facebook account and whether it suffered any damages as a result are factual issues that are inappropriate for resolution on the present motion. Plaintiff has alleged facts to support the element of damages, and thus, Defendants' motion to dismiss this claim is denied.

### C. Breach of PSA

On the breach of PSA claim, Defendants argue it should be dismissed because Plaintiff failed to allege sufficient facts to support its allegation that the information Defendants wrongfully "used, converted, applied, appropriated, employed, and put into operation[,]" (*Id.* ¶42), was "Confidential Information" under the PSA. Defendants also assert Plaintiff failed to identify the "Confidential Information" with specificity. However, the PSA defines "Confidential Information," (FAC, Ex. A ¶9), and Plaintiff identified the "Confidential Information" at issue as "Global Ventu's confidential ad targeting data[.]" (FAC ¶42.) Defendants fail to cite any authority that requires Plaintiff to plead more detailed facts or to plead this claim with more specificity. Rather, Federal Rule of Civil Procedure 8(a)(2) requires only that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The FAC satisfies that standard, and Plaintiff has set forth

sufficient facts to support this claim.  Accordingly, Defendants' motion to dismiss this claim is denied.

**D.     Violations of the CUTSA and DTSA**

Plaintiff's next two claims allege violations of the CUTSA and the DTSA. "To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'" *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F.Supp.3d 868, 877 (N.D. Cal. 2018) (quoting *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)).  A trade secret is defined as information:

> (A) the owner thereof has taken reasonable measures to keep … secret; and (B) [that] derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).  *See also* Cal. Civ. Code § 3426.1(d) (similar).

> Under the DTSA and CUTSA, "misappropriation" means either the "(1) [a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;" or the "(2) [d]isclosure or use of a trade secret of another without express or implied consent."

*Alta Devices*, 343 F.Supp.3d at 882 (citing 18 U.S.C. § 1829(5), Cal. Civ. Code § 3426.1(b)).

Defendants argue these claims should be dismissed for a number of reasons, namely, that the information at issue is not a trade secret, and Defendants did not misappropriate that information. (*See* Mot. at 11-14.)  However, those arguments go to the merits of Plaintiff's claims, not whether the claims were sufficiently pleaded. On that issue, Plaintiff has alleged facts to support the elements of its claims, (FAC ¶¶ 45-49), and thus Defendants' motion to dismiss these claims is denied.

### E. Allegations Against ZeetoGroup

Defendants' final argument is Plaintiff has failed to allege sufficient facts to support its trade secret misappropriation claims against ZeetoGroup. Specifically, Defendants cite three allegations against ZeetoGroup, and argue they are insufficient to support Plaintiff's claims against that Defendant. (Mot. at 15.) However, Plaintiff's claims against ZeetoGroup are based on more than the three paragraphs cited by Defendants. Plaintiff also alleges ZeetoGroup (1) owned the Samples/Tibrio Facebook Account, (FAC ¶16), (2) "paid all of the invoices associated with the contracts and work" Plaintiff performed under the RSA and PSA, (*id.* ¶17), (3) revoked Plaintiff's access to the Facebook Accounts, (*id.* ¶23), (4) and thereafter used Plaintiff's trade secret information for its own profit. (*Id.* ¶¶26, 30-31.) These allegations, and the other allegations against ZeetoGroup, are sufficient to support Plaintiff's claims. Accordingly, Defendants' motion to dismiss the claims against ZeetoGroup is also denied.

### III.
### CONCLUSION AND ORDER

For the reasons set out above, the Court denies Defendants' motion to dismiss.[3]

**IT IS SO ORDERED**.

Dated: December 11, 2019

Hon. Dana M. Sabraw
United States District Judge

---

[3] In light of this ruling, the Court declines to address Plaintiff's assertion that Defendants' motion is untimely.