Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq. 312336
jgillick@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Defendants Zeetogroup, LLC, Samples.com, LLC, and Cross-Defendant/Cross-Complainant Tibrio, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC,<br><br>　　　　　Defendants.<br><br>ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC,<br><br>　　　　　Cross-Complainants,<br><br>　v.<br><br>GLOBAL VENTU HOLDING B.V., ALEX ANDEBEEK, an individual, and ROES 1 through 50, inclusive<br><br>　　　　　Cross-Defendant. | Case No. 19cv1018 DMS LL<br><br>**DEFENDANT TIBRIO, LLC'S CROSS-COMPLAINT**<br><br>Dept:　　13A<br>Judge:　Hon. Dana M. Sabraw |

# INTRODUCTION

1. Facebook has become such a phenomenon, with 2.4 billion users, that an entire industry has emerged to service and run Facebook ads and pages on behalf of other companies. One of these companies is Cross-Defendant Global Ventu Holding, BV ("Global Ventu").

2. In September of 2016, Cross-Complainant Tibrio, LLC ("Tibrio") hired Global Ventu to non-exclusively manage Facebook advertising campaigns for Tibrio's websites, getitfree.us and samples.com in parallel with Tibrio's own efforts. Specifically, and according to the agreements between the parties ("Agreements"), either Tibrio or Global Ventu could create advertisements to be placed on Facebook. Global Ventu would manage campaigns to make sure the advertisements received the most amount of clicks possible through the correct audience and provide high ROI.

3. According to the Agreements, Global Ventu promised not to use or share any of the intellectual property (advertisements, strategy, and content) that they received from Tibrio through the course of the agreement.

4. This is crucial because what makes Tibrio effective at advertising on Facebook is that over the years preceding the hiring of Global Ventu, Tibrio had spent over $67,000,000 dollars optimizing its existing Facebook advertising creatives, the strategy behind selecting new ad concepts to test, the image composition, the products that are featured in the image, the headlines and body copy used, the call to action to entice the user to click the ad as well as many other things that go into developing a successful Facebook advertising ad.

5. In addition to the actual creatives of the ad, Tibrio has, over the years, gathered data on the best techniques to maximize Facebook's interface, bidding strategy, placement, and a myriad of other small details that all add up to a successful strategy.

///

6. Tibrio, upon starting the relationship, disclosed many of those trade secrets to Global Ventu in order to make them an effective partner as quickly as possible so they would not have to develop a new strategy from scratch. Global Ventu was hired to then incrementally improve on the strategy already developed by Tibrio and develop new ideas from there on. All of those new ideas were a derivative work, built on the foundation of Tibrio's trade secrets.

7. Tibrio, in the signed agreements, was very clear that the information supplied to Global Ventu was confidential trade secrets that would remain in the ownership of Tibrio.

8. Global Ventu and Tibrio had a good working relationship until November of 2018, when Global Ventu threatened to discontinue services unless it received a higher profit share. Tibrio was unable to meet this demand and thereafter Global Ventu terminated the relationship. However, instead of just moving on, Global Ventu filed suit against Tibrio based on the separation.

9. Unfortunately, Global Ventu's "revenge" mission does not stop at the lawsuit. Recently, it was discovered that Global Ventu and its Chief Executive Officer, Alex Andebeek, have been using the trade secrets developed by Tibrio and misappropriated Tibrio's trade secrets to aid another company.

10. Global Ventu had in 2016 developed a Facebook page called "Get Free Samples" on Tibrio's behalf and with full use of Tibrios intellectual property. It was in possession of that page when the contract was terminated and the page seemed to go dormant after that, as was anticipated by Tibrio.

11. As it turns out, in addition to filing a suit, Global Ventu found another company for which it could provide a similar service using Tibrio's trade secrets. Global Ventu willfully and maliciously did this as stealing Tibrio's trade secrets to make an effective campaign for a competitor avoided developing a campaign from scratch.

/ / /

12. Global Ventu is misappropriating intellectual property they received in order to service another company. Global Ventu copied Tibrio's trade secrets and is running a virtually identical campaign for a competitor. These acts are so brazen that Global Ventu did not even change the header images for the Facebook page that was created, supplied, and is still owned by Tibrio.

13. Cross-Defendants' actions have caused damages far and above what they are claiming against Tibrio. Tibrio now seeks the remedies as described below along with an order enjoining any further use of Tibrio's trade secrets.

## PARTIES

14. Cross-Complainant Tibrio, LLC ("Tibrio") is owned and operated by ZeetoGroup, LLC and runs the websites getitfree.us and samples.com. Tibrio is a Delaware Limited Liability Company conducting business in San Diego, California. Tibrio entered into a contractual relationship with Cross-Defendant Global Ventu Holding, BV on or around September of 2016 which was terminated in November of 2018. Tibrio created the advertisements, media strategy, advertising materials, advertising strategy, and source material which have been misappropriated by Cross-Defendants.

15. Cross-Defendant Global Ventu Holding, BV ("Global Ventu") is a Dutch corporation, with its principal place of business located in Sint Sebastiaansbrug 13 2611DN, Delft, The Netherlands. Global Ventu is an advertising agency specializing in lead generation and data acquisition, i.e., the generation of consumer interest into a business's products or services. Following the termination of the relationship between Tibrio and Global Ventu, Global Ventu used Tibrio's proprietary and confidential information without consent. This has caused Tibrio financial and reputational harm.

///
///
///

4

TIBRIO, LLC'S CROSS-COMPLAINT                                              19cv1018 DMS LL

16. Cross-Defendant Alex Andebeek ("Andebeek") is the Chief Executive Officer of Global Ventu and was the main contact between Tibrio and Global Ventu. Andebeek has used Tibrio's proprietary and confidential information without consent. This has caused Tibrio financial and reputational harm.

## CONSPIRACY ALLEGATIONS

17. On information and belief, at all relevant times hereto, Alex Andebeek ("Andebeek") and Global Ventu Holding, BV ("Global Ventu") conspired and planned, one with another, to misappropriate trade secrets from Tibrio, LLC ("Tibrio"). As joint tortfeasors, Andebeek and Global Ventu are both liable for the entire damage done in pursuance of the common design.

18. Cross-Complainant is ignorant of the true name and capacities, whether individuals or otherwise of Cross-Defendants sued as Roes 1 through 100, inclusive, and therefore sues these Cross-Defendants by such fictitious names. Cross-Complainant will amend this Cross-Complaint to allege their true names and capacities when ascertained. Cross-Complainant is informed and believes, and thereon alleges, that each of the fictitiously named Cross-Defendants are responsible in some manner for the occurrence alleged, and that Cross-Complainant's injuries herein alleged were proximately caused by such Cross-Defendants.

## ALTER EGO AND CONSPIRACY ALLEGATIONS

19. "Under the alter-ego doctrine, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the other person or organization actually controlling the corporation, in most instances the equitable owners." *Sonara Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538 (2000).

20. "In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and

ownership between the corporation and its equitable owner and that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Sonara Diamond Corp. v. Superior Court,* supra, 83 Cal.App.4th at 538.

21. During all relevant times, Andebeek and Roes 1-100, were leaders and executives at Global Ventu Holding, BV ("Global Ventu").

22. At all relevant times, Andebeek and Roes 1-100, as officers and shareholders, commanded, influenced, and controlled the affairs of Global Ventu. Andebeek and Roes 1-100 acted outside of any agency relationship afforded by Global Ventu's corporate status and in fact acted in such a way as to completely disregard and ignore any recognized corporate formalities or purpose with regards to Global Ventu's operation.

23. At all relevant times, there existed a unity of interest and ownership between Global Ventu, Andebeek, and Roes 1-100 such that the individually and separateness of Global Ventu, Andebeek, and Roes 1-100 caused to and in fact never did exist.

24. Andebeek and Roes 1-100 used Global Ventu as a mere shell and naked framework for their own benefit. In this regard, Andebeek and Roes 1-100 used Global Ventu as a conduit to conduct his/her personal business, property, and affairs and as a device to avoid individual liability.

25. Upon information and belief, Andebeek, Global Ventu, and Roes 1-100 conspired and planned, one with another, to defraud Cross-Complainant by employing Tibrio's proprietary and confidential information.

26. Andebeek, Global Ventu, and Roes 1-100 were members of this conspiracy from the inception. As active participants in the conspiracy, Andebeek, Roes 1-100, and Global Ventu are joint tortfeasors liable for the entire damage done in pursuance of the common design.

## VENUE

27. This Court has jurisdiction over this matter and personal jurisdiction over Plaintiff and Cross-Defendant as Global Ventu Holding, BV and Alex Andebeek have already initiated litigation in this Court and availed itself of the rights and privileges of this venue.

## STATEMENT OF FACTS

28. Tibrio, LLC fka as Samples.com ("Tibrio") owns and operates two websites: samples.com and getitfree.us. Both sites aggregate free samples ranging from cleaning supplies to snack foods and give them away to customers who visit the websites. There is also a sweepstakes aspect to Tibrio's getitfree.us website whereby in exchange for answering certain questions, a consumer will be placed into a drawing.

29. Tibrio generates revenue from those websites by, (1) connecting consumers to advertisers, and (2) allowing advertisers to put ads on the websites. In order to command the highest price possible, Tibrio has spent years developing the details of samples.com and getitfree.us which attract visitors and encourage them to click on advertisements or connect with a relevant advertiser.

30. One specific method of attracting consumers to the websites is through Facebook advertising and marketing. This includes creating a specific advertisement, locating the proper consumer demographic, paying Facebook to post the advertisement, and tracking of the consumers who click the advertisement.

31. Tibrio has been advertising on Facebook since 2009 and has spent over $67,000,000 on advertising with Facebook alone. In the process of spending that money, Tibrio has developed an extremely effective advertising strategy by testing 1000's of ad creatives as well as demographics to target, etc.

32. There are specific companies who specialize in Facebook advertising, including Cross-Defendant Global Ventu Holding, BV run by Alex Andebeek ("Global Ventu" and "Andebeek").

33. On or around September 12, 2016, Tibrio entered into a Publisher Services Agreement with Global Ventu. The idea was to have a services company run ads on Facebook for Tibrio to increase overall traffic received by Tibrio.

34. According to this Publisher Services Agreement, Global Ventu agreed to manage advertisements posted on Facebook.

35. Global Ventu agreed that it will "only distribute Advertising Material internally and shall not distribute or re-sell Advertising Material to any external third party without Advertiser's written consent." Global Ventu also agreed that it would not "copy, reproduce or create derivative works of the Advertising Material for any purpose outside of [the] Agreement."

36. On September 17, 2016, Tibrio and Global Ventu entered into a separate Revenue Share Agreement.

37. Pursuant to the Revenue Share Agreement, Global Ventu agreed to be responsible for general oversight and management of several of Tibrio's Facebook accounts "which includes, but is not limited to: (1) developing and optimizing existing campaigns; (2) managing budgets for campaigns; and (3) planning, buying, and executing campaigns."

38. This Revenue Share Agreement specified that "should either [Tibrio] or Global Ventu create any advertisements, creatives, copy, or any other related intellectual property, the new creations will remain the property of the party which created such intellectual property."

39. Finally, the Revenue Share Agreement's "Confidential Information" provision provides that the parties will not "for any reason or under any circumstance at any time, directly or indirectly use, convert, apply, appropriate, employ, alter, transform, assign, put into operation, or otherwise use any Confidential Information, in whole or in part, for any purpose whatsoever."

40. Clearly the combination of those two clauses must be interpreted that if Global Ventu developed intellectual property while working on Tibrio's

campaigns, Global Ventu would retain ownership of the work it developed. This was to protect Global Ventu against Tibrio simply using Global Ventu's work without paying Global Ventu for it. However, Global Ventu is also prohibited from using the work developed from Tibrio's intellectual property. This was to protect Tibrio against the exact thing that Global Ventu has now done, which is to misappropriate Tibrio's Trade Secrets.

41. Over the next two years, Global Ventu and Tibrio had a good working relationship and were making good money together.

42. In November of 2018, Tibrio was preparing to move its backend technology to a platform called ZAN, which was developed by Tibrio's parent company, ZeetoGroup, LLC.

43. Global Ventu took this move to ZAN as an opportunity to try and extort more money out of Tibrio. Following some negotiations, Global Ventu refused to continue the relationship. Global Ventu then sued Tibrio and its parent company for this separation.

44. After months of litigation, one of Tibrio's employees, while on Facebook, ran into a Facebook page called "Get Free Samples," a page that had originally been built by Global Ventu on behalf of Tibrio, using Tibrios intellectual property. Tibrio's team had assumed that the page had been deleted. Upon further inspection, it was discovered that this page was active and using the Tibrio brand and assets without permission. This includes, (1) the Facebook page cover photo which is owned by Tibrio, (2) Facebook page story copy which was written by a Tibrio employee, and (3) product images that were created by Tibrio. Further, the page had recently resumed being active and buying ads, despite Global Ventu no longer working on behalf of Tibrio. This page is being run by Global Ventu and is neither owned nor operated by either ZeetoGroup, LLC or Tibrio.

45. It was also discovered that Global Ventu is now using this page to send traffic to a competing company.

46. This kind of misappropriation not only diverts traffic away from Tibrio, but also negatively impacts Cross-Complainant's business by association.

47. The misappropriation is actively devaluing Tibrio's $67,000,000 investment that has been made in the process of developing the intellectual property.

48. Global Ventu has been using Tibrio's property to improperly solicit clients away from Tibrio. This has caused Tibrio financial and reputational harm.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## MISAPPROPRIATION OF TRADE SECRETS- CALIFORNIA CIVIL CODE SECTION 3426.1

## (CROSS-COMPLAINANT AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)

49. Cross-Complainant re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

50. Cross-Complainant owns the proprietary and confidential information which qualifies as trade secrets ("Trade Secrets"). This includes advertisements, advertising strategy, performance numbers of past campaigns, images, content, bidding strategies, and advertising methodologies. These Trade Secrets provide a commercial advantage as defined by California Civil Code section 3426.1(d).

51. At the time of their misappropriation, the Trade Secrets were not authorized to be used by anyone outside of Tibrio.

52. Cross-Defendants have improperly used the Trade Secrets in order to harm Tibrio.

53. The improper means used by Cross-Defendants was a direct breach of the agreements entered into between the parties.

54. Cross-Defendants were aware that they had misappropriated the trade secrets of Tibrio by improper means.

55. Cross-Defendants' acquisition was a substantial factor in causing Tibrio's harm and Cross-Defendants were unjustly enriched.

56. The actions of Cross-Defendants qualify as willful and malicious misappropriation and therefore, the Court should award exemplary damages as provided by California Civil Code section 3426.3(c).

## SECOND CAUSE OF ACTION
## MISAPPROPRIATION OF TRADE SECRETS- 18 U.S.C.S SECTION 1832 ET AL.
## (CROSS-COMPLAINANT AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)

57. Cross-Complainant re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

58. Cross-Complainant owns and possesses certain confidential and trade secret information as alleged above.

59. Cross-Complainant's Trade Secrets relate to products and services used, sold, shipped, and/or ordered in, interstate or foreign commerce.

60. Cross-Complaint has taken reasonable measures to keep such information secret and confidential.

61. Cross-Complainant's confidential Trade Secret information derives independent value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

62. Cross-Defendants have misappropriated Tibrio's Trade Secrets in the improper and unlawful manner as alleged herein.

63. Cross-Defendants' wrongful conduct in misappropriating Tibrio's Trade Secret, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to Tibrio.

///

64. Tibrio is threatened with losing the full value of its advertisements, it's investment in the advertising strategy, along with current and potential business. Tibrio will continue to suffer irreparable injury that cannot be adequately remedied at law unless Cross-Defendants are enjoined from engaging in any further acts of misappropriation.

65. Each of the acts of misappropriation were done willfully and maliciously by Cross-Defendants with the deliberate intent to injure Tibrio's business and improve their own for financial gain. This entitles Tibrio to exemplary damages and/or attorneys' fees to be proven at trial.

**THIRD CAUSE OF ACTION**

**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

**(CROSS-COMPLAINANT AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)**

66. Cross-Complainant re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

67. Cross-Defendants intentionally interfered with the economic relationships between Tibrio and different vendors and customers of Tibrio, which probably would have resulted in an economic benefit to Cross-Defendants.

68. Cross-Complainant and the buyers, whose Trade Secrets were willfully, maliciously, and improperly misappropriated, were in an economic relationship and probably would have resulted in more economic benefits to Cross-Complainant.

69. Cross-Defendants knew about this relationship and engaged in the wrongful misappropriation of Trade Secrets (in violation of California Civil Code section 3426.1) in order to disrupt Tibrio's economic relationships. This was done intentionally, and Cross-Defendants were aware that this would cause a disruption of the relationship which was substantially certain to occur.

70. Cross-Defendants have used the Trade Secrets to reach out to buyers with a limited budget in order to usurp Tibrio's sales, which has disrupted Tibrio's relationships and caused economic harm.

## FOURTH CAUSE OF ACTION
## UNFAIR, UNLAWFUL, AND FRAUDULENT BUSINESS PRACTICES PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200
## (CROSS-COMPLAINANT AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)

71. Cross-Complainant re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

72. California Business and Professions Code section 17200 prohibits unlawful, unfair, or fraudulent business acts.

73. As described above, Cross-Defendants have a practice of using Tibrio's misappropriated Trade Secrets.

74. Cross-Defendants' actions are unlawful as they violate the trade secret acts as alleged herein.

75. Cross-Defendants' actions are unfair because Cross-Defendants are using Tibrio's Trade Secrets to generate business, which has materially damaged Tibrio.

76. Cross-Defendants' actions are fraudulent because they agreed not to use the Trade Secrets for any other reason outside of the agreement.

77. Due to the practices of Cross-Defendants, Tibrio has suffered material damages in an amount to be proven at trial.

/ / /

/ / /

/ / /

/ / /

13

TIBRIO, LLC'S CROSS-COMPLAINT                                    19cv1018 DMS LL

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT
## (CROSS-COMPLAINANT AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)

78. Cross-Complainant re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

79. The Publisher Service Agreement and Revenue Share Agreements entered into between the parties required Cross-Defendants to refrain from using the Trade Secrets for any other reason than that described by the agreements i.e., running campaigns for Tibrio through Facebook.

80. Cross-Defendants breached this agreement by using the Trade Secrets on a site designed to look like Tibrio's without Tibrio's consent. Tibrio complied with all obligations under the agreement.

81. This clear breach of duties set forth in the contract have caused Tibrio damages.

## SIXTH CAUSE OF ACTION
## PRELIMINARY AND PERMANENT INJUNCTION/TEMPORARY RESTRAINING ORDER AGAINST MISAPPROPRIATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 3426.2 AND BUSINESS AND PROFESSIONS CODE SECTION 17203
## (CROSS-COMPLAINANT AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)

82. Cross-Complainant re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

83. Action or threatened misappropriation may be enjoined upon an application to the court. (Civ. Code § 3426.2(a).)

/ / /

/ / /

84. If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty. (Civ. Code § 3426.2(b).)

85. A preliminary injunction/temporary restraining order is proper here as the Trade Secrets misappropriated by Cross-Defendants are being used without Tibrio's consent. These actions are not only damaging to Tibrio, but they are unjustly enriching Cross-Defendants.

86. Pursuant to California Business and Professions Code section 17203, any corporation who engaged in unfair competition may be enjoined in any court of competent jurisdiction. This order may be used to prevent the use or employment by any person of any practice which constitutes unfair competition. (Bus. & Prof. Code § 17203.)

87. The basis for injunctive relief is irreparable injury and the inadequacy of legal remedies. *Weinberger v. Romer-Barcelo,* 456 U.S. 305, 312 (1982).

88. Cross-Complainant is able to show that they are likely to succeed on the merits, that they will suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that the injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).

89. The more time that passes, the more Tibrio loses out on their market share. It is clear the Trade Secrets were misappropriated. Therefore, the practice of using the Trade Secrets must be stopped.

90. Cross-Complainant therefore requests an injunction to stop Cross-Defendants from working with any of the customers whom Cross-Defendants had previously run a campaign for on behalf of Tibrio. Overall, Cross-Complainant requests that Cross-Defendants discontinue the use of Trade Secrets.

///

///

## REQUEST FOR JURY

91. Cross-Complainant hereby requests a jury trial in this action.

## PRAYER FOR RELIEF

1. Damages in an amount to be proven at trial;
2. For reasonable attorney's fees;
3. For a preliminary injunction/temporary restraining order;
4. For exemplary damages;
5. For pre-judgment and post-judgment interest, according to proof;
6. For costs of suit incurred herein; and,
7. For such other and further relief as this Court deems just and proper.

**MORRIS LAW FIRM, APC**

Dated: December 30, 2019

*s/ Christopher S. Morris*
Christopher S. Morris, Esq.
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq.
jgillick@morrislawfirmapc.com
Attorneys for Defendants Zeetogroup, LLC, Samples.com, LLC, and Cross-Defendant/Cross-Complainant Tibrio, LLC