Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq. 312336
jgillick@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Defendants Zeetogroup, LLC,
Samples.com, LLC, and Tibrio, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V., <br><br> Plaintiff, <br><br> v. <br><br> ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC, <br><br> Defendants. | Case No. 19cv1018 DMS LL <br><br> **OPPOSITION TO CROSS-DEFENDANTS' MOTION TO DISMISS CROSS-CLAIM** <br><br> Date:   March 27, 2020 <br> Time:   1:30 p.m. <br> Dept:   13A <br> Judge:  Hon. Dana M. Sabraw |
| ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC, <br><br> Cross-Complainants, <br><br> v. <br><br> GLOBAL VENTU HOLDING B.V., ALEX ANDEBEEK, an individual, and ROES 1 through 50, inclusive <br><br> Cross-Defendants. | |

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................6

II. STATEMENT OF FACTS ......................................................7

III. STATEMENT OF LAW .......................................................9

IV. ARGUMENT ......................................................................10

    A.    Alter Ego and Conspiracy Allegations are Not Subject to a Motion to Dismiss.........................................................................10

    B.    The Alter-Ego Allegations are Sufficient ................................10

    C.    The Conspiracy Allegations are Sufficient .............................12

    D.    Misappropriation of Trade Secret Allegations are Sufficiently Plead..13

    E.    Cross-Complainant has Sufficiently alleged Intentional Interference with Prospective Economic Advantage .........................................15

    F.    Cross-Complainants 17200 Allegations are Sufficient ...........................16

        1.    Cross-Complainants 17200 Allegations are Separate and apart from the Trade Secret Allegations and are Therefore not Preempted ................16

        2.    No Regulatory or Constitutional Provision are Required to Be Plead for Unfair and Fraudulent Actions under California Business and Professions Code section 17200 ........................................18

    G.    Breach of Contract Allegations are Sufficient as to Andebeek. ............19

        1.    Andebeek is a Co-Conspirator................................................19

        2.    Cross-Complainant is not Required to Prove that the Information is a Trade Secret at this Point.........................................20

    H.    ZeetoGroup Should be Allowed to Respond .........................20

    I.    Leave to Amend Is Routinely Granted ...................................21

V. CONCLUSION ....................................................................22

OPPOSITION TO MTD CROSS-CLAIM         19cv1018 DMS LL

# TABLE OF AUTHORITIES

## CASES

*Aicco, Inc. v. Ins. Co. of N. Am.*

    90 Cal.App.4th 579 (2001) ............................................................. 19

*Alta Devices, Inc. v. LG Electronics, Inc.*

    343 F. Supp.3d 868 (N.D. Cal. 2018) ............................................. 14

*Applied Equipment Corp. v. Litton Said Arabia Ltd.*

    7 Cal.4th 503 (1994) ...................................................................... 12

*Ashcroft v. Iqbal*

    556 U.S. 662, 129 S.Ct. 1937 (2009) ............................................... 9

*Bell Atlantic Corp v. Twombly*

    550 U.S. 544 (2007) ......................................................................... 9

*First Western Bank & Trust Co. v. Bookasta,*

    267 Cal.App.2d 910 (1968) ........................................................... 11

*Henessey's Tavern, Inc. v. American Air Filter Co.*

    204 Cal.App.3d 1351 (Cal. App. Ct. 1988) ................................... 10

*In re Tobacco II Cases*

    46 Cal.4th 298 (2009) .................................................................... 18

*Iqbal v. Hasty*

    490 F.3d 143 (2d Cir. 2007) ............................................................. 9

*K.C. Multimedia, Inc., v. Bank of America Technology & Operations, Inc.*

    171 Cal.App.4th 939 (2009) .......................................................... 17

*Kunert v. Mission Financial Services Corp.*

    110 Cal.App.4th 242 (2003) .......................................................... 18

*Leek v. Cooper*

    194 Cal.App.4th 399 (2011) .......................................................... 11

*National Council of La Raza v. Chegavske*

    800 F.3d 1032 (9th Cir. 2015 .........................................................21

*Paul v. Palm Springs Homes Inc.*

    192 Cal.App.2d 858 (1961) ..........................................................10

*Progressive West Ins. Co., v. Yolo County Superior Court*

    135 Cal.App.4th 263 (2005) .........................................................18

*Signal Hill Aviation Co., Inc. v. Stroppe*

    96 Cal.App.3d 627 (1979) ...........................................................11

*Sonora Diamond Corp. v. Superior Court*

    83 Cal.App.4th 523 (2000) ...........................................................11

*Textron Financial Corp. v. National Union Fire Ins. Co. of Pittsburgh*

    118 Cal. App. 4th 1061 (2004) .....................................................19

*Thompson v. California Fair Plan Assn.*

    221 Cal.App.3d 760 (1990) .........................................................12

*United States v. Corinthian Colleges*

    655 F.3d 984 (9th Cir. 2011) .......................................................21

*Warburton v. Superior*, Court

    103 Cal.App.4th 1170 (2002) ......................................................11

*Wyatt v. Union Mortgage Co.*

    24 Cal.3d 773 (1979) ...................................................................12

*Youst v. Longo*

    43 Cal.3d 64 (Cal. 1987) ..............................................................15

*Zhang v. Superior Court*

    57 Cal.4th 364 (2011) ..................................................................19

### STATUTES

California Business and Professions Code section 17200............................passim

### RULES

Fedederal Rules of Civil Procedure, Rule 12 ....................................................10

4

Fedederal Rules of Civil Procedure, Rule 15 ......................................................21

OPPOSITION TO MTD CROSS-CLAIM                    19cv1018 DMS LL

## I.

## __INTRODUCTION__

Cross-Complainants Tibrio, LLC ("Tibrio") and ZeetoGroup, LLC ("Zeeto") have offered access to its Facebook accounts so Cross-Defendants Global Ventu Holding, B.V. ("Global Ventu") and Alex Andebeek ("Andebeek") can satisfy themselves that there have been no improprieties. Andebeek has refused.

Further, Global Ventu has sued Cross-Complainants because it was not able to remove its intellectual property from Tibrio's Facebook account. Cross-Defendants did not once request to retrieve the information before filing suit. According to the evidence received to date, after Andebeek terminated the parties' relationship, he sought out confidential information from a former Tibrio employee, exposing that employee to litigation for breaching his NDA, and then sued Tibrio at the behest of Tibrio's former CEO, Josh Ogle, who has also sued Tibrio. Mr. Ogle has made Andebeek a lot of money in the past.

If that is not enough, Cross-Complainants have also discovered that Global Ventu and Andebeek created a Facebook page using Tibrio's intellectual property which is a violation of the multiple agreements signed between the parties and has disrupted business with a long-time client, Fluent. In the eyes of Cross-Complainants, these facts are all indicative of a harassment campaign.

Cross-Defendants' Motion to Dismiss ("MTD") argues that the Cross-Complaint should be dismissed because Cross-Complainants have not proven their case and provided evidence in the pleading. This is not the standard. Further, Cross-Defendants challenge the Cross-Complaint on the exact same grounds this Court denied when Cross-Complainants filed their MTD (i.e., not a party to the contract and that the information at issue does not classify as trade secrets). As described below, Cross-Complainants believe that the Cross-Complaint is sufficient and therefore requests that the motion be denied. In the alternative, Cross-

Complainants request leave to amend as any defect claimed by Cross-Defendants is curable.

## II.

## STATEMENT OF FACTS

Tibrio, LLC ("Tibrio") owns and operates two websites: samples.com and getitfree.us. Amended Cross-Complaint [Dkt. 31], ¶ 21. Both sites aggregate free samples ranging from cleaning supplies to snack foods and give them away to customers who visit the websites. *Ibid.* There is also a sweepstakes aspect to Tibrio's getitfree.us website whereby in exchange for answering certain questions, a consumer will be placed into a drawing. *Id.*

Tibrio generates revenue from those websites by, (1) connecting consumers to advertisers, and (2) allowing advertisers to put ads on the websites. *Id.* at ¶ 22. In order to command the highest price possible, Tibrio has spent years developing the details of samples.com and getitfree.us which attracts visitors and encourage them to click on advertisements or connect with a relevant advertiser. *Ibid.*

One specific method of attracting consumers to the websites is through Facebook advertising and marketing. *Id.* at ¶ 23. This includes creating a specific advertisement, locating the proper consumer demographic, paying Facebook to post the advertisement, and tracking of the consumers who click the advertisement. *Ibid.* Cross-Defendant, Global Ventu Holding, BV run by Alex Andebeek ("Global Ventu" and "Andebeek") specialize in Facebook advertising. *Id.* at ¶ 24.

On or around September 12, 2016, Tibrio entered into a Publisher Services Agreement with Global Ventu. *Id.* at ¶ 25. According to this Publisher Services Agreement, Tibrio agreed to create applicable advertisements to be posted on Tibrio's Facebook page which Global Ventu would then monetize. *Id.* at ¶ 26. Pursuant to this agreement, Global Ventu agreed that it would not re-sell advertising material to any external party, create derivative work for third parties, and would not use affiliates or sub-affiliates without Tibrio's consent. *Id.* at ¶¶ 27-

7

28.  In the context of the Cross- Complaint, these provisions prohibit Global Ventu from using Tibrio's advertising material, or derivatives, with companies such as Fluent, whom Tibrio was working with while Global Ventu was working with Tibrio.  *Id* at ¶ 28.

On September 17, 2016, Tibrio and Global Ventu entered into a separate Revenue Share Agreement.  *Id.* at ¶ 29.  Pursuant to the Revenue Share Agreement, Global Ventu agreed to be responsible for general oversight and management of Tibrio's Facebook account and that the party who creates advertisements, creatives, copy, or any other intellectual property would be the owner of that property.  *Id.* at ¶¶ 30-31.  Finally, the Revenue Share Agreement's "Confidential Information" provision provides that the parties will not "for any reason or under any circumstance at any time, directly or indirectly use, convert, apply, appropriate, employ, alter, transform, assign, put into operation, or otherwise use any Confidential Information, in whole or in part, for any purpose whatsoever."  *Id.* at ¶ 32.

Over the next two years, Global Ventu and Tibrio had a good working relationship and were making good money together.  *Id.* at ¶ 32.  However, in November of 2018, Tibrio was preparing to move its backend technology to a platform called ZAN, which was developed by Tibrio's parent company, Zeeto.  *Id.* at ¶ 34.  As with any launch of a new product, it was expected that there would be a slight downturn in revenue until all of the issues were worked out.  *Ibid.*

Unfortunately, instead of looking into the future and continuing the lucrative relationship, Global Ventu took this move to ZAN as an opportunity to try and extort more money out of Tibrio.  *Id.* at ¶ 35.  Following some negotiations, Global Ventu refused to continue the relationship.  *Ibid.*  Global Ventu then sued Tibrio and its parent company for this separation.  *Id.*

After months of litigation, one of Tibrio's employees, while on Facebook, ran into a Facebook page called "Get Free Samples" which is eerily similar to

Tibrio's "Get it Free" Facebook page.  *Id.* at ¶ 36.  Upon further inspection, it was discovered that this page was using the Tibrio brand and assets without permission. *Ibid.*  This includes, (1) the Facebook page cover photo, (2) Facebook page story copy, and (3) product images.  *Id.*  This site is being run by Global Ventu and is neither owned nor operated by either Zeeto or Tibrio.  *Id.*  This kind of misappropriation not only diverts traffic away from Tibrio, but also negatively impacts Cross-Complainant's business by association.  *Id.* at ¶ 37.

## III.

## STATEMENT OF LAW

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established a standard of review for 12(b)(6) motions.  To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* citing *Twombly*, 550 U.S. at 556.

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).  In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680.  It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  As described below, the Cross-Complainants satisfy this standard.

/ / /

/ / /

9

# ARGUMENT

## A.    Alter Ego and Conspiracy Allegations are Not Subject to a Motion to Dismiss

Cross-Defendant's Motion to Dismiss ("MTD") argues that the alter-ego and conspiracy allegations against Alex Andebeek ("Andebeek") should be dismissed. MTD, § IV(A).  Motions to Dismiss are intended to attack either, (1) a lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party.  Fed. R. Civ. Proc., 12(b)(1)-(7).

A claim against an alter ego defendant is not itself a claim for substantive relief; instead, it is procedural.  *Henessey's Tavern, Inc. v. American Air Filter Co.,* 204 Cal.App.3d 1351, 1359 (Cal. App. Ct. 1988).  However, complaints that have placed alter ego allegations in separate causes of action have been approved.  See *Paul v. Palm Springs Homes Inc.,* 192 Cal.App.2d 858 (1961).

Given that alter-ego/conspiracy allegations are not in- itself a claim for substantive relief, a motion to dismiss on these grounds is improper.

## B.    The Alter-Ego Allegations are Sufficient

Cross-Defendant alleges that "[t]he alter ego theory is devoid of supporting factual allegations."  MTD, §IV(A)(1).  This purposefully ignores the allegations contained in the Amended Cross-Complaint and seems to indicate that Cross-Complainants must prove their case in the Cross-Complaint.

Under the alter ego doctrine, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in

OPPOSITION TO MTD CROSS-CLAIM                          19cv1018 DMS LL

most instances the equitable owners. *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538 (2000).

A complaint must set forth the facts with sufficient precision to put the defendant on notice about what the plaintiff is complaining and what remedies are being sought. *Leek v. Cooper,* 194 Cal.App.4th 399, 415 (2011) citing *Signal Hill Aviation Co., Inc. v. Stroppe*, 96 Cal.App.3d 627, 636 (1979). To recover on an alter-ego theory, a plaintiff need not use the words "alter-ego" in the pleadings but must allege sufficient facts to show a unity of interest and ownership and an unjust result if the corporation is treated as the sole actor. *Leek v. Cooper,* supra, 194 Cal.App.4th at 415; see also *First Western Bank & Trust Co. v. Bookasta* 267 Cal.App.2d 910 (1968). <u>A plaintiff seeking to assert claims against a corporation is entitled to discovery in order to pursue alter ego theories of liability.</u> *Warburton v. Superior*, Court, 103 Cal.App.4th 1170, 1189 (2002).

Cross-Complainant alleges that at all relevant times, Andebeek and Roes 1-100,

> were leaders and executives at Global Ventu Holding. . . At all relevant times, Andebeek and Roes-100, as officers and shareholders, commanded influenced and controlled the affairs of Global Ventu. Andebeek and Roes 1-100 acted outside of any agency relationship afforded by Global Ventu's corporate status and in fact acted in such a way as to completely disregard and ignore any recognized corporate formalities or purpose with regards to Global Ventu's operation. At all relevant times, there existed a unity of interest and ownership between Global Ventu, Andebeek, and Roes 1-100 such that the individuality and separateness of Global Ventu, Andebeek, and Roes 1-100 caused to an in fact never did exist. Andebeek and Roes 1-100 used Global Ventu as a mere shell and naked framework for their own benefit. In this regard, Andebeek and Roes 1-100 used Global Ventu as a conduit to conduct his/her personal business, property, and affairs and as a device to avoid individual liability. Amended Cross-Complaint [Dkt. 31] ¶¶ 14-17.

More specifically, Cross-Complainants allege that "Global Ventu is run by Alex Andebeek" and that "Andebeek has used Tibrio's proprietary and confidential information without consent." Amended Cross-Complaint [Dkt. 31], ¶¶ 9, 24. Further, Cross-Complainants allege that Andebeek and Global Ventu "conspired,

planned, one with another, to misappropriate the trade secrets from Tibrio, LLC. As joint tortfeasors, Andebeek and Global Ventu are both liable for the entire damage does in pursuance of the common design." Amernded Cross-Complaint [Dkt. 31], ¶ 10. Every fact alleged in the Cross-Complaint implicates both Andebeek and Global Ventu Holding, B.V. ("Global Ventu") together as tortfeasors.

These allegations allege that Andebeek is an alter-ego of Global Ventu and therefore is personally held liable for the actions of Global Ventu. Given these allegations, Cross-Complainants respectfully request that the MTD alter-ego allegations be denied

### C.    The Conspiracy Allegations are Sufficient

Cross-Defendants argue that the conspiracy allegations are not sufficient to put Andebeek on notice of the allegations against him. MTD [Dkt. 35], § IV(A)(2). The elements for civil conspiracy include a formation and operation of the conspiracy and damage resulting to plaintiff from an act done in furtherance of the common design. *Thompson v. California Fair Plan Assn.,* 221 Cal.App.3d 760, 767 (1990). As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damages on all of them, regardless of whether they actually commit the tort themselves. *Wyatt v. Union Mortgage Co.,* 24 Cal.3d 773, 784 (1979). The major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity. *Applied Equipment Corp. v. Litton Said Arabia Ltd.,* 7 Cal.4th 503, 510-511 (1994).

In support of Cross-Defendants MTD, they inexplicably count the number of times the word "conspiracy" is used before arguing that the remainder of the alleged wrongful acts are from Global Ventu - not Andebeek. MTD [Dkt. 35],

6:26-7:10. This argument ignores the fact that conspiracy allegations are intended to make each party responsible for the actions of another.

The Cross-Complaint alleges that, "[o]n information and belief, at all relevant times hereto, Alex Andebeek [] and Global Ventu Holding, BV [] conspired and planned, one with another, to misappropriate trade secrets from Tibrio, LLC []. As joint tortfeasors, Andebeek and Global Ventu are both liable for the entire damage done in pursuance of the common design." Amended Cross-Complaint [Dkt. 31], ¶ 10. "As active participants in the conspiracy, Andebeek, Roes 1-100 and Global Ventu are joint tortfeasors liable for the entire damage done in pursuance of the common design." Amended Cross-Complaint [Dkt. 31], ¶ 19.

Cross-Defendants have been put on notice that Cross-Complainants believe Global Ventu and Andebeek conspired with one-another to harm Cross-Complainants. Therefore, all allegations against Global Ventu are also against Andebeek, whom Cross-Complainants believe is the only employee of Global Ventu. Given the proper allegations, Cross-Complainants respectfully requests that the MTD be denied.

### D. <u>Misappropriation of Trade Secret Allegations are Sufficiently Plead</u>

Cross-Defendants next attack of the Amended Cross-Complaint is that the misappropriation of trade secret allegations (Causes of Action I and II) are improper because the information does not actually constitute a trade secret. MTD [Dkt. 35], § IV(B). For reference, this is the same information Global Ventu claims are trade secrets in its lawsuit. Further, this is the exact same argument Defendants proffered in their Motion to Dismiss the Complaint, which was denied. Plaintiff's Motion to Dismiss [Dkt. 16], § IV (C). Upon ruling, this Court found that "Defendant argues these claims should be dismissed for a number of reasons, namely, that the information at issue is not a trade secret, and Defendants did not misappropriate that information. [] However, those arguments go to the merits of

Plaintiff's claims, not whether the claims were sufficiently pleaded." Order [Dkt. 21], 6:24-26. Further, this Court opined that Federal Rule of Civil Procedure 8(a)(2) requires only that the complaint include "a short plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 5:26-28.

To state a claim for trade secret misappropriation under the DTSA and CUTSA, a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damages the plaintiff. *Alta Devices, Inc. v. LG Electronics, Inc.,* 343 F. Supp.3d 868, 877 (N.D. Cal. 2018). Cross-Complainants have alleged the following:

(1) Cross-Complainant owns the proprietary and confidential information described in the agreements which qualifies as trade secrets ("Trade Secrets"). This <u>includes</u> advertisements and content. These Trade Secrets provide a commercial advantage as defined by California Civil Code section 3426.1(d).

(2) Global Ventu and Andebeek are running a Facebook page called "Get Free Samples" using Tibrio's cover photo, copy, and product images.

(3) At the time of their misappropriation, the Trade Secrets were not authorized to be used by anyone outside of Tibrio.

(4) Cross-Defendants have improperly used the Trade Secrets in order to harm Tibrio and solicit clients away from Tibrio.

(5) Cross-Defendants' acquisition of Trade Secrets was a substantial factor in causing Tibrio's harm and Cross-Defendants were unjustly enriched.

Amended Cross-Complaint [Dkt. 31], ¶¶ 36, 38-46.

These allegations are sufficient and, as described above, this Court has already found that the issue of whether or not the material constitutes trade secrets goes to the merits of the case, not sufficiency of the pleadings. Therefore, Cross-Complainants respectfully request that the MTD be denied.

/ / /

/ / /

/ / /

/ / /

14

### E.    Cross-Complainant has Sufficiently alleged Intentional Interference with Prospective Economic Advantage

Cross-Defendants' next argument is that Cross-Complainants' Third Cause of Action for intentional interference with prospective economic advantage should be dismissed for being devoid of supporting facts.  MTD [Dkt. 35], § IV (C).

The five elements for intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual destruction of the relationship, and; (5) economic harm to the plaintiff proximately caused by the acts of the defendant.  *Youst v. Longo,* 43 Cal.3d 64, 71 (Cal. 1987).

Cross-Defendants complain that,

> [t]he FACC does not allege facts showing how or when Cross-defendants learned of this alleged economic relationship, or what economic benefit Cross-Complainants stood to gain from it. More importantly, the FACC does not explain- at all- how Cross-defendants interfered in this relationship." MTD [Dkt. 35], § IV(C).

This ignores the wording of the Cross-Complaint.  Further, Cross-Defendants are arguing that Cross-Complainants are required to prove their case in the Cross-Complaint when Federal Rule of Civil Procedure (8)(a)(2) only requires that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."

Cross-Complainant has alleged that Global Ventu and its co-conspirator, Alex Andebeek set up a Facebook page called "Get Free Samples" which was using Tibrio's brand assets without permission, including the cover photo, copy, and product images.  Amended Cross-Complaint [Dkt. 31], ¶ 36.  This account is being run by Global Ventu and is neither owned nor operated by either Zeeto or Tibrio.  *Ibid*.  "This kind of misappropriation not only diverts traffic away from Tibrio, but also negatively impacts Cross-Complainant's business by association. Global Ventu

has been using Tibrio's property to improperly solicit clients away from Tibrio. This has caused Tibrio financial and reputational harm." *Id.* at, ¶¶ 37-38. Further, Cross-Complainant alleges that Fluent was a client of Tibrio during the time Global Ventu was working with Tibrio and therefore knew of the relationship. *Id.* at ¶ 28.

Finally, Cross-Complainant also alleges that "Cross-Defendants intentionally interfered with the economic relationships between Tibrio and Fluent, which probably would have resulted in an economic benefit to Cross-Complainant. Cross-Defendants knew of Cross-Complainant's relationship with Fluent, and intentionally acted in any way which disrupted the relationship. Due to Cross-Defendants' act, Cross-Complainant's relationship with Fluent was actually disrupted." Amended Cross-Complaint [Dkt. 31], ¶¶ 56-60.

Cross-Defendants also attack this Cause of Action because the complaint was amended to identify Fluent particularly. MTD [Dkt. 35], § IV(C)(2). Specifically, Cross-Defendants complain that, "[i]t is unclear why Cross-complainants abandoned the customer and vendor-related allegations." *Ibid*. The reasoning for that is because Cross-Defendants requested this change when they filed their first Motion to Dismiss. MTD [Dkt. 29], 3:28-4:1. "Cross-complainants tellingly do not identify who these 'different vendors and customers' were." Nonetheless, these are not grounds for a proper motion to dismiss.

Based on the above, Cross-Complainant has met its pleading standards and therefore respectfully requests that the MTD be denied.

**F.    Cross-Complainants 17200 Allegations are Sufficient**

    **1.    Cross-Complainants 17200 Allegations are Separate and apart from the Trade Secret Allegations and are Therefore not Preempted**

Cross-Defendants attack Cross-Complainants' Business and Professions code section 17200 allegations by arguing that California's trade secret law preempts claims that rest on the "same factual basis" as a claim brought under the statute.

MTD [Dkt. 35], § IV(D)(1).  It is also argued that a single breach of a contract cannot form the basis for unfair business practice claims.  *Id.* at § (D)(2).  This ignores the actual wording of the Cross-Complaint for fraudulent and unfair business practices.

Pursuant to California Business and Professions Code section 17200, Cross-Complainants allege that, "Cross-Defendant's actions are <u>fraudulent</u> as the public is likely to be deceived by Cross-Defendants' intentional replication of Cross-Complainant's Facebook page."  Amended Cross-Complaint [Dkt. 31], ¶ 64.  This cause of action is not on the same factual basis of any misappropriation of trade secret claim or contract claim and instead is focused on the fraudulent nature of Cross-Defendants using Cross-Complainants materials.

With regards to the "unfair" allegation, Cross-Complainant alleges that, "Cross-Defendants' actions are <u>unfair</u> because they are unjustly benefitting and taking advantage of Cross-Complainant's work, which harms Cross-Complainant's reputation and competitiveness."  Amended Cross-Complaint [Dkt. 31], ¶ 65.  Again, this cause of action goes beyond misappropriation of trade secrets or contract claim.  Instead the allegation focus on the reputational harm suffered by Cross-Complainants.  These claims are properly plead and not preempted.

The Plaintiff in *K.C. Multimedia, Inc., v. Bank of American Technology* (as cited by Cross-Defendants), alleged that, "Defendants have engaged in the following unlawful, unfair, oppressive, and immoral business acts and practices: misappropriation of trade secrets under Civil Code § 3426.1(b); (b) conspiracy to misappropriate trade secrets; and (c) injury to the public by hindrance of the creative and innovative process of KCM."  *K.C. Multimedia, Inc., v. Bank of America Technology & Operations, Inc.,* 171 Cal.App.4th 939, 962 (2009); MTD, §IV(D)(1).  That situation is not present here.  As described above, it is not simply misappropriation that is being claimed under 17200, it is deception of the public

and harm to Cross-Complainants' reputation/competitiveness. Amended Cross-Complaint [Dkt. 31], ¶¶ 64-65.

Based on the above, the 17200 claims are not preempted. Therefore, Cross-Complainants respectfully requests that the MTD be denied.

**2.** **No Regulatory or Constitutional Provision are Required to Be Plead for Unfair and Fraudulent Actions under California Business and Professions Code section 17200**

Cross-Defendants next attack of the Amended Cross-Complaint is that no specific policies have been identified, such as a specific constitutional, statutory, or regulatory provisions, to support 17200 allegations. MTD [Dkt. 35], §IV(D)(2). This is a misrepresentation of the law.

As described above, Cross-Complainants have alleged "unfair" and "fraudulent" conduct pursuant to Business and Professions code section 17200. Determination of whether a business practice is "unfair" entails examination of the impact of the practice or act on its victim, balanced against the reasons, justification and motives of the alleged wrongdoer. *Progressive West Ins. Co., v. Yolo County Superior Court*, 135 Cal.App.4th 263, 285 (2005). There is no requirement which requires "unfair business practice" allegation to be tied to a statute or regulation.

With regards to the "fraudulent" accusation, the California Supreme Court has found that the "fraudulent business practice" prong of 17200 has been understood to be distinct from common law fraud. *In re Tobacco II Cases,* 46 Cal.4th 298, 312 (2009). Common law fraudulent deception must be actually false, known to be false by the perpetrator, and reasonably relied upon by a victim who incurs damages. *Ibid.* None of these elements are required to state a claim under the UCL. *Id*. It is only necessary, in pleading fraudulent business practices, to show that members of the public are likely to be deceived. *Id.*; *Kunert v. Mission Financial Services Corp.,* 110 Cal.App.4th 242, 264 (2003).

/ / /

Cross-Defendants would be correct if Cross-Complainants alleged "unlawful" conduct under 17200 - which they did not do. When determining whether the practice is "unlawful," section 17200 borrows violations of other laws, and makes them independently actionable. *Aicco, Inc. v. Ins. Co. of N. Am.,* 90 Cal.App.4th 579, 587 (2001).

Cross-Complainants argue that *Textron Financial Corp. v. National Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004) holds that all claims under 17200 should be rooted in a statute or law. MTD [Dkt. 35], § IV(D)(2). This ignores the Supreme Court decision of *Zhang v. Superior Court*, 57 Cal.4th 364, 377- 382 (2011) which <u>expressly</u> overturned Textron's findings as it relates to 17200. In fact, the California Supreme Court in *Zhang* found that, "a practice may violate the UCL even if it is not prohibited by another statutes. Unfair and fraudulent practices are alternate grounds for relief." *Id.* at 370.

Cross-Complainants' allegations are sufficient as to Business and Professions Code section 17200. Therefore, Cross-Complainant requests that the Motion to Dismiss be denied.

**G.** **Breach of Contract Allegations are Sufficient as to Andebeek.**

**1.** **Andebeek is a Co-Conspirator**

First, Cross-Defendants have requested that Andebeek be dismissed from the breach of contract claim because he was not a party to the contracts. MTD [Dkt. 35], § IV(E)(1). This was the same argument made by Zeeto in its attempt to strike the Complaint. MTD [Dkt. 16] § IV(D). On December 11, 2019, this Court found that ZeetoGroup was a proper party because there are allegations that Zeeto was intimately tied to the operative facts. Order [Dkt. 21] § II(E).

As described above, it is alleged that Andebeek, (1) is the Chief Executive Officer of Global Ventu and was the main contact between Tibrio and Global Ventu; (2) Andebeek used Tibrio's proprietary and confidential information without consent; (3) Alex Andebeek and Global Ventu conspired and planned, one with

another, to misappropriate trade secrets from Tibrio; (4) the individuality and separateness of Global Ventu, Andebeek, and Roes 1-100 caused to and in fact never did exist; (5) Andebeek used Global Ventu as a shell for his own benefit, and; (6) Global Ventu is run by Alex Andebeek  Amended Cross-Complaint, ¶¶ 9, 10, 16, 17, 24.  These allegations tie Andebeek into the breach of contract allegations.

Cross-Defendants believe that Andebeek is just as much of a party as Zeeto is under the law.  It is also believed that Global Ventu is the alter ego of Andebeek and therefore, if Andebeek is released from these allegations before any discovery takes place, it would leave Cross-Complainants with possibly no route for recovery. Therefore, Cross-Complainants respectfully request that the MTD be denied.

## 2.    Cross-Complainant is not Required to Prove that the Information is a Trade Secret at this Point

Cross-Defendants conclude their attack of the Breach of Contract claims by arguing, again, that the information complained of does not constitute trade secrets. MTD [Dkt. 35], § IV(E)(2).  This argument is interesting considering Cross-Defendants' position is that the exact same information constitutes trade secrets for them.  Amended Cross-Complaint [Dkt. 31], ¶ 37.  Nonetheless, this Court has already found that this issue "go[es] to the merits of Plaintiff's claims, not whether the claims were sufficiently pleaded."  Order [Dkt. 21]. 6:24-25.

## H.    ZeetoGroup Should be Allowed to Respond

As described by the attached Declaration ZeetoGroups' tax accountant, Shelly Garcia, CPA, Zeeto had problems in 2015 with having to file multiple returns.  (Declaration of Shelly Garcia, ¶¶ 2-3.)  However, these issues have all been cleared up and an Application for Reinstatement has been filed.  (*Id.* at ¶ 6.) ZeetoGroup is still waiting for the website to reflect the changes.  (*Id.* at ¶ 7.) ZeetoGroup has made multiple attempts, to this day, to get the FTB to update the website.  (*Id.* at ¶ 7.)  However, these efforts have not moved the needle. Therefore, ZeetoGroup respectfully requests it be allowed to take part in this

20

litigation given that the issues with the FTB have been resolved and the only thing pending is an update to the website.

## I.    <u>Leave to Amend Is Routinely Granted</u>

As a practical matter, leave to amend is almost always granted by the court, FRCP 15(a) expressly states leave to amend "shall be freely given when justice so requires." Fed. R. Civ. Proc., 15(a); *United States v. Corinthian Colleges,* 655 F.3d 984, 995 (9th Cir. 2011). Federal Rule of Civil Procedure 15(a) severely restricts the court's discretion to dismiss without leave to amend. When a more carefully drafted complaint might state a claim, a plaintiff must be given at least one more chance to amend the action with prejudice. *National Council of La Raza v. Chegavske,* 800 F.3d 1032, 1041(9th Cir. 2015) - "black-letter law" that district courts must give at least one chance to amend absent clear showing amendment would be futile.

In the event this Court agrees that any Cause of Action is insufficiently plead, Cross-Complainants respectfully requests leave to amend. Given Cross-Defendants' arguments that the only issues are a lack of facts, any deficiency can be cured.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

As described above, the Cross-Complaint is properly plead and sufficient to move forward.  Therefore, Cross-Complainants respectfully request that the Motion to Dismiss be denied in its entirety.  In the alternative, Cross-Complainants request leave to amend as any issue complained of is curable.

**MORRIS LAW FIRM, APC**

Dated:  March 13, 2020

*s/ Christopher S. Morris*
Christopher S. Morris
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq.
jgillick@morrislawfirmapc.com
Attorneys for Defendants Zeetogroup, LLC,
Samples.com, LLC, and Tibrio, LL