Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq. 312336
jgillick@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Defendants Zeetogroup, LLC,
Samples.com, LLC, and Tibrio, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V.,<br><br>Plaintiff,<br><br>v.<br><br>ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC,<br><br>Defendants.<br><hr>ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC,<br><br>Cross-Complainants,<br><br>v.<br><br>GLOBAL VENTU HOLDING B.V., ALEX ANDEBEEK, an individual, and ROES 1 through 50, inclusive<br><br>Cross-Defendants. | Case No. 19cv1018 DMS LL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS/CROSS-COMPLAINANTS' MOTION FOR LEAVE TO FILE SECOND AMENDED CROSS-COMPLAINT**<br><br>Date:   May 29, 2019<br>Time:   1:30 p.m.<br>Dept:   13A<br>Judge:  Hon. Dana M. Sabraw |

1

DEFENDANTS' MOTION TO AMEND                                              19cv1018 DMS LL

# I.

# **THE CASE**

In September of 2016, Cross-Complainant Tibrio, LLC ("Tibrio") hired Global Ventu to manage the Facebook advertising campaigns for Tibrio's websites, getitfree.us and samples.com. Specifically, and according to the agreements between the parties ("Agreements"), either Tibrio or Global Ventu would create advertisements to be placed on Tibrio's Facebook page. Once those advertisements were completed, Global Ventu would manage the campaign to make sure the advertisements received the most amount of clicks possible through the correct audience.

According to the Agreements, Global Ventu promised not to use or share any of the intellectual property (advertisements and content) with anyone. This provision is important because what makes Tibrio different and more profitable than other companies is the style of a border around an advertisement; what type of incentive is offered by an advertiser; and, the overall appeal of the website. It took Tibrio years of research and hundreds of thousands of dollars to learn what worked the best.

Global Ventu and Tibrio had a good working relationship until November of 2018, when Global Ventu threatened to discontinue services unless it received a higher profit share. Tibrio was unable to meet this demand and thereafter Global Ventu terminated the relationship. This correspondence is in writing. Unfortunately, instead of just moving on, Global Ventu filed suit against Tirbio based on the separation.

Global Ventu's "revenge" mission does not stop at the lawsuit. Recently, it was discovered that Global Ventu and its Chief Executive Officer, Alex Andebeek, have been using the trade secrets developed by Tibrio on a Facebook page called "Get Free Samples" whose name is eerily similar to Tibrio's "Get it Free" Facebook page. Upon further inspection, it was discovered that Cross-Defendants

were using Tibrio's advertisements, imagery, and content for its own gain and in direct competition with Tibrio.

Cross-Defendants' actions have caused damages far and above what they are claiming against Tibrio. Tibrio now seeks the remedies as described below along with an order enjoining any further use of Tibrio's trade secrets.

## II.

## **PROPOSED AMENDMENTS**

On December 18, 2019, the parties exchanged initial disclosures. Declaration of Jacob A. Gillick, Esq. ("Gillick Decl.,") ¶ 2. As part of this exchange, Plaintiff produced 208 documents. *Id.* at ¶ 3. Pages 106 through 112 of the production are chat records between Corey Oneal ("Oneal"), a former employee of Defendant Tibrio, LLC ("Tibrio"), and Plaintiff Global Ventu Holding, BV's ("Global Ventu") principal, Alex Andebeek ("Andebeek"). *Id.* at Exhibit 1. In these chats, not only is it clear that Global Ventu terminated the agreement between the parties and was given an opportunity to take a couple weeks to wind down (undercutting almost every allegation in its Complaint), but the statements made by Oneal in these chats are in violation of his employment agreement. Further, it appears that the comments made by Oneal, as described below, caused interference with a prospective business advantage. Therefore, Cross-Complainants request leave to add Oneal as a Cross-Defendant for Breach of Contract and Interference with Prospective Economic Advantage.

### A.     **Oneal Breached his Employment Agreement**

To prevail on a cause of action for breach of contract, the plaintiff must prove, (1) the contract, (2) the plaintiff's performance of the contract or excuse for non-performance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff. *Richman v. Hartley* 224 Cal.App.4th 1182, 1186 (Cal. Ct. App. 2014). On August 15, 2018, Oneal entered into a Proprietary Information and Inventions Assignment Agreement with Tibrio ("Confidentiality Agreement"). Gillick Decl.,

3

Exhibit 2. According to the Confidentiality Agreement, "Confidential Information" includes, but is not limited to, the following:

    i. Business practices
    ii. Business procedures
    iii. Work-in-process
    iv. Procedures
    v. Negotiation strategies
    vi. Traffic strategy
    vii. Results from testing
    viii. Notes
    ix. Records
    x. Inventions
    xi. Strategies and plans for future business product formulations
    xii. Pending negotiations
    xiii. Potential acquisitions or divestitures
    xiv. Costs, commissions, fees, profits, sales, markets, revenue, pricing, strategies, accounting information

*Id.* at Exhibit 2, § 2. Oneal, by executing the Confidentiality Agreement, agreed that these topics are to be kept "strictly secret and confidential" for a time period which includes "after termination or expiration of Employee's employment." *Ibid*. Further, section five of the Agreement prohibits Oneal from making any "derogatory, defamatory or adverse statements. . . regarding the company or its agents, Affiliates . . . or any other third party." *Id.* at Exhibit 2, § 5. Oneal resigned from Tibrio to work with a competitor on December 7, 2018. *Id.* at Exhibit 2, p. 12.

In the chats produced by Cross-Defendants, Oneal, following Global Ventu's termination of the relationship, (1) tells Andebeek that things are "bad" at Tibrio; (2) discloses information regarding employee terminations; (3) praises Andebeek's

decision to terminate the relationship; (4) discusses performance of Zeeto's proprietary platform, ZAN, during testing and; (5) discloses the negotiation strategy used by Stephan Goss, Tibrio's CEO, with Global Ventu. *Id.* at Exhibit 1; *Id.* at ¶¶ 5-12. Oneal also makes derogatory statements in the chats by calling the employees of Tibrio and Zeeto "assholes." *Id.* at ¶ 11. Finally, Oneal represented to Andebeek, without any evidence, that the ZAN platform is "shitty." *Id.* at ¶ 9. This quote was included in paragraph 16 of Global Ventu's Complaint as a reason for suing Tibrio and Zeeto.

Overall, these chats indicate that Oneal made disparaging comments and violated the Confidentiality Agreement by disclosing Tibrio's business practices, results from testing, strategies, and profit/sales information. Had Oneal complied with the terms of the Confidentiality Agreement, Defendants believe it likely that Plaintiff would not have felt the need to file its frivolous and emotional lawsuit.

The Confidentiality Agreement provides that Tibrio, upon breach of the confidentiality provision, is "entitled to obtain. . . other remedies available at law or in equity, without the necessity of proving actual damages." *Id.* at Exhibit 2, § 2. Given Oneal's breach of contract, Cross-Complainants respectfully request leave to amend the Cross-Complaint adding Oneal and a cause of action for Breach of Contract.

### B. Oneal Interfered with a Prospective Business Advantage

The five elements for intentional interference with prospective economic advantage are: "(1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Youst v. Longo*, 43 Cal.3d 64, 71, fn. 6 (Cal. 1987).

/ / /

1  According to the initial disclosures produced by Global Ventu, on November 17, 2018, Andebeek, during termination discussions, told Tibrio that "if performance comes back up and you'd like us to start back up then just let me know" and that "it wasn't an easy decision to pause." Gillick Decl., ¶ 5. Had Andebeek waited or stuck it out with Tibrio, the parties would likely be in a business relationship today as the performance did come back up. However, following Global Ventu's termination and Oneal leaving Zeeto, Oneal made comments to Andebeek such as "[Zeeto] never invested time to understand why the old system outperformed… that is what I was trying to do when I got pulled away to complete the shitty migration plan they put forward." *Id.* at ¶ 9. Oneal also told Andebeek that his decision to pause "turned out to be spot on." *Id.* at ¶ 8. In conclusion, Oneal personally solicited Andebeek by writing that he "might have some opportunity for [Global Ventu] and I am entertaining a consulting gig I might want to get your advice on." *Id.* at ¶ 11.

These chats show that Oneal persuaded Global Ventu not to wait for the ZAN platform to find its footing and instead convinced Andebeek to work with Oneal elsewhere. Oneal knew of the economic relationship along with the possibility for a future relationship and acted intentionally to disrupt that relationship. This resulted in a lawsuit against Zeeto and Tibrio and likely deprived all parties of revenue. Therefore, Cross-Complainants respectfully request leave to add a cause of action for Intentional Interference with a Prospective Business Advantage against Oneal.

### III.
### STANDARD OF LAW

In California state court, the substitution of DOE defendants is controlled by California Code of Civil Procedure section 474 which provides that "when the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, … and such defendant may be designated in any pleading by any name,

and when his true name is discovered, the pleading or proceeding must be amended accordingly…." California law permits such substitution up to three years after the commencement of the suit. *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1463 (9th Cir. 1988). The Ninth Circuit has specifically approved the procedure outlined in Code of Civil Procedure section 474 in civil rights litigation. *Id.* at 1462-1462; *Kreines v. United States*, 959 F.2d 834, 837 (9th Cir. 1992). In states that do not have a law specifically addressing the substitution of DOE defendants, federal courts have applied a "no unreasonable delay" standard. *See e.g., Elysian v. First Equity Corp.*, 713 F.Supp. 737, 751, fn. 19 (D. NJ. 1989).

Generally speaking, federal policy strongly favors determination of cases on their merits. Therefore, the role of pleadings is limited, and leave to amend pleadings is freely given when justice so requires. *In re Western State Wholesale Natural Gas Antitrust Employees v. Sonoma County,* 708 F3d 1109, 1117 (9th Cir. 2013). Under the federal scheme, there are several factors a court may consider in deciding whether to grant leave to amend a complaint: (1) whether the plaintiff has previously amended the compliant, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5) prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). These factors are not of equal weight; prejudice to the opposing party has long been held to be the most crucial factor in determining whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

///

///

///

# IV.

# JUSTICE REQUIRES LEAVE BE GRANTED BECAUSE THIS AMENDMENT WILL NOT PREJUDICE DEFENDANTS

Under the federal scheme, there are several factors a court may consider in deciding whether to grant leave to amend a complaint: (1) whether the plaintiff has previously amended the compliant, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5) prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984).

## A. Prior Amendments

Cross-Complainants have only amended the Cross-Complaint once pursuant to Federal Rules of Civil Procedure, Rule 15(a)(1)(B). Further, a Rule 12 motion is still pending from Cross-Defendants. As such, this factor weighs in favor of granting Cross-Complainants' amendment.

## B. Undue Delay

When evaluating undue delay, the Court considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d at 1388 (1989). The Court also should examine whether "permitting an amendment would . . . produce an undue delay in the litigation." *Id*. at 1387. By itself, undue delay may be insufficient to prevent the Court from granting leave to amend pleadings. However, in combination with other factors, delay may be sufficient to deny amendment. *Hurn v. Ret. Fund Trust of Plumbing*, 648 F.2d 1252, 1254 (9th Cir. 1981).

Initial disclosures were exchanged on December 18, 2019. Gillick Decl,. ¶ 2. During this time, Cross-Complainants Tibrio and Zeeto were preparing for arbitration in the matter of *The Original Agency, LLC v. ZeetoGroup, LLC et. al. Id.* at ¶ 18. The Original Agency's claim was in excess of $50 million. *Ibid*. Throughout the arbitration, The Original Agency stated that they would use Oneal

as a witness. *Id.* at ¶ 20. On April 10, 2020, the arbitration was completed. *Id.* at ¶ 19. From December 18, 2019, to April 10, 2020, Cross-Complainants have been concerned about adding Oneal to this lawsuit as it may appear that he was being added for the sole purpose of influencing testimony. *Id.* at ¶¶ 21-22. Mr. Greco, counsel for Global Ventu and Alex Andebeek, has been in close contact with the attorney for The Original Agency and has even used some of the same harassment techniques to harm Zeeto (no extension on discovery responses and using old discovery rulings to influence this Court's personal feelings towards counsel). *Id.* at ¶ 21. If Mr. Oneal had been named as a party during the pendency of arbitration, Mr. Greco and The Original Agency would have absolutely used that to harm Zeeto and Tibrio. *Id.* at ¶ 22. As stated in previous pleadings, it is believed that Cross-Defendants and The Original Agency are working together to harm Zeeto and Tibrio. Nonetheless, now that the arbitration is over, it is proper to add Oneal as a Defendant to this action and there was no undue delay.

### C. **Bad Faith**

There is no evidence that Cross-Complainants are acting in bad faith by seeking to add Oneal. As such, this factor weighs in favor of granting Plaintiff's amendment.

### D. **Futility of the Amendment**

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon,* 59 F.3d 815, 845 (1995). To determine whether the proposed amendment is futile, the Court should evaluate whether the facts alleged would be sufficient to withstand a motion to dismiss pursuant to Rule 12(b)(6). See *Townsend v. University of Alaska,* 543 F.3d 478, 486 n.6 (9th Cir. 2008) (noting that the "basis for futility is more accurately characterized as a failure to state a claim for relief").

The facts as claimed in the proposed amendment strongly infer liability. Oneal knowingly violated his Confidentiality Agreement by disclosing confidential

information to Andebeek as described above.  Oneal also interfered with a possible business relationship by disparaging Zeeto/Tibrio before requesting a future relationship with Global Ventu.  This is all in writing and should survive ay motion brought by Oneal.

### E. Prejudice to the Opposing Party

Generally, the most critical factor in determining whether to grant leave to amend is prejudice to the opposing party. *Eminence Capital, LLC v. Aspeon,* 316 F.3d at 1052 (2003) ("Prejudice is the touchstone of the inquiry under rule 15(a)") The burden of showing prejudice is on the party opposing an amendment to the complaint. *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (9th Cir. 1977). Prejudice must be substantial to justify denial of leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Under Rule 15(a), there is a presumption in favor of granting leave to amend where prejudice is not shown. *Eminence Capital, LLC v. Aspeon,* 316 F.3d at 1052 (2003).

Cross-Defendants will not be unduly prejudiced by this amendment.  First, this amendment will not require them to pursue additional written discovery. Further, no depositions have been taken in this action.  Therefore, the addition of Oneal will have no impact on the pending discovery currently in front of Cross-Defendants.  Again, this factor weighs in favor of granting Cross-Complainants amendment.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V.

## CONCLUSION

Cross-Defendants cannot genuinely argue it would be prejudiced by allowing this amendment as it is timely pursuant to the Court's Scheduling Order. Based on the analysis above, Cross-Complainants respectfully requests their motion to amend be granted.

Respectfully submitted,

**MORRIS LAW FIRM, APC**

Dated: April 17, 2020

*s/ Christopher S. Morris*
Christopher S. Morris
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq.
jgillick@morrislawfirmapc.com
Attorneys for Defendants Zeetogroup, LLC, Samples.com, LLC, and Tibrio, LLC