# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V., <br><br> Plaintiffs, <br><br> v. <br><br> ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC, <br><br> Defendants. | Case No. 19-cv-1018 DMS (LL) <br><br> **ORDER (1) GRANTING IN PART AND DENYING IN PART GLOBAL VENTU HOLDING B.V. AND ALEX ANDEBEEK'S MOTION TO DISMISS AND (2) GRANTING GLOBAL VENTU HOLDING B.V. AND ALEX ANDEBEEK'S MOTION TO STRIKE** |

This case comes before the Court on Global Ventu Holding B.V. and Alex Andebeek's motion to dismiss Tibrio LLC's Amended Cross-Complaint and motion to strike ZeetoGroup, LLC's Answer to the First Amended Complaint. ZeetoGroup, Samples.com, LLC and Tibrio filed oppositions to each motion, and Global Ventu and Andebeek filed replies. For the reasons discussed below, the motion to dismiss is granted in part and denied in part, and the motion to strike is granted.

## I.
## BACKGROUND

Global Ventu "is a target driven advertising agency specializing in lead generation and data acquisition, *i.e.*, the generation of consumer interest into a business's products or services." (First Am. Compl. ("FAC") ¶1.) Tibrio, fka

Samples.com, operates www.samples.com and www.getitfree.us. (Amended Cross-Complaint Claim ("FACC") ¶21.) These "sites aggregate free samples ranging from cleaning supplies to snack foods and give them away to customers who visit the websites. There is also a sweepstakes aspect to Tibrio's getitfree.us website whereby in exchange for answering certain questions, a consumer will be placed into a drawing." (*Id.*) "Tibrio generates revenue from those websites by, (1) connecting consumers to advertisers, and (2) allowing advertisers to put ads on the websites." (*Id.* ¶22.)

In June 2016, Global Ventu and Samples entered into a business relationship for advertising and marketing services. In September 2016, the parties memorialized their relationship in two contracts, a Publisher Services Agreement ("PSA") (FAC, Ex. A), and a Revenue Sharing Agreement. (FAC, Ex. B.)

According to the PSA, "Tibrio agreed to create applicable advertisements to be posted on Tibrio's Facebook page which Global Ventu would then monetize." (FACC ¶26.)

> Global Ventu agreed that it will "only distribute Advertising Material internally and shall not distribute or re-sell Advertising Material to any external third party without Advertiser's written consent." Global Ventu also agreed that it would not "copy, reproduce or create derivative works of the Advertising Material for any purpose outside of [the] Agreement."

(*Id.* ¶27.) Global Ventu further "agreed that it will not 'use Affiliates or Sub-Affiliates without Advertiser's prior written consent.' This would include such affiliates like Fluent, whom Tibrio was creating ads for during the time Global Ventu was working with Tibrio." (*Id.* ¶28.)

Pursuant to the RSA, "Global Ventu agreed to be responsible for general oversight and management of Tibrio's Facebook account 'which includes, but is not limited to: (1) developing and optimizing existing campaigns; (2) managing budgets for campaigns; and (3) planning, buying, and executing campaigns.'" (*Id.* ¶30.) The

RSA "specified that "should either [Tibrio] or Global Ventu create any advertisements, creatives, copy, or any other related intellectual property, the new creations will remain the property of the party which created such intellectual property." (*Id.* ¶31.) The RSA's "'Confidential Information' provision provides that the parties will not 'for any reason or under any circumstance at any time, directly or indirectly use, convert, apply, appropriate, employ, alter, transform, assign, put into operation, or otherwise use any Confidential Information, in whole or in part, for any purpose whatsoever.'" (*Id.* ¶32.)

Over the following two years, the parties enjoyed a profitable business relationship. However, in November 2018, Samples "informed Global Ventu that it was switching its backend technology to a software called ZAN, which had been developed by ZeetoGroup."[1] (FAC ¶20.) Thereafter, the parties' business relationship ceased, and the present litigation began.

Specifically, on May 13, 2019, Global Ventu filed a Complaint against Samples, Tibrio and ZeetoGroup alleging claims for breach of the RSA, breach of the PSA, violation of California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.* ("CUTSA"), violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et. seq.* ("DTSA"), and unfair competition under California Business and Professions Code § 17200 *et seq.* ("UCL"). Global Ventu filed a First Amended Complaint on August 23, 2019, realleging all claims except the UCL claim. In response to the FAC, Samples, Tibrio and ZeetoGroup filed a motion to dismiss, which the Court denied. Tibrio, Samples and ZeetoGroup then filed an Answer to the FAC and Tibrio filed a Cross-Complaint against Global Ventu and Alex Andebeek alleging claims for trade secret misappropriation under the CUTSA and DTSA, intentional interference with prospective economic relations, unfair competition under the UCL, and breach of contract. After Tibrio filed an Amended Cross-Complaint, Global

---

[1] ZeetoGroup is the parent company of Tibrio. (FACC ¶34.)

Ventu and Andebeek filed the present motions.

## II.

## MOTION TO DISMISS

Global Ventu and Andebeek move to dismiss the Amended Cross-Complaint in its entirety. They raise a number of arguments in support of their motion, which the Court addresses below.

### A. Legal Standard

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established a more stringent standard of review for 12(b)(6) motions. To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

### B. Violations of the CUTSA and DTSA

Starting with Tibrio's trade secret claims, Global Ventu and Andebeek argue these claims must be dismissed because the alleged trade secrets are in fact not trade secrets. Tibrio responds that the trade secrets underlying its claims are the same as those underlying Global Ventu's claims, which the Court has already found sufficient

to state a claim. Global Ventu disputes that the parties' claims are based on the same information, and urges the Court to dismiss Tibrio's claims.

Contrary to Tibrio's assertion, its trade secret claims do not appear to be based on the same information underlying Global Ventu's claims. Global Ventu's claims are based on "trade secret information concerning the profile of users that responded well to its ad campaigns, which data could then be used to optimize the targeting of its ads." (FAC ¶45.) Tibrio's claims, by contrast, are based on general "proprietary and confidential information[,]" which includes "advertisements and content." (FACC ¶40.)

As stated in the Court's Order on Tibrio's motion to dismiss the FAC, a trade secret is defined as information:

> (A) the owner thereof has taken reasonable measures to keep … secret; and (B) [that] derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). *See also* Cal. Civ. Code § 3426.1(d) (similar). Unlike Global Ventu's allegations in the FAC, Tibrio does not allege that the information underlying its claims meets these requirements. Indeed, other than the vague and general descriptions set out above, Tibrio does not identify, explain or describe the specific trade secrets at issue in its claims. Accordingly, the Court grants the motion to dismiss these claims. *See CleanFish, LLC v. Sims*, No. 19-cv-03663-HSG, 2020 U.S. Dist. LEXIS 46191, at *24 (N.D. Cal. Mar. 17, 2020) (granting motion to dismiss trade secret claims because plaintiff failed to plead details of trade secret with sufficient particularity).

**C.      Intentional Interference with Prospective Economic Relations**

The next claim is for intentional interference with prospective economic relations. The elements of this claim are: (1) Tibrio was in an economic relationship with a third party that probably would have resulted in economic benefit to Tibrio, (2)

Global Ventu and Andebeek knew of that relationship, (3) Global Ventu and Andebeek engaged in wrongful conduct, (4) by engaging in this conduct, Global Ventu and Andebeek intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur, (5) the relationship was disrupted, (6) Tibrio was harmed, and (7) Global Ventu and Andebeek's conduct was a substantial factor in causing Tibrio's harm. CACI 2202. Global Ventu and Andebeek argue this claim must be dismissed because Tibrio has failed to allege any facts in support. They also assert the allegations contradict the allegations in the original Cross-Complaint.

The Court agrees with Global Ventu and Andebeek that Tibrio has failed to allege sufficient facts to support this claim. Indeed, other than identifying the third party with whom it had an economic relationship, Tibrio fails to allege any facts to support this claim. Rather, it simply alleges the elements of the claim in conclusory fashion without any detail. Absent the necessary factual allegations, the Court grants the motion to dismiss this claim.

**D.     UCL Claim**

Turning to the UCL claim, Global Ventu and Andebeek argue it should be dismissed because it is preempted by CUTSA. To the extent the claim is not preempted, they assert it should be dismissed because Tibrio has failed to identify a constitutional, statutory or regulatory basis for the claim. Tibrio disputes that this claim is based on the trade secret claim, and is therefore preempted. It also disputes that this claim must be tied to a constitutional, statutory or regulatory provision.

Contrary to Global Ventu and Andebeek's arguments, Tibrio's UCL claim does not appear to be based on the misappropriation of any trade secrets. Rather, this claim alleges Global Ventu and Andebeek's Facebook page "Get Free Samples" is using "advertisements, imagery, and content that are identical or nearly identical" to Tibrio's Facebook page "Get it Free." (FACC ¶63.) Tibrio alleges this is fraudulent under the UCL because it is likely to deceive consumers, (*id.* ¶64), and unfair under

the UCL because it takes advantage of Tibrio's work and harms Tibrio's reputation and competitiveness. (*Id.* ¶65.) As so alleged, the claim does not rely on any trade secret misappropriation, and thus it is not preempted by CUTSA.

Furthermore, as so alleged, the claim need not rely on any constitutional, statutory or regulatory provision. Although that requirement may apply under the unlawful prong of the UCL, it does not apply under the fraudulent or unfair prongs, which are the basis for Tibrio's claim. *See Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1125 (2014) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999)) ("a practice that is unfair or fraudulent may be the basis for a UCL action even if the conduct is 'not specifically proscribed by some other law.'") Accordingly, the Court denies the motion to dismiss this claim.

## E. Breach of Contract

Tibrio's final claim is for breach of contract. Here, Global Ventu and Andebeek move for dismissal of the claim against Andebeek on the ground he is not a party to any contract with Tibrio. They also assert the claim should be dismissed because it is based on the trade secret claims, which have been insufficiently pleaded.

There is no dispute Andebeek is not a party to either the PSA or the RSA. In response to the motion to dismiss, Tibrio argues Andebeek can nevertheless be held liable on this claim under theories of alter ego and conspiracy. Tibrio alleges these theories in its FACC, but neither is alleged to apply to the breach of contract claim. (*See* FACC ¶¶10-19) (mentioning trade secret misappropriation and fraud, and describing parties as "joint tortfeasors"). Even if these theories did apply to the breach of contract, Tibrio has failed to plead sufficient facts to support those theories. Instead, Tibrio has simply alleged the elements of those theories, which is insufficient. *See Kundanmal v. Safeco*, No. 2:17-cv-06339-SVW (JEMx), 2017 U.S. Dist. LEXIS 222495, at *5 (C.D. Cal. Dec. 13, 2017) (stating plaintiff must allege facts supporting elements of alter ego and conspiracy liability). Accordingly, the Court grants the motion to dismiss this claim as against Andebeek.

As to Global Ventu's other argument that the breach of contract claim should be dismissed because it is based on the trade secret claim, Global Ventu fails to cite any authority to support that argument. Accordingly, the motion to dismiss the claim as against Global Ventu is denied.

## III.
## MOTION TO STRIKE

In addition to moving to dismiss Tibrio's FACC, Global Ventu and Andebeek move to strike ZeetoGroup's Answer to the FAC on the ground its corporate status has been forfeited. ZeetoGroup does not dispute that its corporate status was forfeited, but it asserts it has applied for reinstatement, and thus it should be allowed to participate in these proceedings.

Although ZeetoGroup submitted evidence that it has applied for reinstatement, (*see* Decl. of Shelly Garcia in Opp'n to Mot. to Strike ¶6), there is no evidence that application has been granted. Unless and until ZeetoGroup is able to provide that evidence, it is precluded from participating in these proceedings. *See Ctr. For Self-Improvement & Community Development v. Lennar Corp.*, 173 Cal. App. 4th 1543, 1552 (2009) (stating suspended corporation may not defend action). Accordingly, the Court grants Global Ventu and Andebeek's motion to strike ZeetoGroup's Answer to the FAC.

## IV.
## CONCLUSION AND ORDER

For the reasons set out above, the Court grants in part and denies in part Global Ventu and Andebeek's motion to dismiss. Specifically, the Court grants the motion to dismiss Tibrio's trade secret claims, its claim for intentional interference with prospective economic relations, and its breach of contract claim against Andebeek. The motion to dismiss is denied as to Tibrio's UCL claim and its breach of contract claim against Global Ventu. In accordance with its request, Tibrio is granted leave to file a Second Amended Cross-Complaint that cures the pleading deficiencies set

out in this Order.[2] Tibrio is cautioned that if its Second Amended Cross-Complaint does not cure these deficiencies, its claims will be dismissed with prejudice and without leave to amend. The Court will set a deadline for the filing of the Second Amended Cross-Complaint in its order on Tibrio's pending motion for leave to amend.

Global Ventu and Andebeek's motion to strike ZeetoGroup's Answer to the FAC is granted.

**IT IS SO ORDERED**.

Dated: April 21, 2020

Hon. Dana M. Sabraw
United States District Judge

---

[2] The Court notes Tibrio recently filed a motion for leave to amend its cross-complaint to add another defendant to its breach of contract and intentional interference claims. (*See* ECF No. 52.) The present Order does not address that issue.