Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Jacob A. Gillick, Esq. 312336
jgillick@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Defendants Zeetogroup, LLC,
Samples.com, LLC, and Tibrio, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V.,<br><br>Plaintiff,<br><br>v.<br><br>ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC,<br><br>Defendants. | Case No. 19cv1018 DMS LL<br><br>**DEFENDANT TIBRIO, LLC'S AMENDED CROSS-COMPLAINT**<br><br>Dept: 13A<br>Judge: Hon. Dana M. Sabraw |
| ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC,<br><br>Cross-Complainants,<br><br>v.<br><br>GLOBAL VENTU HOLDING B.V., ALEX ANDEBEEK, an individual, and ROES 1 through 50, inclusive<br><br>Cross-Defendant. | |

1

TIBRIO, LLC'S CROSS-COMPLAINT           19cv1018 DMS LL

## I.
## **INTRODUCTION**

1. Facebook has become such a phenomenon, with 2.4 billion users, that an entire industry has emerged to service and run businesses' Facebook pages. One of these companies is Cross-Defendant Global Ventu Holding, BV ("Global Ventu").

2. In September of 2016, Cross-Complainant Tibrio, LLC ("Tibrio") hired Global Ventu to manage the Facebook advertising campaigns for Tibrio's websites, getitfree.us and samples.com. Specifically, and according to the agreements between the parties ("Agreements"), either Tibrio or Global Ventu would create advertisements to be placed on Tibrio's Facebook page. Once those advertisements were completed, Global Ventu would manage the campaign to make sure the advertisements received the most amount of clicks possible through the correct audience.

3. According to the Agreements, Global Ventu promised not to use or share any of the intellectual property (advertisements and content) with anyone. This provision is important because what makes Tibrio different and more profitable than other companies is the style of a border around an advertisement; what type of incentive is offered by an advertiser; and, the overall appeal of the website. It took Tibrio years of research and hundreds of thousands of dollars to learn what worked the best.

4. Global Ventu and Tibrio had a good working relationship until November of 2018, when Global Ventu threatened to discontinue services unless it received a higher profit share. Tibrio was unable to meet this demand and thereafter Global Ventu terminated the relationship. However, instead of just moving on, Global Ventu filed suit against Tirbio based on the separation.

5. Unfortunately, Global Ventu's "revenge" mission does not stop at the lawsuit. Recently, it was discovered that Global Ventu and its Chief Executive

Officer, Alex Andebeek, have been using the trade secrets developed by Tibrio on a Facebook page called "Get Free Samples" whose name is eerily similar to Tibrio's "Get it Free" Facebook page. Upon further inspection, it was discovered that Cross-Defendants were using Tibrio's advertisements, imagery, and content for its own gain and in direct competition with Tibrio.

6. Cross-Defendants' actions have caused damages far and above what they are claiming against Tibrio. Tibrio now seeks the remedies as described below along with an order enjoining any further use of Tibrio's trade secrets.

## II.
## PARTIES

7. Cross-Complainant Tibrio, LLC ("Tibrio") is owned and operated by ZeetoGroup, LLC and runs the websites getitfree.us and samples.com. Tibrio is a Delaware Limited Liability Company conducting business in San Diego, California. Tibrio entered into a contractual relationship with Cross-Defendant Global Ventu Holding, BV on or around September of 2016 which was terminated in November of 2018. Tibrio created the advertisements and source material which have been misappropriated by Cross-Defendants.

8. Cross-Defendant Global Ventu Holding, BV ("Global Ventu") is a Dutch corporation, with its principal place of business located in Sint Sebastiaansbrug 13 2611DN, Delft, The Netherlands. Global Ventu is a target driven advertising agency specializing in lead generation and data acquisition, i.e., the generation of consumer interest into a business's products or services. Following the termination of the relationship between Tibrio and Global Ventu, Global Ventu used Tibrio's proprietary and confidential information without consent. This has caused Tibrio financial and reputational harm.

9. Cross-Defendant Alex Andebeek ("Andebeek") is the Chief Executive Officer of Global Ventu and was the main contact between Tibrio and Global

Ventu. Andebeek has used Tibrio's proprietary and confidential information without consent. This has caused Tibrio financial and reputational harm.

## III.
## CONSPIRACY ALLEGATIONS

10. On information and belief, at all relevant times hereto, Alex Andebeek ("Andebeek") and Global Ventu Holding, BV ("Global Ventu") conspired and planned, one with another, to misappropriate trade secrets from Tibrio, LLC ("Tibrio"), disrupt relationships with other businesses, and breach the executed agreements. As joint tortfeasors, Andebeek and Global Ventu are both liable for the entire damage done in pursuance of the common design.

11. Cross-Complainant is ignorant of the true name and capacities, whether individuals or otherwise of Cross-Defendants sued as Roes 1 through 100, inclusive, and therefore sues these Cross-Defendants by such fictitious names. Cross-Complainant will amend this Cross-Complaint to allege their true names and capacities when ascertained. Cross-Complainant is informed and believes, and thereon alleges, that each of the fictitiously named Cross-Defendants are responsible in some manner for the occurrence alleged, and that Cross-Complainant's injuries herein alleged were proximately caused by such Cross-Defendants.

## IV.
## ALTER EGO AND CONSPIRACY ALLEGATIONS

12. "Under the alter-ego doctrine, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the other person or organization actually controlling the corporation, in most instances the equitable owners." *Sonara Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538 (2000).

13. "In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner and that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Sonara Diamond Corp. v. Superior Court,* supra, 83 Cal.App.4th at 538.

14. During all relevant times, Andebeek and Roes 1-100, were leaders and executives at Global Ventu Holding, BV ("Global Ventu").

15. At all relevant times, Andebeek and Roes 1-100, as officers and shareholders, commanded, influenced, and controlled the affairs of Global Ventu. Andebeek and Roes 1-100 acted outside of any agency relationship afforded by Global Ventu's corporate status and in fact acted in such a way as to completely disregard and ignore any recognized corporate formalities or purpose with regards to Global Ventu's operation.

16. At all relevant times, there existed a unity of interest and ownership between Global Ventu, Andebeek, and Roes 1-100 such that the individuality and separateness of Global Ventu, Andebeek, and Roes 1-100 caused to and in fact never did exist.

17. Andebeek and Roes 1-100 used Global Ventu as a mere shell and naked framework for their own benefit. In this regard, Andebeek and Roes 1-100 used Global Ventu as a conduit to conduct his/her personal business, property, and affairs and as a device to avoid individual liability.

18. Upon information and belief, Andebeek, Global Ventu, and Roes 1-100 conspired and planned, one with another, to defraud Cross-Complainant by employing Tibrio's proprietary and confidential information.

19. Andebeek, Global Ventu, and Roes 1-100 were members of this conspiracy from the inception. As active participants in the conspiracy, Andebeek,

Roes 1-100, and Global Ventu are joint tortfeasors liable for the entire damage done in pursuance of the common design.

## V.
## **VENUE**

20. This Court has jurisdiction over this matter and personal jurisdiction over Plaintiff and Cross-Defendant as Global Ventu Holding, BV and Alex Andebeek have already initiated litigation in this Court and availed itself of the rights and privileges of this venue.

## VI.
## **STATEMENT OF FACTS**

21. Tibrio, LLC fka as Samples.com ("Tibrio") owns and operates two websites: samples.com and getitfree.us. Both sites aggregate free samples ranging from cleaning supplies to snack foods and give them away to customers who visit the websites. There is also a sweepstakes aspect to Tibrio's getitfree.us website whereby in exchange for answering certain questions, a consumer will be placed into a drawing.

22. Tibrio generates revenue from those websites by, (1) connecting consumers to advertisers, and (2) allowing advertisers to put ads on the websites. In order to command the highest price possible, Tibrio has spent years developing the details of samples.com and getitfree.us which attract visitors and encourage them to click on advertisements or connect with a relevant advertiser.

23. One specific method of attracting consumers to the websites is through Facebook advertising and marketing. This includes creating a specific advertisement, locating the proper consumer demographic, paying Facebook to post the advertisement, and tracking of the consumers who click the advertisement.

24. There are specific companies who specialize in Facebook advertising, including Cross-Defendant, Global Ventu Holding, BV run by Alex Andebeek ("Global Ventu" and "Andebeek").

25. On or around September 12, 2016, Tibrio entered into a Publisher Services Agreement with Global Ventu.

26. According to this Publisher Services Agreement, Tibrio agreed to create applicable advertisements to be posted on Tibrio's Facebook page which Global Ventu would then monetize.

27. Global Ventu agreed that it will "only distribute Advertising Material internally and shall not distribute or re-sell Advertising Material to any external third party without Advertiser's written consent." Global Ventu also agreed that it would not "copy, reproduce or create derivative works of the Advertising Material for any purpose outside of [the] Agreement."

28. Further, Global Ventu agreed that it will not "use Affiliates or Sub-Affiliates without Advertiser's prior written consent." This would include such affiliates like Fluent, whom Tibrio was creating ads for during the time Global Ventu was working with Tibrio.

29. On September 17, 2016, Tibrio and Global Ventu entered into a separate Revenue Share Agreement.

30. Pursuant to the Revenue Share Agreement, Global Ventu agreed to be responsible for general oversight and management of Tibrio's Facebook account "which includes, but is not limited to: (1) developing and optimizing existing campaigns; (2) managing budgets for campaigns; and (3) planning, buying, and executing campaigns."

31. This Revenue Share Agreement specified that "should either [Tibrio] or Global Ventu create any advertisements, creatives, copy, or any other related intellectual property, the new creations will remain the property of the party which created such intellectual property."

32. Finally, the Revenue Share Agreement's "Confidential Information" provision provides that the parties will not "for any reason or under any circumstance at any time, directly or indirectly use, convert, apply, appropriate,

employ, alter, transform, assign, put into operation, or otherwise use any Confidential Information, in whole or in part, for any purpose whatsoever."

33. Around the time the agreements were executed, Cross-Complainants disclosed to Andebeek and Global Ventu how they write copy, how they format images, their strategies to run successful campaigns, and who to target. All of the information disclosed to Andebeek and Global Ventu by Cross-Complainants is the result of years of research and hundreds of thousands of dollars on development. Specifically, Cross-Complainants tested different imagery, copy, demographics, and campaigns to determine what strategy would be the most successful. The testing, research, and results are closely held as they constitute trade secrets which allow Cross-Complainants to remain competitive in the market. These trade secrets were disclosed so Global Ventu and Andebeek could hit the ground running instead of starting over.

34. Over the next two years, Global Ventu and Tibrio had a good working relationship and were making good money together.

35. In November of 2018, Tibrio was preparing to move its backend technology to a platform called ZAN, which was developed by Tibrio's parent company, ZeetoGroup, LLC. As with any launch of a new product, it was expected that there would be a slight downturn in revenue until all of the issues were worked out.

36. Unfortunately, instead of looking into the future and continuing the lucrative relationship, Global Ventu took this move to ZAN as an opportunity to try and extort more money out of Tibrio. Following some negotiations, Global Ventu refused to continue the relationship. Global Ventu then sued Tibrio and its parent company for this separation.

37. After months of litigation, one of Tibrio's employees, while on Facebook, ran into a Facebook page called "Get Free Samples" which is eerily similar to Tibrio's "Get it Free" Facebook page. Upon further inspection, it was

discovered that this page was using the Tibrio brand, assets, and trade-secrets without permission. This includes, (1) the Facebook page cover photo, (2) Facebook page story copy, and (3) product images. This site is being run by Global Ventu and is neither owned nor operated by either ZeetoGroup, LLC or Tibrio. The strategy of using these specific items is a trade secret of Cross-Complainants' that took years of research and millions of dollars to develop.

38. This kind of misappropriation not only diverts traffic away from Tibrio, but also negatively impacts Cross-Complainant's business by association.

39. Global Ventu has been using Tibrio's property to improperly solicit clients away from Tibrio. This has caused Tibrio financial and reputational harm.

## VII.
## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
## MISAPPROPRIATION OF TRADE SECRETS- CALIFORNIA CIVIL CODE SECTION 3426.1
## (CROSS-COMPLAINANTS AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)

40. Cross-Complainants re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

41. Cross-Complainants own the proprietary and confidential information which qualifies as trade secrets ("Trade Secrets"). This includes the strategy behind advertisements, content, and targeting required to run a successful campaign. Cross-Complainants spent hundreds of thousands of dollars and years of research developing what specific imagery, content, and targeting strategy works best. The results of the spend and research are what makes Cross-Complainants competitive in the market. These Trade Secrets provide a commercial advantage as defined by California Civil Code section 3426.1(d).

9
TIBRIO, LLC'S CROSS-COMPLAINT                    19cv1018 DMS LL

42. At the time of their misappropriation, the Trade Secrets were not authorized to be used by anyone outside of Tibrio. Instead of starting from the beginning with research, testing, and development costs, Tibrio disclosed to Andebeek and Global Ventu its trade secrets so they could hit the ground running. This includes the strategies behind their imagery, content and targeting.

43. Cross-Defendants have improperly used the Trade Secrets in order to harm Tibrio. Specifically, Global Ventu and Andebeek used the strategies disclosed by Cross-Complainants to run campaigns for Fluent using imagery, copy, and targeting. This not only devalues the research and spend of Cross-Complainants, but it also caused Fluent to re-direct some of their spend to Global Ventu instead of Tibrio.

44. The improper means used by Cross-Defendants was a direct breach of the agreements entered into between the parties.

45. Cross-Defendants were aware that they had misappropriated the trade secrets of Tibrio by improper means.

46. Cross-Defendants' acquisition was a substantial factor in causing Tibrio's harm and Cross-Defendants were unjustly enriched.

47. The actions of Cross-Defendants qualify as willful and malicious misappropriation and therefore, the Court should award exemplary damages as provided by California Civil Code section 3426.3(c).

## SECOND CAUSE OF ACTION
## MISAPPROPRIATION OF TRADE SECRETS- 18 U.S.C.S SECTION 1832 ET AL.
## (CROSS-COMPLAINANTS AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)

48. Cross-Complainant re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

49. Cross-Complainant owns and possesses certain confidential and trade secret information as alleged above.

50. Cross-Complainant's Trade Secrets relate to products and services used, sold, shipped, and/or ordered in, interstate or foreign commerce.

51. Cross-Complaint has taken reasonable measures to keep such information secret and confidential.

52. Cross-Complainant's confidential Trade Secret information derives independent value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

53. Cross-Defendants have misappropriated Tibrio's Trade Secrets in the improper and unlawful manner as alleged herein.

54. Cross-Defendants' wrongful conduct in misappropriating Tibrio's Trade Secret, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to Tibrio.

55. Tibrio is threatened with losing the value of its advertisements along with current and potential business with top advertisers. Tibrio will continue to suffer irreparable injury that cannot be adequately remedied at law unless Cross-Defendants are enjoined from engaging in any further acts of misappropriation.

56. Each of the acts of misappropriation were done willfully and maliciously by Cross-Defendants with the deliberate intent to injure Tibrio's business and improve their own for financial gain. This entitles Tibrio to exemplary damages and/or attorneys' fees to be proven at trial.

/ / /
/ / /
/ / /
/ / /
/ / /

# THIRD CAUSE OF ACTION
# INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
# (CROSS-COMPLAINANTS AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)

57. Cross-Complainant re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

58. Global Ventu and Andebeek run https://www.facebook.com/YourFreeSamples/

59. This Facebook page is similar to https://www.facebook.com/FreeSamplesAtGetItFree/ which is run by Cross-Complainants.

60. Cross-Defendants used the Facebook page described in paragraph 58 to run campaigns for Fluent. Global Ventu and Andebeek were aware Cross-Complainant's relationship with Fluent.

61. Following Global Ventu and Andebeek's termination of their relationship with Cross-Complainants, they used Cross-Complainant's header image, copy, and product images to create the Facebook account referenced in paragraph 58. Then, using Cross-Complainant's imagery and copy, Global Ventu and Andebeek began running campaigns for Fluent. This caused Fluent to run less campaigns with Cross-Complainants.

62. Cross-Defendants intentionally interfered with the economic relationships between Tibrio and Fluent, which probably would have resulted in an economic benefit to Cross-Complainant.

63. Cross-Defendants knew of Cross-Complainant's relationship with Fluent, and intentionally acted in any way which disrupted the relationship.

64. Due to Cross-Defendants' act, Cross-Complainant's relationship with Fluent was actually disrupted.

65. As a result, Cross-Complainant suffered economic harm, and Cross-Defendant's conduct was a substantial factor in causing such harm.

## FOURTH CAUSE OF ACTION
## UNFAIR, UNLAWFUL, AND FRAUDULENT BUSINESS PRACTICES PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200
## (CROSS-COMPLAINANTS AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)

66. Cross-Complainant re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

67. California Business and Professions Code section 17200 prohibits unlawful, unfair, or fraudulent business acts.

68. On Cross-Defendants' Facebook page called "Get Free Samples," Cross-Defendants used advertisements, imagery, and content that are identical or nearly identical as those on Cross-Complainant's Facebook page "Get it Free."

69. Cross-Defendants' actions are fraudulent as the public is likely to be deceived by Cross-Defendants' intentional replication of Cross-Complainant's Facebook page.

70. Cross-Defendants' actions are unfair because they are unjustly benefitting and taking advantage of Cross-Complainant's work, which harms Cross-Complainant's reputation and competitiveness.

71. Due to the practices of Cross-Defendants, Tibrio has suffered material damages in an amount to be proven at trial.

///

///

///

13

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT
## (CROSS-COMPLAINANTS AGAINST ALL CROSS-DEFENDANTS AND ROES 1-100)

72. Cross-Complainant re-alleges and incorporates all of the above paragraphs as though fully set forth herein.

73. The Publisher Service Agreement and Revenue Share Agreements entered into between the parties required Cross-Defendants to refrain from using the Trade Secrets for any other reason than that described by the agreements i.e., running campaigns for Tibrio through Facebook.

74. Cross-Defendants breached this agreement by using the Trade Secrets on a site designed to look like Tibrio's without Tibrio's consent. Tibrio complied with all obligations under the agreement.

75. Andebeek, individually and as the alter-ego of Global Ventu, conspired with Global Ventu to breach the agreements by using proprietary information on a site designed to look like Tibrio's without Tibrio's consent. Andebeek perpetrated these acts in retaliation against Cross-Complainants for not agreeing to a higher compensation package.

76. This clear breach of duties set forth in the contract have caused Tibrio damages.

## VIII.
## REQUEST FOR JURY

1. Cross-Complainant hereby requests a jury trial in this action.

## IX.
## PRAYER FOR RELIEF

1. Damages in an amount to be proven at trial;
2. For reasonable attorney's fees;
3. For a preliminary injunction/temporary restraining order;

4. For exemplary damages;

5. For pre-judgment and post-judgment interest, according to proof;

6. For costs of suit incurred herein; and,

7. For such other and further relief as this Court deems just and proper.

**MORRIS LAW FIRM, APC**

Dated: July 6, 2020

*s/ Jacob A. Gillick*
Jacob A. Gillick, Esq.
jgillick@morrislawfirmapc.com
Attorneys for Defendants Zeetogroup, LLC, Samples.com, LLC, and Tibrio, LLC