Scott E. Rahn, Esq. (SBN 222528)
rahns@rmolawyers.com
Sean D. Muntz, Esq. (SBN 223549)
muntzs@rmolawyers.com
David G. Greco (SBN 299635)
grecod@rmolawyers.com
**RMO LLP**
2029 Century Park East, Suite 2910
Los Angeles, CA 90067
Phone: (424) 320-9444

Attorneys for Plaintiff and Cross-defendant
GLOBAL VENTU HOLDING B.V.
and Cross-defendant
ALEX ANDEBEEK

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V.,<br><br>Plaintiff,<br><br>v.<br><br>ZEETOGROUP, LLC, SAMPLES.COM, LLC, and TIBRIO, LLC,<br><br>Defendants.<br><br>ZEETOGROUP, LLC, SAMPLES.COM, LLC, and TIBRIO, LLC,<br><br>Cross-complainants,<br><br>v.<br><br>GLOBAL VENTU HOLDING B.V.; ALEX ANDEBEEK, an individual; and ROES 1 through 50, inclusive<br><br>Cross-defendants. | CASE NO.: 3:19-cv-01018-DMS-LL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES BY CROSS-DEFENDANT ALEX ANDEBEEK**<br><br>**Date:** November 13, 2020<br>**Time:** 1:30 P.M.<br>**Department:** Courtroom 13A<br>**Judge:** Dana M. Sabraw |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. 2

TABLE OF AUTHORITIES ........................................................................................... 3

1. INTRODUCTION .................................................................................................. 4

2. FACTS .................................................................................................................... 5

3. ARGUMENT .......................................................................................................... 5

    3.1   Mr. Andebeek was the prevailing party on Tibrio's claims. .................... 6

    3.2   Mr. Andebeek is entitled to attorneys' fees under California and Federal law. ................................................................................................. 6

        3.2.1   Tibrio's claims against Mr. Andebeek were specious ............................ 6

        3.2.2   Tibrio brought its claims against Mr. Andebeek in bad faith .................................................................................................. 7

    3.3   The number of hours expended were reasonable. ..................................... 9

    3.4   The hourly rates of Mr. Andebeek's attorneys are reasonable. .............. 12

4. CONCLUSION .................................................................................................... 14

# **TABLE OF AUTHORITIES**

**CASES**

*Calabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) .............................10

*Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 980–81 (9th Cir. 2008)...................................12

*Carson v. Billings Police Dept.*, 470 F.3d 889, 892 (9th Cir. 2006)............................................12

*Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) .......................................9

*Cohen v. Williams*, 2007 WL 174329, at *4 (E.D. Cal. Jan. 22, 2007).......................................11

*FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1276 (2009)........................................6, 7, 8

*Gabriel Technologies Corp. v. Qualcomm, Inc.*, 2013 WL 410103, at *7–8
    (S.D. Cal. Feb. 1, 2013)...............................................................................................6, 7, 8

*Gemini Aluminum Corp. v. CA Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1261 (2002).....6, 8

*Harris v. Maricopa County Superior Court*, 631 F.3d 936, 979 (9th Cir. 2011).........................11

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).....................................................................10, 11

*Knight v. City of Capitola*, 4 Cal. App. 4th 918, 932 (1992) ........................................................8

*Lockhard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1077 (10th Cir. 1998) ..............................................9

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).........................................9

*Rent Information Technology, Inc. v. Home Depot U.S.A., Inc.*, 268 Fed. Appx 555, 560
    (2008) ....................................................................................................................................6, 8

*SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 848 (2012).........................................6, 7

*Wells v. California Home Loan Solutions*, 2007 WL 2915059 ....................................................11


**STATUTES**

18 U.S.C. § 1836(b)(3)(D) ...............................................................................................................5

Cal. Civ. Code § 3426.4 ...................................................................................................................5

Cal. Civ. Proc. Code § 1032(a)(4)....................................................................................................6

# 1. INTRODUCTION

This Court dismissed with prejudice all of cross-complainant Tibrio LLC's causes of action against Alex Andebeek. Mr. Andebeek now moves for fees in the amount of $83,842.10.

California and Federal law allow a prevailing party to obtain attorneys' fees in a trade secret dispute, if the claims were brought in bad faith. To show bad faith, a party must show the claims were specious and brought for an improper purpose.

Speciousness exists when there is no evidence in the record to support the claims. Here, the claims against Mr. Andebeek were specious because they could not even make it past the pleading stage. Tibrio relied solely on theories of "alter ego" and "conspiracy" to assert its claims against Andebeek, but Tibrio could never articulate more than conclusory allegations supporting these theories. And Tibrio continued to pursue these claims—not supplementing the allegations—even after this Court warned that a failure to correct the pleading defects would lead to dismissal. This suffices to show speciousness.

A party can demonstrate improper purpose through circumstantial evidence. Here, an email from Tibrio's counsel shows that the true motive of filing the cross-claim was to coerce Mr. Andebeek to disclose details of his business relationship with someone who is not a party to this lawsuit, Josh Ogle. Indeed, counsel's email explicitly states that Tibrio would "do whatever it takes to retrieve this information, no matter the cost." (Ex. 1.) Tibrio's apparent motivation was that it believed Mr. Ogle had spearheaded some sort of "revenge" campaign against it after Mr. Ogle was removed from Tibrio. Tibrio has mentioned this revenge allegation in multiple filings in this matter, which is further evidence of Tibrio's improper motive.

Further, the hours spent on this litigation were reasonable given the complexity of the case and multitude of filings. All counsel's rates are reasonable. Thus, the motion should be granted.

/ / /

## 2.    FACTS

Only a brief summary is included here. Further facts are discussed in the argument section below, where relevant.

This is a trade secret and breach of contract dispute. Plaintiff Global Ventu Holding B.V. initiated the lawsuit against Tibrio LLC, Samples.com, and ZeetoGroup, LLC. (Doc. 1.) In December of 2019, Tibrio LLC filed a cross-claim against Global Ventu and its principal officer, Alex Andebeek, in Mr. Andebeek's individual capacity. (Doc. 24.) That cross-claim alleged, in pertinent part, claims for trade secret misappropriation under Federal and California law. Tibrio's sole justification for adding Mr. Andebeek in his individual capacity was under "alter ego" and "conspiracy" theories. (Doc. 24; *see* Doc. 75 at 3–4.)

Mr. Andebeek moved to dismiss the cross-claim, prompting Tibrio to file an amended cross-claim. (Docs 29, 31.) Mr. Andebeek again moved to dismiss, and this Court granted that motion with leave to amend. (Doc. 54 at 7:23.) The Court then warned Tibrio that the claims against Mr. Andebeek would be dismissed with prejudice if the defects were not fixed. (Doc. 54 at 9:1–3.) Tibrio filed a second-amended cross-claim. As this Court wrote, the "only additional allegation on the alter ego and conspiracy theories [was] that Global Ventu and Andebeek conspired to 'disrupt relationships with other businesses, and breach the executed agreements.'" (Doc. 75 at 3:22–25.) This allegation did "not address the pleading deficiencies set out in the Court's previous order, and thus [did] not save these theories from dismissal." (*Id.* at 3:25–26.) It thus dismissed the claims against Andebeek with prejudice. Mr. Andebeek now moves for fees.

## 3.    ARGUMENT

A court "may award reasonable attorney's fees and costs to the prevailing party" in a trade secret dispute, if the misappropriation claim was made "in bad faith." Cal. Civ. Code § 3426.4; 18 U.S.C. § 1836(b)(3)(D).

**3.1   Mr. Andebeek was the prevailing party on Tibrio's claims.**

A prevailing party includes a defendant in whose favor a dismissal is entered. *E.g.*, Cal. Civ. Proc. Code § 1032(a)(4). Here, Mr. Andebeek was the prevailing party on Tibrio's first and second causes of action because this Court dismissed with prejudice all claims against him. (Doc. 75 at 3–4.)

**3.2   Mr. Andebeek is entitled to attorneys' fees under California and Federal law.**

The attorneys' fees analysis is identical under California and Federal law. The party seeking an award of attorney's fees under the trade secret statutes must show (1) the objective speciousness of opposing party's claim, and (2) the subjective bad faith of the opposing party in bringing or maintaining the action—that is, for an improper purpose. *Rent Information Technology, Inc. v. Home Depot U.S.A., Inc.*, 268 Fed. Appx 555, 560 (2008) (analyzing Uniform Trade Secrets Act as enacted into Georgia law); *Gemini Aluminum Corp. v. CA Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1261 (2002).

3.2.1   Tibrio's claims against Mr. Andebeek were specious.

Speciousness "exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1276 (2009). A party is "not required to conclusively prove a negative (i.e., that they did not steal . . . trade secrets). Instead, under the 'objectively specious' standard, it [i]s enough for defendants to point to the absence of evidence of misappropriation in the record." *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 848 (2012); *see Gabriel Technologies Corp. v. Qualcomm, Inc.*, 2013 WL 410103, at *7–8 (S.D. Cal. Feb. 1, 2013) (HON. ANTHONY J. BATTAGLIA).

In *Gabriel Technologies*, the Southern District of California found the plaintiffs' trade secret claims were specious. There, the plaintiffs had repeatedly failed to identify their trade secrets despite having multiple chances to do so. *Gabriel*

*Technologies*, 2013 WL 410103, at *7–8. Despite their inability to correct this basic defect, the Plaintiffs continued to pursue their claims. *Id.*

Here, Tibrio had three chances to plead facts adequately showing why Mr. Andebeek should be a party to this case in his individual capacity, but it was never able to do so. Tibrio based its claims against Mr. Andebeek solely on theories of alter ego and conspiracy. (Doc. 54 at 7:17–28.) In dismissing Tibrio's first amended cross-complaint, this Court stated that Tibrio's allegations "failed to plead sufficient facts to support those theories." (Doc. 54 at 7:23.) It then warned Tibrio that the claims would be dismissed with prejudice if the defects were not fixed. (Doc. 54 at 9:1–3.) Despite this, Tibrio did nothing to meaningfully supplement these allegations. (Doc. 75 at 3:22–4:2.) Instead, it added a single allegation that Mr. Andebeek "conspired to 'disrupt relationships with other businesses, and breach the executed agreements.'" (Doc. 75 at 3:22–25.) Those allegations did not suffice and—perhaps more importantly—they were completely unrelated to the trade secret causes of action, upon which Mr. Andebeek bases his request for fees. Said differently, after this Court warned that it would dismiss Tibrio's trade secret claims with prejudice if Tibrio did not shore up the defects in its allegations, Tibrio reasserted identical allegations related to those causes of action. This supports a finding of speciousness, as *Gabriel Technologies* demonstrates. Indeed, Tibrio's inability to adequately plead these claims against Mr. Andebeek functionally equates to the "absence of evidence of misappropriation in the record." *See SASCO*, 207 Cal. App. 4th at 848. Mr. Andebeek has satisfied the first prong of the attorneys' fees analysis under the California and Federal trade secret laws.

### 3.2.2 Tibrio brought its claims against Mr. Andebeek in bad faith.

A court may find bad faith when the evidence infers that the filing party "intended to cause unnecessary delay, filed the action to harass [the opposing party], or harbored an improper motive." *FLIR Sys. Inc.*, 174 Cal. App. 4th at 1278. Bad faith "may be established by circumstantial evidence." 18 U.S.C. § 1836(b)(3)(D); *see*

*Gemini Aluminum Corp.*, 95 Cal. App. 4th at 1265 ("A subjective state of mind will rarely be susceptible of direct proof; usually the trial court will be required to infer it from circumstantial evidence.") (quoting *Knight v. City of Capitola*, 4 Cal. App. 4th 918, 932 (1992)).

Continuing to pursue a specious claim supports a finding of bad faith. *Rent Information*, 268 Fed. Appx. at 560; *FLIR Sys. Inc.*, 174 Cal. App. 4th 1278; *Gabriel Technologies*, 2013 WL 410103, at *8. As discussed above, that is exactly what happened here. Tibrio did not bother to supplement its allegations against Mr. Andebeek, but it reasserted its trade secret claims anyway, knowing full well that the Court warned that the allegations would result in a dismissal with prejudice.

Further, Tibrio's own communications and court filings support an inference that its claims against Mr. Andebeek were pursued for an improper purpose. To begin, Tibrio's counsel made clear in an email that Tibrio had ulterior motives for asserting its claims, and that it was willing to act as it saw fit to achieve its desired ends:

> I understand why your client would not want to disclose this information. However, **my client is ready and willing to do whatever it takes to retrieve this information**. [¶] As to interrogatory numbers 43-48, paragraph 9 mentions a "revenge" mission and the conspiracy allegations name Doe Defendants. . . . My client absolutely wants this information and documents and **I have been granted the authority to do whatever it takes to retrieve this information, no matter the cost**. Is your client ready to do the same to protect Mr. Ogle? We have a really good idea of why Mr. Andebeek would not want to disclose this information, however, **we are extremely motivated to understand the ins and outs of Mr. Andebeek and Mr. Ogle's relationship**. Mr. Andebeek worked with Josh Ogle during his time at Tibrio and is now accused of using Tibrio's trade secrets.

(Ex. 1 [emphasis added].) Two points from this email warrant emphasis.

First, the email shows explicitly that Tibrio was motivated not by the merits of its claims against Mr. Andebeek, but by a desire for vindication in response to what it believed to be a revenge conspiracy against it. And the email is not the only evidence of this motivation. Tibrio's own court filings repeatedly mention the revenge theory. (Doc. 72 at 4:24–27. ["Tibrio has already received evidence that Mr. Ogle used his wide net of contacts to take 'revenge' on Tibrio. Therefore, based on information and belief, Andebeek filed suit in order to support Mr. Ogle's revenge mission aimed at bankrupting Tibrio and later purchasing it at a 'fire sale' price."]; *see also* Doc. 24 at ¶ 9; Doc. 31, at ¶ 5; Doc. 52–1, at 2:24; Doc. 66 at 2:13–17; Doc. 69, at ¶ 5.)

Second, the business relationship between Mr. Andebeek and Mr. Josh Ogle is irrelevant to the trade secret dispute between Tibrio and Global Ventu. But as Mr. Gillick's email makes clear, Tibrio wanted this information, and would do "whatever it takes" to get it, "no matter the cost." (Ex. 1.) This is evidence that Tibrio pushed the claims against Mr. Andebeek for an improper purpose. That is particularly true given the speciousness of the claims.

Mr. Andebeek has established bad faith, and is entitled to attorneys' fees under the Federal and California trade secret statutes.

### 3.3 The number of hours expended were reasonable.

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The moving party bears the burden to submit records adequate to justify the time spent. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Billing from multiple attorneys is acceptable, so long as the case is complicated enough to justify more than one attorney and there is not an unreasonable duplication of effort. *Lockhard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1077 (10th Cir. 1998). "Where a [party] has obtained excellent results, his attorney should

recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Mr. Andebeek seeks fees in relation to the following categories of work.

***Motions to Dismiss.*** Mr. Andebeek successfully had Tibrio's claims dismissed with prejudice after multiple motions to dismiss those claims. (Docs 54, 75.) Every portion of those motions were related to Mr. Andebeek and the sufficiency of the allegations against him. And though the grounds for the dismissal were the inadequacy of the alter ego and conspiracy claims, all time spent on those motions is recoverable. *See Calabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) (holding that all time is compensable even if all time spent did not form basis of ultimate relief). All told, Mr. Andebeek's attorneys spent 57.60 hours writing the motions to dismiss, the replies regarding the same, the supporting papers, and performing related tasks. (Greco Decl., Attachment 2 at 1–5.) These hours were reasonable because there were three sets of moving papers and two replies, and each led to favorable rulings in Mr. Andebeek's favor.

***Opposition to Motion to Amend Cross-claim to Add Corey Oneal as Cross-defendant.*** Tibrio moved to amend its cross-claim to add a third cross-defendant, Corey Oneal. Mr. Andebeek opposed, as did Global Ventu. The work on this motion for Mr. Andebeek is compensable because it is part of "all [the] hours reasonably expended on the litigation." *See Hensley*, 461 U.S. at 436. Further, the successful opposition benefitted Mr. Andebeek, who this Court ruled would have been prejudiced by the amendment. (Doc. 67.) Mr. Andebeek's attorneys spent 35.40 hours on this opposition and its supporting papers. (Greco Decl., Attachment 2 at 16–20.)

***Discovery Issues.*** Attorney Greco has reviewed every billing entry related to the discovery in this matter, and has included on the summary of fees only entries that were associated with discovery directed at Mr. Andebeek. (Greco Decl. ¶ 10.) Any entries for discovery primarily directed at Global Ventu are omitted from the summary. (*Id.*) On June 17, 2020., Tibrio's counsel agreed that any discovery directed

personally to Mr. Andebeek would be stayed pending resolution of Mr. Andebeek's motion to dismiss. (Doc. 66.) Thus, no post-June 17 entries for discovery appear on the summary of fees. (Greco Decl. ¶ 10; see Attachments to Greco Decl., *passim.*) In total, Mr. Andebeek seeks 38.10 hours related to discovery. (Greco Decl, Attachment 2 at 6–10.)

**Early Neutral Evaluation.** By the time this Court ordered the Early Neutral Evaluation, Mr. Andebeek had been added in his personal capacity as a cross-defendant. (Docs 24, 27.) Thus, the time spent on these tasks is compensable. *See Wells v. California Home Loan Solutions*, 2007 WL 2915059, at *7 (granting fees for time incurred in relation to Early Neutral Evaluation). The hours billed for this category were 14.70. (Greco Decl., Attachment 2 at 11–12.)

**General Matter Handling.** It is axiomatic that careful attention to the status of a matter and pending tasks is necessary for effective representation. This time is compensable because it is part of "all [the] hours reasonably expended on the litigation." *See Hensley*, 461 U.S. at 436. The hours for this category are 11.90. (Greco Decl., Attachment 2 at 13–15.)

**This Motion for Fees, and the Inevitable Reply.** Attorney Greco spent 13.20 hours preparing this motion and anticipates he will spend another 5 hours on the reply. (Greco Decl. ¶ 11.) Time spent preparing a motion for attorneys' fees is compensable. *Harris v. Maricopa County Superior Court*, 631 F.3d 936, 979 (9th Cir. 2011); *see also Cohen v. Williams*, 2007 WL 174329, at *4 (E.D. Cal. Jan. 22, 2007).

**Time not Sought.** Mr. Andebeek does not seek fees for time that could not be fairly associated with his individual defense. The time not sought includes (a) discovery not cognizably related to Mr. Andebeek; (b) Global Ventu's successful motion to strike ZeetoGroup's answer; (c) investigatory tasks associated with Global Ventu's claims; and (d) deposition time for witness depositions not relating to the claims against Mr. Andebeek. (Greco Decl. ¶ 10.)

The following chart summarizes the hours requested by this motion.

| Category | Hours | Fees | Evid. |
|---|---|---|---|
| Cross-claim and related motion to dismiss. | 57.60 | $27,199.50 | Attachment 2 to Greco Decl, at 5 |
| Discovery and related issues. | 38.10 | $17,841.00 | *Id.* at 10 |
| Early Neutral Evaluation | 14.70 | $6,895.50 | *Id.* at 12 |
| General matter handling. | 11.90 | $7,157.50 | *Id.* at 15 |
| Opposition to motion to amend cross-claim to add Corey Oneal as cross-defendant. | 35.40 | $16,467.00 | *Id.* at 20 |
| *Subtotal:* | *157.70* | *$75,560.50* | *Id.* at 20 |
| Preparing this motion & reply. | 18.20 | $8,281.60 | Greco Decl. ¶ 11 |
| **TOTAL:** | **175.90** | **$83,842.10** | |

(See Greco Decl., Attachment 2.)

### 3.4 The hourly rates of Mr. Andebeek's attorneys are reasonable.

When determining whether a rate is reasonable, courts look to the prevailing rates among attorneys with similar skill, experience, and reputation as the attorney(s) who billed the rates. *Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 980–81 (9th Cir. 2008). "That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is . . . ." *See Carson v. Billings Police Dept.*, 470 F.3d 889, 892 (9th Cir. 2006).

***Primary Attorney David Greco—$455.*** In 2019, the Ninth Circuit ruled that $425 per hour was a reasonable rate specifically as to Mr. Greco. (Ex. 2 at 16.) Since then, Mr. Greco's rate has modestly increased to $455 per hour. (Greco Decl. ¶ 12.)

Mr. Greco's experience and credentials support this rate. Mr. Greco has experience in all stages of litigation, including through appeal at the Ninth Circuit and the California Court of Appeal. (Greco Decl. ¶ 6–7(a).) In 2019, he succeeded on an issue of first impression in front of the Ninth Circuit Court of Appeals. (Greco Decl. ¶ 7(b); Ex. 2 at 4.) This year, he succeeded in obtaining a reversal of a California State

Court's order dismissing a trust matter for want of personal jurisdiction. (Greco Decl. ¶ 7(c).) He has had success in several other appellate matters as well. (*Id.* ¶¶ 6(c)–(d).)

Mr. Greco currently runs the San Diego office of RMO LLP, and he oversees attorneys in the firm's Orange County and Los Angeles offices, supervising their work in a variety of litigation matters in State and Federal court. (Greco Decl. ¶ 7(a).) Mr. Greco has been the lead attorney in this matter from the time RMO LLP substituted in as counsel for Plaintiff Global Ventu. (Greco Decl. ¶ 9.)

Further, Mr. Greco is the co-founder and former co-owner of a bar exam preparation company, BarMD. (Greco Decl. ¶ 8.) In that capacity, Mr. Greco taught subjects including the Federal Rules of Civil Procedure, the Federal Rules of Appellate Procedure, and Federal Evidence. (*Id.*) His deep knowledge of these subjects renders him effective in litigation.

Mr. Greco graduated *magna cum laude* (ranked number 12 out of 270 students), from the University of San Diego School of Law, where he was a member of the *San Diego Law Review*. (Greco Decl. ¶ 4.) He received numerous awards for his academic achievements, including an award for "Best Writing." (*Id.*) He has contributed to work filed with the Supreme Court of the United States, and that work has been cited by the Supreme Court in its final opinion. (*Id.*) Mr. Greco also previously worked for the California Court of Appeal and the Federal District Court for the Southern District of California. (Greco Decl. ¶ 5.)

**Attorney Sean Muntz—$695.** Sean Muntz is the Co-managing partner of, and Practice Management Chair for, RMO LLP. (Muntz Decl. ¶¶ 2-3.) His hourly rate is $695. He was named a California Super Lawyer in 2018 and 2019. (*Id.* ¶ 6.) He formerly worked for a Fortune 100 financial institution as in-house counsel, where he directed and managed litigations strategies nationwide, overseeing hundreds of cases. (*Id.* ¶ 7.) He also worked for a Fortune 500 company as in-house counsel, where he managed and directed litigation strategies and corporate investigations. (*Id.*)

***Attorney Scott Rahn—$755.*** Scott Rahn is the Co-managing Partner of RMO LLP. (Rahn Decl. ¶ 1.) He has substantial litigation experience, including in complex disputes. (Rahn Decl. ¶¶ 2, 5.) He has been awarded various commendations in the legal community. (*Id.* at ¶ 4.)

***Attorney Jessica Covington—$440.*** Jessica Covington was an attorney with RMO LLP between 2019 and 2020. She graduated from Pepperdine University School of Law. Prior to joining RMO, Ms. Covington litigated almost exclusively in Federal court, focusing on intellectual property disputes. (Muntz Decl. ¶ 8.)

***Attorney Gabriel Henriquez—$425.*** Gabriel Henriquez was an associate with RMO LLP for part of 2020. He graduated from the University of Southern California School of Law. Prior to joining RMO, he worked as an attorney in New York, litigating a number of complex disputes in state and Federal court. (Muntz Decl. ¶ 9.)

Every hourly rate sought is reasonable. The Court should award the full rate for each of the above-listed attorneys. The recoverable fees here total $83,842.10.

## 4.     CONCLUSION

The Court should award Mr. Andebeek fees in the amount of $83,842.10.

Dated: October 1, 2020     **RMO LLP**

              */s/ David G. Greco*
David Greco (SBN 299635)
grecod@rmolawyers.com

Scott E. Rahn, Esq. (SBN 222528)
rahns@rmolawyers.com
Sean D. Muntz, Esq. (SBN 223549)
muntzs@rmolawyers.com

2029 Century Park East, Suite 2910
Los Angeles, CA 90067
Phone: (424) 320-9444

Attorneys for Plaintiff and Cross-defendant GLOBAL VENTU HOLDING B.V. and Cross-defendant ALEX ANDEBEEK