# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL VENTU HOLDING B.V.,<br><br>Plaintiff,<br><br>v.<br><br>ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC,<br><br>Defendants. | Case No.: 19cv1018 DMS (DEB)<br><br>**ORDER DENYING GLOBAL VENTU'S MOTION FOR SUMMARY JUDGMENT** |
| ZEETOGROUP, LLC, SAMPLES.COM, LLC, AND TIBRIO, LLC,<br><br>Cross Claimants,<br><br>v.<br><br>GLOBAL VENTU HOLDING B.V., ALEX ANDEBEEK, an individual, and ROES 1 through 50, inclusive,<br><br>Cross Defendants. | |

This case comes before the Court on Global Ventu B.V.'s motion for summary judgment or partial summary judgment on Tibrio's Second Amended Cross-Complaint

("SACC"). Tibrio filed an opposition to the motion, and Global Ventu filed a reply.[1] After reviewing the parties' briefs and the record on file in the case, the motion is denied.

## I.

## BACKGROUND

The factual background of this case is set out in the Court's previous orders. As relevant to the present motion, the parties entered into a business relationship in June 2016 for advertising and marketing services. The relationship was governed by two contracts, a Publisher Services Agreement ("PSA"), (Evid. in Supp. of Mot., Ex. 1), and a Revenue Sharing Agreement ("RSA"). (Evid. in Supp. of Mot., Ex. 2.)

Pursuant to these Agreements, Tibrio, fka Samples.com, was to provide "Advertising Material" to Global Ventu, and Global Ventu was to monetize that Material through Tibrio's "Get It Free" Facebook page. (SACC ¶¶21-26.) Paragraph 1 of the PSA, which is entitled "Services," states Global Ventu "will only distribute Advertising Material internally and shall not distribute or re-sell Advertising Material to any external third party without Advertiser's written consent." (Evid. in Supp. of Mot., Ex. 1 ¶1.) The PSA also states Global Ventu "may not copy, reproduce or create derivative works of the Advertising Material for any purpose outside of this Agreement without Advertiser's prior consent." (*Id.* ¶2.)

Pursuant to the RSA, Tibrio gave Global Ventu access to its "Get It Free" Facebook page "solely for the purpose of providing the services detailed herein." (Evid. in Supp. of Mot., Ex. 2 ¶1.) Those services included taking responsibility "for general oversight and management of the Facebook Account, which includes, but is not limited to: (1) developing and optimizing existing campaigns; (2) managing budgets for campaigns; and (3) planning,

---

[1] After the motion was submitted, Tibrio filed an ex parte motion for leave to file a surreply, which Global Ventu opposes. The Court finds the surreply unnecessary, and therefore denies Tibrio's ex parte motion.

buying, and executing campaigns." (*Id.*) Paragraph 2 of the RSA, entitled "Ownership," states:

> Neither this Agreement nor its performance transfers any of [Tibrio's] proprietary property, including: designs, content, advertisements, documentation, copy, images, and any related intellectual property (the "Intellectual Property") right from either party to the other party. The Intellectual Property shall at all times be and remain the sole property of the original party. Furthermore, the Facebook account shall also remain the sole property of [Tibrio], and [Tibrio] may reject any of Global Ventu's postings or actions at any time and for any reason. Should either [Tibrio] or Global Ventu create any advertisements, creatives, copy, or any other related intellectual property, the new creations will remain the property of the party which created such intellectual property.

(*Id.* ¶2.)

Over the following two years, the parties enjoyed a profitable business relationship. However, on November 12, 2018, Tibrio "informed Global Ventu that it was switching its backend technology to a software called ZAN, which had been developed by ZeetoGroup."[2] (Decl. of Alex Andebeek in Supp. of Mot. ("Andebeek Decl.") ¶6.[3]) The evidence reflects Global Ventu was unhappy with ZAN's performance, and requested a modification to the parties' contracts, which Tibrio refused. (*See* Decl. of Jacob Gillick in Supp. of Opp'n to Mot., Ex. 15; Andebeek Decl. ¶8.) Tibrio contends Global Ventu then terminated the parties' relationship. (Decl. of Stephan Goss in Supp. of Opp'n to Mot. ("Goss Decl.") ¶2.) Global Ventu disputes that assertion, and contends Tibrio breached the contracts by revoking Global Ventu's access to Tibrio's "Get It Free" Facebook account without providing the requisite notice of termination under the contracts. (Andebeek Decl. ¶9.) "As a result of this improper lock-out, Global Ventu was unable to access and remove

---

[2] ZeetoGroup is the parent company of Tibrio. (SACC ¶34.)

[3] Mr. Andebeek is the owner and principal officer of Global Ventu. Tibrio named him as a Cross-Defendant in its original Cross-Complaint, but he has since been dismissed.

3

all of the ad content, advertising campaigns, and proprietary tracking information it had spent years and significant sums of money developing." (*Id.*)

As a result of these events, Global Ventu filed a Complaint against Samples, Tibrio and ZeetoGroup alleging claims for breach of the RSA, breach of the PSA, violation of California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.* ("CUTSA"), violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et. seq.* ("DTSA"), and unfair competition under California Business and Professions Code § 17200 *et seq.* ("UCL"). While that Complaint was pending, a Tibrio employee did some testing for Tibrio's "Get It Free" Facebook account. (Decl. of Macey Farnsworth in Supp of Opp'n to Mot. ("Farnsworth Decl.") ¶2.) During that testing, "[i]nstead of navigating to the page directly like usual, [Ms. Farnsworth] typed "Get it Free" into Facebook's search bar." (*Id.*) She states: "Almost immediately a page populated that I did not recognize called 'Your Free Samples.'" (*Id.* ¶3.) Global Ventu admits it created the "YourFreeSamples" Facebook page, but asserts that it did so "as a placeholder for advertising content." (Andebeek Decl. ¶11.) Tibrio claims the "YourFreeSamples" page contains content from its "Get It Free" Facebook page, and that some of the copy on the two pages is exactly the same. (Goss Decl. ¶4.)

As a result of its discovery of the "YourFreeSamples" page, Tibrio filed a Cross-Complaint against Global Ventu and Alex Andebeek alleging claims for trade secret misappropriation under the CUTSA and DTSA, intentional interference with prospective economic relations, unfair competition under the UCL, and breach of the RSA and the PSA. Those cross-claims are the focus of the present motion.

## II.

## DISCUSSION

This is the eighth motion filed by the parties in this case, and the sixth motion filed by Global Ventu and Mr. Andebeek. Although the parties spent a considerable amount of time litigating the pleadings, their briefing on the present motion strays from those controlling documents, and suggests there may be some misunderstandings about Tibrio's

4

theories of liability in this case and the burdens associated with a summary judgment motion. In considering the present motion, the Court relies on the parties' pleadings, and analyzes the claims and evidence in the context of those documents and in accordance with the legal standard set out below.

**A.  Legal Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id. See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.  Trade Secret Misappropriation**

The first two claims alleged in the Second Amended Cross-Complaint are for trade secret misappropriation. "To state a claim for trade secret misappropriation under the

DTSA and the CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'" *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F.Supp.3d 868, 877 (N.D. Cal. 2018) (quoting *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)).

Global Ventu's request for summary judgment on these claims consists of three short paragraphs and less than ten lines, and appears to be directed to the third element of damages. (*See* Mem. of P. & A. In Supp. of Mot. at 12.) Specifically, Global Ventu appears to be arguing that Tibrio does not have any evidence of damages, therefore Global Ventu is entitled to summary judgment on these claims. However, Global Ventu has not shown there are no genuine issues of material fact on damages. On the contrary, the evidence it cites reflects there is a factual dispute on this issue. That evidence consists of Mr. Andebeek's Declaration, wherein he states that "Global Ventu Holding BV has not made any money from the YourFreeSamples page." (Andebeek Decl. ¶10.) But as Tibrio points out, in a preceding sentence Mr. Andebeek states, "[s]ince November 16, 2018, the YourFreeSamples page has not generated any revenue or targeted any customers." (*Id.*) Tibrio interprets this statement to mean the "YourFreeSamples" page *did* generate revenue before November 16, 2018, (Opp'n to Mot. at 24), which Global Ventu does not dispute. Instead, Global Ventu contends any revenue generated from the page was "in relation to the business dealings with ZeetoGroup." (Decl. of Alex Andebeek in Supp. of Reply ("Andebeek Reply Decl.") ¶3.)

Construing this evidence in the light most favorable to Tibrio, which the Court must do on the present motion, Global Ventu has not shown there are no genuine issues of material fact on damages such that it is entitled to summary judgment on the trade secret claims.[4]

---

[4] Global Ventu also relies on this damages argument in support of its request for summary judgment on Tibrio's claims for intentional interference with prospective economic

## C. Intentional Interference with Prospective Economic Advantage

The next claim is for intentional interference with prospective economic advantage.

In order to prove a claim for intentional interference with prospective economic advantage, a plaintiff has the burden of proving five elements: (1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party.

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (2008) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003)). In addition, Plaintiff must "plead and prove as part of its case-in-chief that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Korea Supply*, 29 Cal. 4th at 1153 (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995)).

Here, Tibrio's claim for intentional interference rests on Global Ventu's alleged interference in Tibrio's relationship with Fluent. (SACC ¶¶57-65.)[5] Global Ventu argues it is entitled to summary judgment on this claim based on the competition privilege.

The competition privilege:

applies where "(a) the relation [between the competitor and third person] concerns a matter involved in the competition between the actor and the competitor, and (b) the actor does not employ improper means, and (c) the actor does not intend thereby to create or continue an illegal restraint of competition, and (d) the actor's purpose is at least in part to advance his interest in his competition with the other. ...."

---

advantage and breach of contract. The Court's analysis above applies equally to Tibrio's other claims, and thus, the Court will not address this argument further.

[5] Tibrio alleges it was creating ads for Fluent during Tibrio's business relationship with Global Ventu. (SACC ¶28.)

7

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*, 52 Cal. App. 4th 867, 880 (1997) (quoting *Charles C. Chapman Building Co. v. California Mart*, 2 Cal. App. 3d 846, 855-856 (1969)) (internal quotation marks omitted). Global Ventu sets out these elements in its motion, but it does not analyze the facts of this case in relation to those elements. Indeed, Global Ventu fails to show what would seem to be a threshold element of the competition privilege, namely that it was in competition with Tibrio. On the contrary, Tibrio appears to allege the parties had something of a symbiotic relationship, with Tibrio creating content and Global Ventu "specializ[ing] in Facebook advertising[.]" (SACC ¶24.) Absent a showing that this threshold requirement is met, or any analysis of the other elements of the competition privilege, Global Ventu is not entitled to summary judgment on this claim.

**D.     Unfair Competition**

The next claim is for unfair competition under California Business and Professions Code § 17200. Specifically, Tibrio claims Global Ventu engaged in fraudulent and unfair conduct under the statute in the establishment and maintenance of its "YourFreeSamples" Facebook page.

To prevail on its claim under the "fraudulent" prong, Tibrio must show that "members of the public are likely to be deceived." *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 456 (N.D. Cal. 2012). Here, Global Ventu argues Tibrio has failed to produce any evidence to support a finding of "fraudulent" conduct. However, the Court disagrees. As stated above, Tibrio submitted a declaration from Macey Farnsworth, its Senior Manager for Digital Content, who states that in late 2019, she was "doing testing for Tibrio's 'Get It Free' Facebook Account." (Farnsworth Decl. ¶2.) Ms. Farnsworth states while doing that testing, she typed "Get It Free" into Facebook's search bar, and "[a]lmost immediately a page populated that I did not recognize called 'Your Free Samples.'" (*Id.* ¶3.) Although this is not definitive evidence that a reasonable consumer is likely to be deceived by Global Ventu's conduct, it raises a genuine issue of material fact, which is sufficient to withstand Global Ventu's motion for summary judgment on the "fraudulent" prong of this claim.

To prevail on the "unfair" prong, Tibrio must show that Global Ventu's conduct "violates established public policy or . . . is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006) (citations omitted). Global Ventu did not address that standard in its motion. Instead, it cites to a different standard for "unfair" conduct that applies when the parties are competitors. *See Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 544 (1999)) ("Unfair acts *among competitors* means 'conduct that threatens an incipient violation of an antitrust law, or violates the spirit or policy of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'") (emphasis added). Tibrio does not allege that Global Ventu is one of its competitors, however, and thus, that standard does not apply to this case. Absent a showing by Global Ventu that Tibrio has failed to meet the relevant standard, Global Ventu is not entitled to summary judgment on this claim.

**E.     Breach of Contract**

Tibrio's final claim is for breach of contract. To prevail on this claim, Tibrio must meet the following elements: the existence "of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1031 (2009) (quoting *McKell*, 142 Cal. App. 4th at 1489). Global Ventu does not dispute the existence of a contract here. Instead, it argues Tibrio does not have evidence of breach, and that Tibrio's interpretation of Paragraph Five of the contract would render that Paragraph an unenforceable non-compete agreement.

In analyzing these arguments, the Court looks first to the contours of the claim. As pleaded, Tibrio alleges Global Ventu breached the contracts "by using the Trade Secrets on a site designed to look like Tibrio's without Tibrio's consent." (SACC ¶74.) In its motion, Global Ventu does not address this allegation. Instead, it addresses another

allegation related to Tibrio's first claim for trade secret misappropriation concerning Global Ventu's relationship with Fluent. (*See* Mem. of P. & A. in Supp. of Mot. at 8-9.) Because Global Ventu does not address the allegations underlying the breach of contract claim, its first argument does not warrant summary judgment in its favor.

Next, Global Ventu argues that Tibrio breached the contracts first, thereby relieving Global Ventu of its obligations under the contracts. In support of this argument, Global Ventu relies on Mr. Andebeek's Declaration and Tibrio's Answers to Global Ventu's Complaints. Mr. Andebeek's Declaration, however, does not support Global Ventu's timeline of events. On the contrary, Mr. Andebeek states the "YourFreeSamples" Facebook page was operating before November 16, 2018, (Andebeek Reply Decl. ¶3), which, if true, would defeat Global Ventu's argument that Tibrio's breach, which allegedly occurred on November 16, 2018, relieved Global Ventu of any obligations under the contracts. The only other evidence Global Ventu relies on to support this argument is Tibrio's Answers to the Complaints, but those Answers are unverified, and thus, cannot be considered as evidence on the present motion. *Cf. Moran v. Selig*, 447 F.3d 748, 759 (9th Cir. 2006) (stating "the complaint in this case cannot be considered as evidence at the summary judgment stage because it is unverified.")

Global Ventu's final argument on Tibrio's breach of contract claim is that Tibrio's interpretation of Paragraph Five of the RSA would render that Paragraph an unenforceable non-compete agreement. According to Global Ventu, that Paragraph prohibits the parties from using "affiliates" of the other party. However, Paragraph Five of the RSA is the termination clause. (*See* Evid. in Supp. of Mot., Ex. 2 ¶5.) It has nothing to do with the use of affiliates. Indeed, the "affiliates" paragraph does not appear at all in the RSA. Rather, it is found in the PSA at Paragraph 3. (*See* Evid. in Supp. of Mot., Ex. 1 ¶3.) Regardless, the "affiliates" paragraph does not serve as the basis for Tibrio's breach of contract claim. Instead, the claim appears to be based on other Paragraphs in the PSA and RSA, including Paragraphs 1, 2 and 9 of the PSA and Paragraphs 1, 2 and 6 of the RSA. (*See* Evid. in Supp. of Mot., Ex. 1 ¶¶1, 2, 9; Ex. 2 ¶¶1, 2, 6.) Because Global Ventu failed

to address the relevant provisions of the contracts, it is not entitled to summary judgment on this claim.

## III.
## CONCLUSION

For all of the reasons set out above, Global Ventu's motion for summary judgment is denied. Going forward, the Court encourages counsel for both sides to review Civil Local Rule 2.1, and to adhere to the standards set forth therein in any future filings with this Court.

**IT IS SO ORDERED**.

Dated: May 20, 2021

_____
Hon. Dana M. Sabraw, Chief Judge
United States District Court